BOOK 7026 PAGE 084

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect.) Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation". I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

Form 3033  10/91

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property". A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document". A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

## 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

Form 3033 10/91

## 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment . The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

## 18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and

(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and

(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

## 19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer". There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

## 20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws". I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances".

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

Form 3033 10/91

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS

Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full".

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale". In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 21 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:
    (i) The promise or agreement that I failed to keep;
    (ii) The action that I must take to correct that default;
    (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
    (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
    (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
    (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

## 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

## 23. AGREEMENTS ABOUT NEW YORK LIEN LAW

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

Form 3033 10/91

BOOK 7026 PAGE 088

## 24. RIDERS TO THIS SECURITY INSTRUMENT

If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] 1-4 Family Rider

[ ] Graduated Payment Rider    [ ] Planned Unit Development Rider    [ ] Biweekly Payment Rider

[ ] Balloon Rider    [ ] Rate Improvement Rider    [ ] Second Home Rider

[ ] Other(s) [specify]

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

_____    _Michelle Osier_____ (Seal)
                                    Michelle Osier           -Borrower

_____    _____ (Seal)
                                                     -Borrower

_____ (Seal)
            -Borrower

_____ (Seal)
            -Borrower

_____ (Seal)
            -Borrower

_____ (Seal)
            -Borrower

STATE OF NEW YORK,    Onondaga    County ss:

On this    29th    day of    June, 1993,    , before me personally came

Michelle Osier

to me known
and known to me to be the individual(s) described in and who executed the foregoing instrument, and    she    duly acknowledged to me that   she   executed the same.

Notary Public

Terence A. Langan
Notary Public NY St.
Qual. Onon. Co. 4757848
Comm. Exp. Oct. 31, 1993

    Form 3033 10/91

TRW Title Insurance of New York Inc.

## SCHEDULE A (Description)

MORTGAGE BOOK **7026** PAGE **089**

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,

lying and being         situate in the Town of Onondaga, County of Onondaga, and State

of New York, being part of Lots Nos. 23 and 24 on Farm Lot Nos. 83 and 99 in said

town and designated as Lot No. 33 of Sherwood Farms, Section "C" according to

a final map made by Alfred N. Ianuzi, Jr., L.L.S., and filed in the Onondaga

County Clerk's Office on June 5, 1986 as Map No. 6435.

2506

*Contract # ...*

# ADJUSTABLE RATE NOTE
### (1 Year Treasury Index—Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

February 27, 19 87     Syracuse     New York
                                        [City]                 [State]

LOT 33, STETSON CIRCLE, SYRACUSE, NEW YORK 13215
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 94,800.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is SYRACUSE SECURITIES, INC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.125 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on April 1 19 87. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on March 1, 20 17, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at 1010 James Street, Syracuse, New York 13203
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 638.62 This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of April 19 88, and on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding....Two..and.............. ......375/1000.......... percentage points (..2.375..%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than ......9.125....% or less than ........5..125...%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than ...13.125.%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ......15........................... calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ..........2........% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

............................................................ (Seal)
DAVID OSIER                                    -Borrower

............................................................ (Seal)
MICHELLE A. OSIER                              -Borrower

............................................................ (Seal)
                                               -Borrower

*[Sign Original Only]*

Pay To The Order Of

without recourse.
Syracuse Securities, Inc.

Laurence M. Smith,



# M&T Bank

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

P.O. Box 619063
Dallas, TX 75261-9063
Please do not send mail to this address

### Contact Us

| | |
|---|---|
| Customer Service: | 1-800-411-7627 |
| Property Tax: | 1-866-405-0949 |
| Property Insurance: | 1-888-882-1847 |

5-750-62852-0000070-001-000-000-000-000

DAVID OSIER
MICHELE OSIER
216 LUDDEN PKWY
SYRACUSE NY 13219-3022

750-4032-0212F - Escrow/Generic

INTERNET REPRINT



## ACCOUNT HISTORY

| | | Previous Escrow Account Projection | | | | Actual Escrow Account History** | | |
|---|---|---|---|---|---|---|---|---|
| | Deposits | Disbursements | Description | Balance | Deposits | Disbursements | Description | Balance |
| | | | STARTING BALANCE | 3,530.36 | | | STARTING BALANCE | 1,142.97 |
| AUG 11 | 525.79 | | | 4,056.15 | | * | | 1,142.97 |
| SEP 11 | 525.79 | 3,314.03 | SCHOOL TAX | 1,267.91 | 729.96 * | 3,451.93 * | SCHOOL TAX | 1,579.00 |
| OCT 11 | 525.79 | | | 1,793.70 | | * | | 1,579.00 |
| NOV 11 | 525.79 | | | 2,319.49 | 1,450.20 * | | | -128.80 |
| DEC 11 | 525.79 | | | 2,845.28 | 725.10 * | | | 596.30 |
| JAN 12 | 525.79 | 2,319.49 | COUNTY TAX | 1,051.58 | 725.10 * | 2,460.75 * | COUNTY TAX | 1,139.35 |
| FEB 12 | 525.79 | | HAZARD INS | 1,577.37 | | 696.00 * | HAZARD INS | 1,835.35 |
| MAR 12 | 525.79 | 676.00 | HAZARD INS | 1,427.16 | 11.70 * | * | HAZARD INS | 1,823.65 |
| APR 12 | 525.79 | | | 1,952.95 | | * | | 1,823.65 |
| MAY 12 | 525.79 | | | 2,478.74 | | * | | 1,823.65 |
| JUN 12 | 525.79 | | | 3,004.53 | | * | | 1,823.65 |
| JUL 12 | 525.79 | | | 3,530.32 | | * | | 1,823.65 |
| SEP 12 | | | SCHOOL TAX | 3,530.32 | | 3,460.21 * | SCHOOL TAX | 5,283.86 |
| DEC 12 | | | | 3,530.32 | 8,701.20 * | | | 3,417.34 |
| JAN 13 | | | COUNTY TAX | 3,530.32 | 725.10 * | 2,460.75 * | COUNTY TAX | 1,681.69 |

The total amount of escrow deposits received during this period was $13,068.36 and the total escrow disbursements were $12,529.64. Over this period, an additional $5.25 was deposited into your escrow account for interest on escrow. An asterisk (*) indicates a difference from a previous estimate either in the date or the amount of the deposit/disbursement.
** This section may also reflect anticipated escrow activity that has not yet occurred prior to the effective date of this analysis.

M&T Bank is attempting to collect a debt and any information obtained will be used for that purpose. If you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.

EACH YEAR WE WILL PROJECT ESCROW ACCOUNT ACTIVITY FOR THE NEXT TWELVE MONTHS BASED UPON THE BEST INFORMATION AVAILABLE. HOWEVER, THESE WILL ONLY BE ESTIMATES, AND EVEN SLIGHT DIFFERENCES CAN AFFECT THE PRECISENESS OF OUR PROJECT ESCROW ACTIVITY.

M&T BANK IS REQUIRED TO PROVIDE THE FOLLOWING INFORMATION REGARDING YOUR ESCROW ACCOUNT:

(1) WE ARE OBLIGATED TO MAKE ALL PROPERTY TAX AND INSURANCE (IF APPLICABLE) PAYMENTS IN A TIMELY MANNER AND WE ARE RESPONSIBLE FOR ANY PENALTIES OR INTEREST FOR BILLS NOT PAID ON TIME.
(2) WE ARE OBLIGATED TO COLLECT 1/12TH OF TAXES AND INSURANCE (IF APPLICABLE) AS A MONTHLY ESCROW PAYMENT. UNLESS THERE IS A SURPLUS OR SHORTAGE IN THE ACCOUNT, IN WHICH CASE A GREATER OR LESSER AMOUNT MAY BE REQUIRED.
(3) WE MUST DEPOSIT THE ESCROW FUNDS IN AN INSURED BANKING INSTITUTION.
(4) WE CANNOT CHARGE ANY FEES FOR MAINTENANCE OF THE ACCOUNT, INCLUDING OUR PROVIDING AN ANNUAL ESCROW ANALYSIS STATEMENT FOR THE PRECEDING 12-MONTH PERIOD.

# Defendant's Cross-Motion and Opposition
# Opposition
## Exhibit G

# Yes. Our records show that Freddie Mac owns your mortgage and Español your note date (the date you closed your loan) – is June 29, 1993.

You may be eligible for the Home Affordable Refinance Program (HARP) if your note date is on or before May 31, 2009.

## What to Do Next

1. **For help with your mortgage, contact your lender and let them know you would like to pursue assistance through the federal Making Home Affordable (MHA) program.**

   a. Your lender, the company to which you make your mortgage payments (also referred to as a mortgage servicer), can help you determine if you are eligible for the options under MHA.

      If you are current on your mortgage payments, but have been unable to refinance because you have little or no equity in the home, HARP may help you obtain a lower interest rate or more stable mortgage.

      If you are behind in making your mortgage payments or believe you may soon fall behind, a Home Affordable Modification may help you obtain more affordable mortgage payments.

      If it is not realistic for you to keep your home, a **short sale** or **"deed-in-lieu of foreclosure"** may help you transition to more affordable housing.

      Freddie Mac is working with its lenders to offer these solutions to eligible borrowers with Freddie Mac-owned mortgages. *Because Freddie Mac does not work directly with consumers, you will need to work with your lender to determine your best foreclosure prevention option.*

   b. **If you are not eligible for MHA**, don't give up! Ask your lender about other options to make your payments more affordable or to avoid foreclosure. There are other options available for homeowners with Freddie Mac-owned mortgages that are available through your lender.

2. **If you are unable to reach your lender, call a U.S. Department of Housing & Urban Development (HUD)-certified housing counselor at 1-800-569-4287 or visit the web site    to find a housing counselor in your area.**

   Housing counselors can help you contact and work with your lender to get help with your mortgage – free of charge

### Support Information

   **Be informed.** Visit our Avoiding Foreclosure Resource Center for information and guidance on alternatives to foreclosure, working with your lender, avoiding fraud and more.
   **Understand your options.** Visit our interactive tool, the Mortgage Help Navigator, to find the options for help that best align with your individual circumstance.
   **Be patient and diligent.** Lenders are working hard to get to every call and sometimes it takes longer than you expect.
   **Get prepared.** Before you call your lender, here's what you'll need for your conversation.
   Learn more about the options available to you under MHA    .

Thank you for contacting Freddie Mac. One of our top priorities is making sure homeowners with Freddie Mac-owned mortgages are able to get proper help and understand all options available to them during this difficult time.

### Avoiding Foreclosure Resources

   Mortgage Help: Understanding Your Options

Working with Your Lender
Who to Contact for Help
Avoiding Fraud

## Steps to Get Started with HARP

1. See if Freddie Mac Owns Your Loan
2. Learn More About HARP
3. Check Your Eligibility for HARP
4. Get Prepared and Call Your Lender
5. Find a HARP Lender

## Mortgage Help Navigator



Our interactive tool helps you find mortgage relief options that align with your specific situation.

# Defendant's Cross-Motion and Opposition
## Opposition
### EXHIBIT H

 **M&T Bank**  P.O. Box 963
Dallas, TX 75261-9063

## Mortgage Statement

| | |
|---|---|
| Account Number | ●●●●●997 |
| Payment Due Date | 01/01/12 |

# Amount Due $28,565.67

*If payment received after 05/16/14, $3.73 late fee will be charged.*

## Contact Us

| | |
|---|---|
| **General Customer Service:** | 1-800-724-2224 |
| **Property Tax:** | 1-866-406-0949 |
| **Property Insurance:** | 1-888-882-1847 |

 **Correspondence Address:**
Lending Services, Customer Support
P.O. Box 1288
Buffalo, NY 14240-1288

**Payment Mailing Address:**
P.O. Box 62182
Baltimore, MD 21264-2182

www.mtb.com/mymortgageinfo

Statement Date:   04/16/14

DAVID OSIER
MICHELE OSIER
216 LUDDEN PKWY
SYRACUSE NY 13219-3022

## Account Information

| | |
|---|---|
| Property Address | 3968 STETSON CIRCLE ONONDAGA NY 13215 |
| Interest Rate | 2.000% |
| Maturity Date | 03/2040 |
| Outstanding Principal* | $46,914.29 |
| Escrow Balance | -$14,365.23 |
| Next Scheduled Interest Rate Change | 05/01/2015 |
| Next Scheduled P&I Payment Change | 06/01/2015 |

*\* This is NOT a payoff figure. To obtain the full amount required to pay off your loan, please call us at 1-800-724-2224 or fax your request to 1-866-409-2653.*

## Explanation of Amount Due

| | |
|---|---|
| Principal | $113.63 |
| Interest | +$73.01 |
| Tax/Insurance | +$551.41 |
| **Amount Billed this Statement** | **$738.05** |
| Past Due Amount | +$22,923.37 |
| Unpaid Late Charge(s) | +$93.25 |
| Recoverable Corporate Advance | +$4,811.00 |
| **Total Amount Due 05/01/14** | **$28,565.67** |

## Important Messages

Our records indicate that your account is currently in foreclosure. The amount reflected above is not necessarily the amount that is required to reinstate your loan. Prior to sending any funds/payments please contact the attorney firm handling your foreclosure to obtain the current reinstatement or payoff amount. A letter was previously sent to you with this contact information. If you are unsure what attorney firm is handling the foreclosure, please contact a Foreclosure Specialist at 1-800-724-1633.

## Past Payments Breakdown

| | Paid Since Last Statement | Paid Year-to-Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes & Insurance) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## Transaction Activity

| Transaction Date | Due Date | Description | Total Received | Principal | Interest | Escrow | Optional Products | Subsidy | Unapplied Funds | Fees |
|---|---|---|---|---|---|---|---|---|---|---|
| 03/31/14 | | Property Inspection | | | | | | | | -$14.00 |
| 04/16/14 | 01/12 | Late Charge | | | | | | | | -$3.73 |

750-4052-0114F

# Defendant's Cross-Motion and Opposition

# EXHIBIT I

# FEIN, SUCH & CRANE, LLP

### *Northern New York Office*

28 East Main Street, Suite 1800
Rochester, New York 14614
585-232-7400
Direct Fax: 585-756-5201 (Evictions/Contested Litigation) (fax not for service of papers)
Direct Fax: 585-756-5200 (Settlement Conferences) (fax not for service of papers)

May 27, 2014

Mary E. Traynor, Esq.
472 South Salina Street, Suite 300
Syracuse, NY 13202

Re: <u>M&T Bank vs. Osier, David, et al.</u>
Index No. 004798/2013

Dear Ms. Traynor,

At the last conference on May 19, 2014, the Court ordered Plaintiff to provide payoff and reinstatement figures to Defendant's counsel. Plaintiff complies with the Court's directive.

Plaintiff calculated payoff and reinstatement figures good through June 2, 2014. Please see Exhibit "A" for payoff figures and Exhibit "B" for reinstatement figures. Plaintiff waived interest from January 2014 to June 2014, in addition to waiving all late fees, as the Court instructed. Plaintiff has also provided a breakdown of the Paid Attorney Foreclosure Costs. Please see Exhibit "C". Please note, the Court indicated it would only approve our fees at a discount of $1,000.00. Please note that my office will still seek to be reimbursed for *costs* it sustained. Please see Exhibit "C" for a breakdown of these costs.

Plaintiff advises that the good through date for the payoff and reinstatement figures could not be extended through June 23, 2014. Plaintiff can only calculate payoff and reinstatement figures with a good through date that is two weeks after the scheduled conference. After that time, Plaintiff needs to calculate new figures.

Sincerely,

V.S. Vilkhu, Esq.

Cc:   Hon. Donald A. Greenwood
Onondaga County Supreme Court
401 Montgomery St.
Syracuse, NY 13202

EXHIBIT "A"

# FEIN, SUCH & CRANE, LLP
## Attorneys At Law

**Northern New York Partner**
**Relin, Goldstein & Crane, LLP**
**28 E. Main Street, Suite 1800**
**Rochester, New York 14614**
**585-232-7400  Fax 585-756-5202**
**Service By Facsimile Not Accepted**

May 23, 2014

David Osier
Michele Osier
216 Ludden Parkway
Syracuse, New York 13219

      RE: Osier, David & Michele
      Property Address: 3968 Stetson Circle, Onondaga, New York 13215
      Loan Servicer: M&T Bank
      Loan Number: ███████997

Dear Sir or Madam:

    Pursuant to your request, I am enclosing the payoff figures with regard to the above-entitled mortgage.  Due to the fact that this matter was forwarded to our office for foreclosure proceedings, there have been additional charges incurred.  Accordingly, the total amount due to payoff the above-referenced mortgage is as follows:

              Payoff figures estimated good through June 2, 2014:

| | |
|---|---:|
| Principal Balance | $46,914.29 |
| Interest | 2,345.71 |
| *Interest Waived 1/1/14 – 6/1/14* | *-388.07* |
| Escrow Advance | 17,379.23 |
| Property Inspections | 294.00 |
| Pending Property Inspection | 28.00 |
| Recording Fee | 51.00 |
| Paid Attorney Foreclosure Fees | 980.00 |
| Paid Attorney Foreclosure Costs | 3,551.00 |
| Outstanding Estimated Attorney Foreclosure Fees | 150.00 |
| Outstanding Estimated Attorney Foreclosure Costs | 35.00 |
| | |
| Total Amount Due | $71,340.16 |

    This figure is an estimate good until June 2, 2014. Please make sure to use a cashier's check made payable to M&T Bank, and forward to our office. Upon confirmation that the

amount is sufficient to payoff the loan and bring the account current with our client, we will cancel the foreclosure action and our Lis Pendens.

**Federal Law requires us to notify you that we are acting as a debt collector, in an attempt to collect a debt. All information will be used for that purpose.**

**If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.**

**Please be advised that this and any further communication will not stay the proceeding of this action unless notified in writing by lender or its counsel, or unless stayed by operation of law.**

If you have any further questions, feel free to contact this office.

Very truly yours,
Fein, Such & Crane, LLP
Workout Department

# EXHIBIT "B"

# FEIN, SUCH & CRANE, LLP
## Attorneys At Law

**Northern New York**
**Relin, Goldstein & Crane, LLP**
**28 E. Main Street, Suite 1800**
**Rochester, New York 14614**
**585-232-7400 Fax 585-756-5202**
**Service By Facsimile Not Accepted**

May 21, 2014

David Osier
Michele Osier
216 Ludden Parkway
Syracuse, New York 13219

      Re: Osier, David & Michele
      Property Address: 3968 Stetson Circle, Onondaga, New York 13215
      Loan Servicer: M&T Bank
      Loan Number: ███████0997

Dear Sir/Madam:

      Pursuant to your request, I am enclosing the reinstatement figures with regard to the above-entitled mortgage. Due to the fact that this matter was forwarded to our office for foreclosure proceedings, there have been additional charges incurred. Accordingly, the total amount due to reinstate the above-referenced mortgage is as follows:

         Reinstatement figures estimated good through June 2, 2014:

| | |
|---|---|
| Payments Due | $24,399.47 |
| Accrued Late Charges | 96.98 |
| Pending Late Charges | 3.73 |
| *Late Charges Waived* | *-100.71* |
| Property Inspections | 294.00 |
| Pending Property Inspections | 28.00 |
| Paid Attorney Foreclosure Fees | 980.00 |
| Paid Attorney Foreclosure Costs | 3,551.00 |
| Outstanding Estimated Attorney Foreclosure Fees | 150.00 |
| Outstanding Estimated Attorney Foreclosure Costs | 35.00 |
| Total Amount Due | $29,485.47 |

      This figure is an estimate good until June 2, 2014. Please make sure to use a cashier's check, payable to M&T Bank, and forward it to our office. Upon confirmation that the

amount is sufficient to reinstate the loan and bring the account current with our client, we will cancel the foreclosure action.

**Federal Law requires us to notify you that we are acting as a debt collector, in an attempt to collect a debt. All information will be used for that purpose.**
**If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.**
**Please be advised that this and any further communication will not stay the proceeding of this action unless notified in writing by lender or its counsel, or unless stayed by operation of law.**

If you have any further questions, feel free to contact this office.

Very truly yours,
Fein, Such & Crane, LLP
Workout Department

# EXHIBIT "C"

# FEIN, SUCH & CRANE, LLP

## Attorneys At Law

**Northern New York Office**
**28 E. Main Street, Suite 1800**
**Rochester, New York 14614**
**585.232.7400  Fax 585-756-5202**
**Service By Facsimile Not Accepted**

May 23, 2014

David Osier
Michele Osier
216 Ludden Parkway
Syracuse, New York 13219

      RE: Osier, David & Michele
      Property Address: 3968 Stetson Circle, Onondaga, New York 13215
      Loan Servicer: M&T Bank
      Loan Number: ██████0997

Dear Sir or Madam:

Pursuant to your request, the breakdown of the Paid Attorney Foreclosure Costs is as follows:

| | |
|---|---:|
| Title Search/Continuation | $784.00 |
| Summons and Complaint/Lis Pendens | 439.00 |
| Service | 2,233.00 |
| RJI | 95.00 |
| Total Fees and Costs | $3,551.00 |

     Federal Law requires us to notify you that we are acting as a debt collector, in an attempt to collect a debt. All information will be used for that purpose.
     If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.
     Please be advised that this and any further communication will not stay the proceeding of this action unless notified in writing by lender or its counsel, or unless stayed by operation of law.

       If you have any further questions, feel free to contact this office.

               Very truly yours,
               Fein, Such & Crane, LLP
               Workout Department

# Defendant's Cross-Motion and Opposition
## Opposition
### EXHIBIT J

**Mary Traynor**

---

| | |
|---|---|
| **From:** | Mary Traynor |
| **Sent:** | Monday, June 09, 2014 12:21 PM |
| **To:** | 'vilkhuv@feinsuchcrane.com' |
| **Subject:** | M&T v Osier, Onondaga Cty Index No. 2013-4798 |

Dear Mr. Vilkhu,

Today I received your voice mail left last Friday.

I did not receive the payoff and reinstatement numbers nor a decision on our request for a brief extension of time by close of business May 20, 2014, as agreed in our May 19 conference in chambers. On May 27, 2014, your payoff and reinstatement numbers and the denial of our request for an extension of time were served on me by mail. The payoff number therein was higher than the number agreed upon on May 19. I would like to see receipts for the numbers set forth in your exhibit C. I would also like to see copies of receipts for escrow advances paid on behalf of Mr. Osier for taxes and insurance since September 1, 2013, including the taxes you said your client paid in January 2014.

Thank you,
MT

Mary E. Traynor, Staff Attorney
Legal Services of Central New York, Inc.
472 S. Salina St., 3rd Fl.
Syracuse, NY 13202
Direct Tel: (315) 703-6549  Fax: (315) 475-2706

# Defendant's Cross-Motion and Opposition
## EXHIBIT K

# FEIN, SUCH & CRANE, LLP

### Northern New York Office

28 East Main Street, Suite 1800
Rochester, New York 14614
585-232-7400
Direct Fax: 585-756-5201 (Evictions/Contested Litigation) (fax not for service of papers)
Direct Fax: 585-756-5200 (Settlement Conferences) (fax not for service of papers)

June 23, 2014

Mary E. Traynor, Esq.
Legal Services of Central New York, Inc
472 South Salina Street, 3rd Floor
Syracuse, New York 13202

> Re: <u>M&T Bank v. David Osier, et al.</u>
> Index: 4798/2013

Dear Ms. Traynor,

Please be advised I am in receipt of your email dated June 9, 2014, in regards to the reduction of attorney fees and your request to receive receipts in regards to both the paid escrow amounts and the breakdown of the Paid Attorney Foreclosure Costs.

Please be advised that the Court indicated they will only award $1,500.00 in <u>attorney fees,</u> which was agreed amount at the last settlement conference on May 19, 2014. Plaintiff has complied with this proposed settlement. What have not been reduced are the foreclosure costs which are in addition to the fees charged.

In terms of receiving copies of the receipts for the paid attorney foreclosure costs, that is privileged information and is not required by statue or the Court. Plaintiff can provide affidavits of services if need be. If not satisfactory, you are free to seek any remedy you see fit. Furthermore, please be advised that specific escrow receipts are not feasible as Plaintiff pays escrow amounts in bulk and there are no individualized receipts or cancelled checks. Obviously, the taxes are being paid by my client to the County or the County would be foreclosing as we correspond. As you are aware there is no *in rem* foreclosure proceeding pending. Proof of taxes being paid is publically available and I encourage you to direct your efforts towards the assessor for proof of payment.

When can my client expect reinstatement funds?

Thank you for your time, attention, and consideration.

Sincerely,

V.S. Vilkhu, Esq.

# Defendant's Cross-Motion and Opposition
## EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK      Ref: J. GREENWOOD
COUNTY OF ONONDAGA

M&T Bank,

     *Plaintiff,*

   *v.*

David Osier, et al.,

     *Defendants.*

Index No. 2013-4798

<u>VERIFIED ANSWER.</u>

  The defendant DAVID OSIER hereby answers the complaint as follows:

  1. General Denial.

  2. Defendant began making good faith efforts to pay off the alleged mortgage debt in full in October 2013.

  3. Plaintiff and plaintiff's counsel failed and refused to provide defendant with an accurate, legitimate and timely payoff amount.

  4. Plaintiff and plaintiff's counsel failed and refused to provide defendant with an accurate account statement including the description, amount and accrual dates of purported escrow advances, fees, costs, principal, and interest amounts comprising defendant's mortgage account.

  5. Plaintiff and plaintiff's counsel inflated the alleged mortgage debt by adding to defendant's mortgage account lump-sum and flat rate attorneys fees that are excessive, unreasonable, unauthorized and are for work not actually performed.

  6. Defendant lacks knowledge or information sufficient to form a belief as to the allegations in paragraphs 1, 2, 3, 16, and 17.

  7. In response to the allegations in paragraph 4 and the document identified as plaintiff's schedule C, defendant admits executing a note with Syracuse Securities, Inc., on

February 27, 1987, for $94,800, but lacks knowledge or information sufficient to form a belief as to the validity of the documents identified as plaintiff's schedule C.

       8.    In response to the allegations in paragraph 5, defendant denies the note was payable to plaintiff and lacks knowledge or information sufficient to form a belief as to whether the note was validly indorsed or negotiated to plaintiff and to the validity or authenticity of the documents identified as plaintiff's schedule C.

       9.    In response to the allegations in paragraph 6 and the documents identified as plaintiff's schedule D, defendant admits executing a mortgage with Syracuse Securities, Inc., on February 27, 1987, to secure the interest of Syracuse Securities, Inc. in the subject premises, but lacks knowledge or information sufficient to form a belief as to the validity or authenticity of the documents identified as plaintiff's schedule D.

      10.    In response to the allegations in paragraph 7, defendant lacks knowledge or information sufficient to form a belief as to the identity of the holder of the mortgage or the validity or authenticity of the documents identified as plaintiff's schedule D.

      11.    Defendant lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 8 except denies that the document titled "Home Affordable Mortgage Agreement" in plaintiff's schedule D was recorded in the County Clerk's office.

      12.    Defendant lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 9 except denies that the notice required by RPAPL 1304 was served.

      13.    Defendant lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 13 regarding payments made by plaintiff and denies that any purported sums paid by plaintiff are secured by the mortgage or are a valid lien.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 15 except admits there have been no prior proceedings and are no proceedings pending to enforce the note or mortgage.

### FIRST AFFIRMATIVE DEFENSE.

15.     Plaintiff failed to serve the "90-day" notice upon defendant required by RPAPL § 1304.

16.     Failure to serve this notice requires dismissal of the complaint.

### SECOND AFFIRMATIVE DEFENSE.

17.     Plaintiff failed to file the specialized request for judicial intervention (RJI) when proof of service of the summons and complaint was filed as required by the Uniform Rules for Trial Courts (22 NYCRR) § 202.12-a (b) (1).

18.     The first settlement conference must be scheduled within 60 days of filing the RJI, pursuant to 22 NYCRR § 202.12-a (c) (1).  Plaintiff's failure to timely file the RJI delayed the first settlement conference and defendant's opportunity to seek the earliest possible judicial intervention in resolving this dispute.

19.     Failure to file this timely requires dismissal of the complaint.

### THIRD AFFIRMATIVE DEFENSE/FIRST COUNTERCLAIM.

20.     By failing to provide an accurate accounting and payoff amount and by adding to the mortgage account excessive, unauthorized and unreasonable amounts as purported escrow advances, fees and costs including lump sum and flat rate attorney fees, plaintiff and plaintiff's counsel engaged in routine business acts and practices that are unfair, deceptive and misleading in a material way, that violate New York General Business Law § 349, and that thereby injured defendant.

21.    As a result of plaintiff's conduct defendant has suffered material harm by being placed into foreclosure, by damage to his credit rating, and by the extreme emotional distress and anguish caused by risking losing the home to foreclosure of a debt he is ready, willing and able to payoff.

### FOURTH AFFIRMATIVE DEFENSE/SECOND COUNTERCLAIM.

22.    By failing to provide an accurate accounting including a payoff amount and by adding to the mortgage account excessive, unauthorized and unreasonable amounts as purported escrow advances, fees and costs including lump sum and flat rate attorney fees, plaintiff and plaintiff's counsel engaged in unfair, deceptive and misleading business practices in violation of the Fair Debt Collection Practices Act, 15 USC § 1692 et seq.

23.    As a result of plaintiff's conduct defendant has suffered material harm by being placed into foreclosure, by damage to his credit rating, and by the extreme emotional distress and anguish caused by risking losing the home to foreclosure of a debt he is ready, willing and able to payoff.

### FIFTH AFFIRMATIVE DEFENSE/THIRD COUNTERCLAIM.

24.    By adding to defendant's mortgage account excessive, unauthorized and unreasonable lump sum and flat rate attorney fees, plaintiff and plaintiff's counsel violated New York Department of Financial Services regulation 3 NYCRR 419.10 (c) which permits the collection of attorney fees that are "reasonable and customary fees for work actually performed."

25.    As a result of plaintiff's conduct defendant has suffered material harm by being placed into foreclosure, by damage to his credit rating, and by the extreme emotional distress and anguish caused by risking losing the home to foreclosure of a debt he is ready, willing and able to payoff.

## SIXTH AFFIRMATIVE DEFENSE/FOURTH COUNTERCLAIM.

26.     By failing to provide an accurate accounting including a payoff amount and by adding to the mortgage account excessive, unauthorized and unreasonable amounts as purported escrow advances, fees and costs including lump sum and flat rate attorney fees, plaintiff and plaintiff's counsel violated New York State Department of Financial Services regulations at 3 NYCRR 419.2 *et seq* requiring servicers to, among other things, act with reasonable skill, care and diligence; to provide a clear, understandable and accurate statement of payoff amounts as of a specified date within a reasonable time; and to refrain from engaging in unfair or deceptive business practices or misrepresenting or omitting any material information in connection with the servicing of the loan, including, but not limited to, misrepresenting the amount, nature or terms of any fee or payment due or claimed to be due on a loan.

27.     As a result of plaintiff's conduct defendant has suffered material harm by being placed into foreclosure, by damage to his credit rating, and by the extreme emotional distress and anguish caused by risking losing the home to foreclosure of a debt he is ready, willing and able to payoff.

## SEVENTH AFFIRMATIVE DEFENSE/FIFTH COUNTERCLAIM.

28.     By failing to provide an accurate accounting including a payoff amount and by adding to the mortgage account excessive, unauthorized and unreasonable amounts as purported escrow advances, fees and costs, and by failing to make a good faith effort to "reach a mutually agreeable resolution," plaintiff and plaintiff's counsel violated their duty under CPLR § 3408 (f) and 22 NYCRR 202.12a (c)(4), to negotiate in good faith during the settlement conference portion of this action.

29.     In violation of CPLR § 3408 (c) and 22 NYCRR 202.12a (c)(3), plaintiff appeared at judicial settlement conferences by counsel who was not "fully authorized to dispose of the case" and who knew nothing about the case and who provided misleading information to defendant. This prolonged the judicial process, rendered the settlement conferences a sham, and further inflated the unauthorized purported escrow advances, fees and costs charged to defendant.

30.     As a result of plaintiff's conduct defendant has suffered material harm by being placed into foreclosure, by damage to his credit rating, and by the extreme emotional distress and anguish caused by risking losing the home to foreclosure of a debt he is ready, willing and able to payoff.

### EIGHTH AFFIRMATIVE DEFENSE/SIXTH COUNTERCLAIM.

31.     On April 8, 2014, defendant sent plaintiff a "Qualified Written Request" pursuant to 12 USC 2605 (e) and a "Bona Fide Written Demand" pursuant to New York RPL 274-a (2)(b)(iii) asking for account information and an explanation of specific charges to the account.

32.     Plaintiff's response of May 14, 2014, included an erroneous payoff amount and failed to provide the requested information about the purported escrow advances, fees and costs added to the mortgage account.

33.     As a result of plaintiff's conduct defendant has suffered material harm by being placed into foreclosure, by damage to his credit rating, and by the extreme emotional distress and anguish caused by risking losing the home to foreclosure of a debt he is ready, willing and able to payoff.

**WHEREFORE,** defendant respectfully demands the relief requested herein and all such other and further relief that this Court deems just and proper.

Dated: Syracuse, New York
_____5/22_____ , 2015

David Osier

Dated: Syracuse, New York
_____5/22_____ , 2015

LEGAL SERVICES OF CENTRAL NEW YORK

By: _____
Mary E. Traynor, Staff Attorney
Attorney for Defendant
472 S. Salina St., 3rd Fl.
Syracuse, NY 13202
(315) 703-6500

# VERIFICATION

State of New York      )
                       )ss.:
County of Onondaga   )

DAVID OSIER, being duly sworn, deposes and says that he is the defendant named in the within action; that he has read the foregoing Answer and knows the contents thereof; and that the same is true to deponent's own knowledge, except as to the matters stated therein to be alleged upon information and belief, and as to those matters, deponent believes them to be true.

_____
David Osier

Sworn to before me this 22nd

day of __May__, 2015.

_____
Notary Public

MARY E. TRAYNOR
Notary Public, State of New York
No. 02TR6026324
Qualified in Onondaga County
Commission Expires June 14, 2011
2019

Defendant's Cross-Motion and Opposition
EXHIBIT M

UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

CHRISTOPHER WHITE and WILLIAM SUITOR,
individually and on behalf of
all others similarly situated,

                      Plaintiffs,

        - against -

FEIN, SUCH and CRANE, LLP,

                  Defendant.

Case No.: 15-CV-438 - C

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

---

## COMPLAINT FOR DAMAGES, INJUNCTIVE, DECLARATORY
## AND OTHER RELIEF

       Plaintiffs, Christopher White and William Suitor, on behalf of themselves and of all those similarly situated, by and through their undersigned attorneys, allege upon knowledge as to themselves and their own acts, and as to all other matters upon information and belief, and bring this Complaint against the above-named Defendant, Fein, Such and Crane, LLP (the "Defendant") and in support thereof allege the following:

### PRELIMINARY STATEMENT

       1.     This putative class action seeks relief for Defendant's violations of the Fair Debt Collection Practices Act, 15 USC § 1692, *et seq.* ("FDCPA"), and New York General Business Law § 349 ("GBL § 349"). Defendant, one of the largest foreclosure firms in the State of New York ("New York"), routinely exploits the foreclosure process by misrepresenting and inflating the costs it incurs for foreclosure-related services. Defendant systematically and intentionally uses unfair, unconscionable and deceptive means in connection with the collection of foreclosure related fees that are not legally due from the mortgagor and are prohibited by New York law.

       2.     The unlawful attorney fees and costs demanded by Defendant increases the amount

that financially strapped New York homeowners must raise to reinstate or payoff their mortgages and thereby avoid foreclosure. Defendant's unlawful practices contribute to the avoidable loss of consumers' homes and unlawfully strip equity from New York homeowners.

### JURISDICTION AND VENUE

3.      Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 USC §§ 1331, 1367(a), together with the pendent jurisdiction of the Court. Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202.

4.      Venue in this District is proper in that the Defendant transacts business here and the conduct complained of occurred here.

### PARTIES

5.      Plaintiff, Christopher White, is natural person residing in Erie County, New York. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.      Plaintiff, William Suitor, is natural person residing in Niagara County, New York. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

7.      Defendant, Fein, Such and Crane, LLP (the "Defendant"), is a New York Domestic Registered Limited-Liability Partnership with a principal place of business located at 28 Main Street, Suite 1800, Rochester, New York 14614.

8.      Defendant regularly attempts to collect debts alleged to be due another, and is and has at all times pertinent hereto been a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9.      Defendant has attempted to collect a debt via a foreclosure action against Plaintiff White filed in Erie County Supreme Court on or around September 23, 2013.

10.     Defendant has attempted to collect a debt via a foreclosure action against Plaintiff Suitor filed in Niagara County Supreme Court on or around September 05, 2013.

## FACTUAL ALLEGATIONS

I.      NEW YORK STATE'S RESIDENTIAL FORECLOSURE PROCESS

11.     A number of statutes have been enacted by the New York State Legislature in an attempt to stem the tide of home foreclosures. The first of these, CPLR § 3408, became effective August 8, 2008. Pursuant to CPLR § 3408, counsel for foreclosing plaintiffs are required to file a specialized Request for Judicial Intervention ("RJI") simultaneously with the filing of proof of service of the summons and complaint with the court clerk. The court is mandated to schedule a settlement conference within 60 days after the filing of the RJI.

12.     These mandatory settlement conferences are intended to provide an opportunity for homeowners and lenders to try to reach a solution that avoids foreclosure. Homeowners have the opportunity to apply for loan modifications or other loss mitigation options (*e.g.*, short sale and deed-in-lieu-of-foreclosure) under the supervision of the court. The New York Legislature and the New York court system have deemed these conferences a crucial step in the reduction of home foreclosures.

13.     To implement the Legislature's directives contained in CPLR § 3408, the New York State Unified Court System added Section 202.12-a to the Uniform Rules for the New York State Trial Courts ("Uniform Rules"). Section 202.12-a governs residential mortgage foreclosure actions and establishes mandatory court procedures for both the foreclosing plaintiff and the homeowner in the Foreclosure Settlement Conference Part ("FSCP"). 22 NYCRR 202.12-a(b).

14.     Once a case is assigned to the FSCP, the underlying residential foreclosure action, including discovery, is stayed until the case is either discontinued following settlement or the case is released from the FSCP without settlement. Foreclosing plaintiffs are required to hold all motions in abeyance while settlement conferences are being held, and are prohibited from charging, imposing

3

or otherwise requiring payment from homeowners for any cost, including but not limited to attorneys' fees, for appearance at or participation in the settlement conference. *See* 22 NYCRR 202.12-a(c)(7).

15.     Further, the Superintendent of the Department of Financial Services' Emergency Regulations require that in the event a foreclosure action is terminated prior to the final judgment and sale for a loss mitigation option, a reinstatement, or payment in full, borrowers "shall only be liable for reasonable and customary fees for work actually performed." *See* 3 N.Y.C.R.R. § 419.10(c).

16.     The underlying residential foreclosure action in a case assigned to the FSCP is deemed "settled" when it is resolved by satisfaction, reinstatement or permanent modification of the subject loan, or by the closing of title following an agreed upon short sale or deed-in-lieu transaction. Pursuant to CPLR 3408(g), "[t]he plaintiff must file a notice of discontinuance [of the underlying residential foreclosure action] and vacatur of the lis pendens within one hundred fifty days after any settlement agreement or loan modification is fully executed."

II.     **DEFENDANT EXPLOITS THE FORECLOSURE PROCESS TO COLLECT UNLAWFUL FEES**

17.     Defendant systematically and intentionally misrepresents, and attempts to collect from homeowners unreasonable and deceptive costs for foreclosure-related services that are either exaggerated or did not happen at all. These charges are capitalized and added to the homeowner's principal balance. When a foreclosure action is settled through the foreclosure settlement conference process, homeowners must agree to pay these capitalized expenses through a loan modification or loan reinstatement, and homeowners seldom challenge the capitalized legal fees and costs because of the risk that they may lose an offered loan modification by doing so and incur additional legal costs or even lose their homes.

4

18.     In Erie County, conferences are overseen by rotating volunteer law clerks with no judicial authority. By taking advantage of the lack of oversight in settlement conferences, Defendant abuses the foreclosure process to charge whatever fees and costs it can get away with. Homeowners seeking to save their homes from foreclosure must pay whatever fees and costs the law firm claims to have incurred in performing rendered services. Law clerks have no authority to question Defendant's claimed fees and costs, allowing the firm to, without accountability, unlawfully strip equity from New York homeowners.

19.     Despite being fully capable of calculating the cost of services actually rendered in the foreclosure action, Defendant routinely includes in its reinstatement notices to homeowners claims for services not rendered and expenses not actually incurred. These unlawful charges are usually labeled as "Outstanding Estimated Foreclosure Fees and Costs" on the reinstatement and payoff notices Defendant provides to homeowners in default. These charges, however improper, are then assessed to homeowners when they reinstate their loans or are offered loan modifications.

**A.     Defendant's Demand for Estimated Fees and Costs Is Deceptive and Seeks to Collect Unlawful Fees**

**a.     Discontinuance Cost**

20.     Disregarding the statutory requirement that foreclosure plaintiffs file a notice of discontinuance and vacatur of the lis pendens after the foreclosure action has been settled in the FSCP, Defendant routinely charges homeowners for the preparation of motions to discontinue the underlying foreclosure actions. Although motions to discontinue are unnecessary, Defendant has admitted that it is the firm's practice to charge this fee in case it is compelled to seek an order from the court discontinuing the action even when it has not actually prepared the motion.

21.     Homeowners are generally informed of the law firm's fees and costs through a

reinstatement notice. The purpose of the reinstatement notice is to inform the homeowners of the

amount that must be paid in order to bring the loan current, as of the date of the notice - including

foreclosure related expenses that are the homeowner's responsibility.

22.     The notice is thus an attempt to collect a debt from the homeowners. When a

homeowner obtains a loan modification these amounts are paid to Defendant by the foreclosing

party and capitalized into the homeowner's principal balance.

23.     Based upon information and belief, in the overwhelming majority of foreclosure

cases, homeowners rarely appear in the underlying foreclosure actions. As such, it is the custom and

practice of most foreclosing plaintiff law firms to file notices of discontinuance in settled cases.

24.     Based upon information and belief, while Defendant charges homeowners for the

preparation of motions to discontinue, it is their custom to discontinue foreclosure actions by filing

stipulations of discontinuance in settled cases not motions. Defendant's practice of charging

homeowners for unnecessary services and hours not actually expended results in the collection of

unearned and therefore unlawful fees.

25.     Based upon information and belief, Defendant recycles the same "Notice to

Discontinue Action" in every foreclosure case. Defendant's practice of charging homeowners for the

same time or work product repeatedly also results in the collection of unearned and therefore

unlawful fees.

b.     **Order of Reference Cost**

26.     Disregarding the statutory requirement that foreclosing plaintiffs hold all motions in

abeyance while settlement conferences are being held, Defendant routinely charges settling

homeowners a fee for the preparation and filing of motions for orders of reference. Defendant is not

required to and does not actually file motions for orders of reference in settled cases.  Defendant's

6

practice of charging homeowners for services not actually provided results in the collection of unearned and therefore unlawful fees.

    c.    **Referee Cost**

    27.    Despite the fact that cases are settled in conference, Defendant routinely charges to homeowners the cost it would have incurred for the hiring of a referee to conduct a foreclosure sale, even though it did not actually incur that cost.

    28.    In violation of New York Law and their mortgage documents, which obligate them to pay only the lender's reasonable expenses, homeowners are forced to pay these unlawful, estimated and unincurred charges in order to reinstate their mortgages or, in the case of a loan modification, these charges are capitalized and added to their principal balance. These unlawful charges create a substantial hardship for already financially strapped homeowners who are seeking to save their homes from foreclosure.

**B.    Defendant Uses Deceptive and Unfair Debt Collection Practices to Collect Overstated Attorneys' Fees and Costs**

    29.    Defendant also gets away with charging excessive, unauthorized, and unlawful costs by systematically refusing borrowers' requests to provide *quantum meruit* proof of the quality and quantity of services provided.

    30.    Foreclosing plaintiffs or servicers rely upon the law firms they hire to perform all the legal work in the foreclosure action for the maximum allowable fee and to pass through only its actual, necessary and reasonable costs. When a foreclosure action does not proceed to judgment, servicers that hire the law firm do not absorb the law firm's costs or fees. Instead, servicers obtain reimbursement from homeowners by adding the costs and fees to the homeowner's principal balance. Therefore, servicers have little incentive to scrutinize the reasonableness of the fees charged

by law firms because they ultimately pass those costs to someone else.

31.     Homeowners cannot police Defendant's fees effectively because Defendant routinely refuses to provide documentation in support of fees demanded.

a.     **"Allowable" Attorney Fees**

32.     In addition to the estimated fees and costs listed on Defendant's reinstatement notices, homeowners are also charged flat rate foreclosure attorneys' fees. These fees are usually labeled as "allowable attorney fee," and bear no relationship to the services provided in each case, but are determined exclusively by the agreed-upon flat attorney fee (the "maximum allowable fee") between foreclosing plaintiffs or loan servicers and the law firm.

33.     All mortgage loan servicers operating within New York State are subject to New York State Department of Financial Services ("DFS") regulatory scheme. *See generally* 3 NYCRR Part 419. Among other things, the regulations sets forth the requirements relating to fees permitted to be collected by Servicers. 3 NYCRR 419.10(b). Pursuant to Part 419.10(c), "[a]ttorney's fees charged in connection with a foreclosure action shall not exceed reasonable and customary fees for such work. In the event a foreclosure action is terminated prior to the final judgment and sale for a loss mitigation option, a reinstatement or payment in full, the borrower shall only be liable for reasonable and customary fees for work actually performed." 3 NYCRR 419.10(c).

34.     Defendant's practice of mechanically charging homeowners a flat fee for legal services and its routine refusal to provide *quantum meruit* proof of the value of services provided, denies homeowners and their counsel the ability to confirm that they were only charged actual, necessary, and reasonable costs as required by DFS and their respective mortgage documents.

35.     In view of the fact that most cases are settled in conference, present no novel or difficult questions of law, and the fact that Defendant is a "foreclosure mill", which recycles papers

8

from previous litigation; the flat attorney fee routinely charged to homeowners by Defendant is excessive and disproportionate to the quantity and quality of legal services actually rendered.

      **b.**    **New York State Department of Financial Services Filing**

      36.    Effective February 13, 2010, the New York State Banking Department (now known as New York State Department of Financial Services (NYDFS)) requires each lender, assignee or mortgage loan servicer to electronically file two (2) separate Notices with the New York State Superintendent of Banks. The first Notice ("Form A") is required, within three business days after serving the 90-day pre-foreclosure notice for residential real property or cooperative apartments. The second Notice ("Form B") is required within five business days after filing a lis pendens. Each of the respective forms may be filed in bulk.

      37.    Based upon information and belief, Defendant routinely charges to homeowners a cost for the filing of the second notice.

      38.    Based upon information and belief, filers do not incur a cost for the filing of the required notices with DFS. Further, the required filings are usually done by the foreclosing plaintiffs or servicers and not the foreclosing law firms. In any event, the fee charged is unreasonable considering the labor and difficulty involved in performing this task.

      **c.**    **Service of Process Cost**

      39.    Defendant routinely charges homeowners excessive fees for service of process. These fees are usually significantly higher than what is reasonable and customary for the same service in other actions. Defendant, when asked to provide documentation of costs, usually refuses to do so. In some cases, foreclosure defendants served simultaneously, at the same location are billed separately, the numbers of defendants served are overstated and service costs are padded with charges not usually related to service of process.

C.    **Individual Plaintiff Facts**

  a.    *Christopher White*

40.    On September 23, 2013, Defendant filed a foreclosure action against Mr. White on behalf of HSBC Bank. On December 13, 2013, the initial settlement conference was held at Erie County Supreme Court. Based on Mr. White's application for a loan modification, he was approved for a trial modification on March 31, 2014.

41.    On or around June 18, 2014, Mr. White, after completing a three month trial plan, was offered a permanent loan modification. On June 30, 2014, a copy of the agreement was provided to Mr. White's attorney. According to the agreement $22,933.66 was being added to Mr. White's principal balance. This amount included $6,041.56 labeled as fees and costs. A copy of the loan modification agreement is attached hereto as Exhibit A.

42.    Before the loan modification was offered, Defendant provided two reinstatement notices dated January 13, 2014 and March 26, 2014. On July 3, 2014, after the modification was offered Defendant provided another reinstatement notice. Copies of the reinstatement notices are attached hereto as Exhibit B.

43.    The reinstatement notices were rife with inconsistencies: the notice dated January 13, 2014 demanded fees and costs in the amount of $5,946.56;  the notice dated March 26, 2014 demanded fees and costs in the amount of $5,356.56 and the notice dated July 3, 2014  demanded fees and costs in the amount of $5,646.56.

44.    The Notice dated July 3, 2014, provided the following breakdown of the fees and costs charged to the client:

- Incurred Foreclosure Fees and Costs:
       Attorney Fees                                                     $779.00
       **Total Outstanding Incurred Foreclosure Fees and Costs**     $779.00

- Estimated Foreclosure Fees and Costs:

| | |
|---|---|
| Attorney Fees | $580.00 |
| Stipulation of Discontinuance Fee | 300 |
| Stipulation of Discontinuance Cost | 35 |
| Order | 45.00 |
| Ref Cost | 250.00 |
| **Total Outstanding Estimated Foreclosure Fees and Costs** | **$1,210.00** |

- Mortgagor Recoverable Corporate Advance:

| | |
|---|---|
| Broker's Price Opinion | $285.00 |
| Title Costs | 655.56 |
| Summons & Complaint | 400.00 |
| Lis Pendens | 60.00 |
| Service of Process | 612.00 |
| Request for Judicial Intervention | 95.00 |
| Allowable Attorney Fees | 1,260.00 |
| **Total Mortgagor Recoverable Corporate Advance** | **$3,367.56** |

- Other Fees Due:

| | |
|---|---|
| Property Inspections | $290.00 |
| **Total of Other Fees Due** | **$290.00** |

45.     Defendant charged Mr. White estimated fees and costs in the amount of $1,210.00 for services not actually provided, some of which Defendant knew would never be provided. These charges were capitalized and added to Mr. White's principal balance. Defendant repeatedly denied Mr. White's request to provide *quantum meruit* proof of the attorney fees and costs added to his principal balance.

46.     On information and belief, the attorneys' fees sought represented the portion of a flat fee negotiated by Defendant with its client, HSBC Bank, which exceeded the value of work actually performed or expected to be performed by Defendant, which amount could not lawfully be shifted to the homeowner under his mortgage and New York law.

b.     *William Suitor*

47.     On or around September 5, 2013, Defendant, Fein, Such and Crane, filed a foreclosure summons and complaint on behalf of its client, HSBC Bank, against Mr. and Ms. William

11

Suitor.

48.    On September 23, 2013, Mr. Suitor filed a pro se answer and counterclaim that raised a number of affirmative defenses.

49.    On September 25, 2014, Mr. Suitor amended his answer, asserting that the Plaintiff did not file a Request for Judicial Intervention (RJI) as required by Uniform Rule 202.12-a(b).

50.    The initial settlement conference was held on October 24, 2013. Mr. Suitor, working with his assigned counsel, Daniel Webster of Legal Services for the Elderly, submitted an application for a loan modification to PHH, the loan servicer.

51.    On or around July 18, 2014, Mr. Suitor was approved for a loan modification. A copy of the loan modification agreement is attached hereto as Exhibit C.

52.    According to the modification agreement, $15,520.88 in fees and costs were capitalized and added to his loan. The capitalized amount included attorney's fees and costs in the amount of $1,748.00 and an unexplained "Recoverable Balance" in the amount of $3,767.59. According to the agreement, Mr. Suitor had until July 31, 2014 to sign and return the modification agreement. The first payment under the modification agreement was due on September 1, 2014.

53.    Despite having questions about the reasonableness of the charged fees and costs, Mr. Suitor, in an effort to not default on the offered modification and risk losing his home, signed and returned the modification agreement.

54.    On or around August 8, 2014, Mr. Suitor, by and through his counsel, Daniel Webster, wrote a letter to Defendant's office requesting a breakdown and disputing the attorney's fees and costs. A copy of the letter is attached hereto as Exhibit D.

55.    On or around August 14, 2014, Defendant's associate attorney V.S. Vilkhu, responded to Mr. Webster defending the fees and costs totaling $5,515.59 charged to Mr. Suitor. Mr.

Vilkhu failed to provide a breakdown of the $1,748.00 labeled as attorney's fees. A copy of Mr. Vilkhu's letter is attached hereto as Exhibit E.

56.     The $3,767.59 labeled as recoverable balance was broken down as follows:

| | |
|---|---|
| Litigation Fee: | $1,332.03 |
| Filing Fee- Notice of Pendency: | $35.00 |
| Filing Fee-Judicial Intervention | $95.00 |
| Court Cost- Title Search: | $400.00 |
| Title Cost- Title Search: | $520.56 |
| Attorney Fees: | $875.00 |
| Service Cost: | $510.00 |
| **Total Recoverable Balance:** | **$3,767.59** |

57.     Although the case was settled in conference and there was no litigation, Defendant charged Mr. Suitor $1,332.00 in litigation fee. In addition to the $1,748.00 labeled as attorney's fees and costs and the $$1,332.00 "litigation fee," the "Recoverable Balance" also included an additional $875.00 in attorney's fees.

58.     Defendant's failure to provide *quantum meruit* proof of the value of services provided, denied Mr. Suitor and his counsel the opportunity to properly review the reasonableness of the legal fees charged.

59.     On or around April 1, 2015, HSBC, after reviewing Mr. Suitor's account, informed him that he was entitled to a refund in the amount of $2,701.35. According to HSBC's letter, the refund included " $2,629.59 in fees and/or cost previously assessed to Mr. Suitor's account and included in the loan modification and interest accrued in relation to those fees and/or costs from the effective date of the modification to 3/31/2015 in the amount of $71.76." The refund was applied to Mr. Suitor's principal balance. A copy of HSBC's letter is attached hereto as Exhibit F.

60.     On information and belief, the $2,629.59 refund represented fees and costs that Defendant unlawfully collected for services not actually rendered in Mr. Suitor's foreclosure action.

13

## CLASS ALLEGATIONS

61.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

62.     This class action is brought by Plaintiffs on behalf of themselves and all others similarly situated for the purpose of asserting the claims alleged in this Complaint on a common basis. Plaintiffs' first proposed class (hereinafter the "FDCPA Class") is defined under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 23(b)(2) and (3), and they propose to act as representatives of the following class comprised of:

> All New York State residents from whom Fein, Such and Crane, LLP collected or attempted to collect inflated, unreasonable and unauthorized foreclosure related attorney's fees and costs during the one-year period prior to the filing of the Complaint in this action through the present.

63.     Plaintiffs' second proposed class (hereinafter the "GBL § 349 Class") is defined under Fed. R. Civ. P. (23(b)(2) and (3), and they propose to act as a representative of the following class comprised of:

> All persons from whom Fein, Such and Crane, LLP collected or attempted to collect inflated, unreasonable and unauthorized foreclosure related attorney's fees and costs through such time in the future when the effects of Defendant's violation of GBL § 349, as alleged herein have ceased.

64.     Plaintiffs do not know the exact size of or identities of the proposed classes, because such information is in the exclusive control of Defendant. Plaintiffs believe that the Classes encompass thousands of individuals whose identities can be readily ascertained from Defendant's books and records. Therefore, the proposed classes are so numerous that joinder of all members is impracticable.

65.     All members of the classes have been subject to and affected by the same conduct. The claims are based on Defendant's violation of 3 NYRR § 419.10(c) and Uniform Rules § 202.12-a(7), by collecting and attempting to collect unlawful attorney's fees and costs for foreclosure related

services. There are questions of law and fact that are common to the Classes and predominate over

any questions affecting only individual members of the Classes. These questions include but are not

limited to the following:

a. whether Defendant is entitled to charge borrowers attorneys' fees for foreclosure related services and expenses not actually rendered or incurred;

b. whether Defendant's conduct in collecting and attempting to collect attorneys' fees which are not legally due and owing under New York State law violated 15 U.S.C. §§ 1692f and 1692f(1);

c. whether Defendant's conduct in collecting and attempting to collect attorneys' fees which are not legally due and owing under borrower's mortgage documents violated 15 U.S.C. § 1692f(1);

d. whether Defendant violated Uniform Rules § 202.12- a(b)(7)by collecting and attempting to collect attorney's fees for motions allegedly prepared while settlement conferences are being held;

e. whether Defendant's collection and attempted collection of amounts prohibited Uniform Rules § 202.12- a(b)(7)constitutes an unfair collection practice in violation of the FDCPA;

f. whether Defendant's collection and attempted collection of amounts prohibited Uniform Rules § 202.12- a(b)(7)constitutes a "deceptive practice" in violation of GBL § 349;

g. whether by sending homeowners reinstatement notices and loan modification offers requiring payment of amounts prohibited by law from collection, Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10);

h. whether Defendant violated 3 N.Y.C.R.R § 419.10(c) by collecting and attempting to collect unreasonable and inflated attorney's fees and for foreclosure related services and expenses not actually rendered or incurred;

i. whether Defendant's violation of 3 N.Y.C.R.R § 419.10(c) constitutes an unfair collection practice in violation of the FDCPA;

j. whether Defendant's violation of 3 N.Y.C.R.R § 419.10(c) constitutes a "deceptive practice" in violation of GBL § 349;

k. whether the above practices caused Class members to suffer injury; and

l.    the proper measure of damages and injunctive relief.

66.    The claims of the individual named Plaintiffs are typical of the claims of the Classes and do not conflict with the interests of any other members of the Classes in that both Plaintiffs and the other members of the Classes were subjected to the same conduct.

67.    The named Plaintiffs will fairly and adequately represent the interest of the Classes. They are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class action litigation, and CPLR § 3408 representation.

68.    A class action is superior to other methods for the fast and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

69.    Certification of the Classes pursuant to Fed. R. Civ. P. 23(b)(2) and (3) is appropriate. A class action is the only appropriate means of resolving this controversy because the Class members are not generally aware of their rights and are unlikely to enforce them when faced with the Hobson's choice of doing so at the cost of potentially having a loan modification offer expire and losing their homes. In the absence of a class action, a failure of justice will result.

<u>**COUNT 1**</u>

**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT**

70.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

71.    The FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt. 15 U.S.C. § 1692f.

72.    Defendant violated the FDCPA with respect to the Plaintiffs and each member of the class. Said violations include, without limitation:

16

a.  attempting to collect amounts not permitted by law (15 U.S.C. § 1692f(1));

b.  using unfair and unconscionable collection methods (15 U.S.C. § 1692f);

c.  Using deceptive, false, misleading representation in connection with debt collection (15 U.S.C. § 1692e

d.  giving a false impression of the character, amount or legal status of the alleged debt (15 U.S.C. § 1692e);

e.  using false or deceptive collection methods (15 U.S.C. § 1692e(10)); and

f.  impliedly threatening to take illegal action which cannot legally be taken – collecting the costs and fees (15 U.S.C. § 1692e(5)).

73.    As a result of the above violations of the FDCPA, Defendant is liable to Plaintiffs and the Classes for the maximum amount of statutory damages provided under 15 U.S.C. § 1692k, attorney's fees, litigation expenses and costs, and such other and further relief as this Court deems just and proper.

## COUNT II

### VIOLATION OF NEW YORK GERNERAL BUSINESS LAW § 349

74.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

75.    GBL § 349(a) prohibits deceptive acts or practices in the conduct of any business trade or commerce or in the furnishing of any service in New York State.

76.    Plaintiffs bring this claim on behalf of themselves and on behalf of each member of the Class described above.

77.    Under GBL § 349(a), an individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful acts or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

78.    Defendant's practice of demanding excessive, unauthorized and unlawful costs for

foreclosure-related services creates a substantial hardship for financially strapped homeowners.

79.     A homeowner receiving Defendant's reinstatement notice could reasonably be deceived and conclude that he or she must pay the unlawful fees and costs demanded by the defendant.

80.     By providing homeowners with reinstatement notices demanding inflated fees and costs, Defendant increases the amount homeowners have to raise to reinstate their loans. Thereby preventing homeowners from expeditiously resolving their mortgage arrears. Simultaneously, as Defendant's conduct deters homeowners from reinstating their mortgages, homeowners' loan balances increase because of unnecessary late fees, delinquent interest, and foreclosure-related costs and fees assessed against homeowners' accounts. Such increased loan balances render it more difficult for homeowners to qualify for loan modifications.

81.     Based on Defendant's own admission, it has a company-wide policy of demanding payment for foreclosure-related services when such fees are not legally due and owing. This practice is recurring, deceptive and misleading.

82.     Defendant violated, and continues to violate GBL § 349(a) with respect to the Plaintiffs and each member of the Class. Said violations include, without limitation:

      a.  seeking to collect and collecting attorney's fees for foreclosure-related services when such fees are not legally due and owing; and

      b.  falsely representing the nature, character or amount of the debt sought to be collected.

83.     Defendant's false representations constitute deceptive acts or practices in the conduct of business, trade or commerce in violation of GBL § 349.

84.     Defendant's deceptive acts and practices have a broad impact on the consuming public at large and are not private contract disputes, unique to the parties.

public at large and are not private contract disputes, unique to the parties.

85.     Defendant's false representations were materially misleading and likely to mislead a reasonable consumer acting reasonably under the circumstances.

86.     Defendant committed the above-described acts willfully and/or knowingly.

87.     Defendant's deceptive acts have caused injury and damage to Plaintiffs and the Class and, unless enjoined, will cause further irreparable injury.

88.     Plaintiffs and members of the Class are entitled to a declaratory judgment that Defendant's practice of providing homeowners with reinstatement notices demanding payment for foreclosure related-services when such fees are not legally due and owing and/or causing such fees to be capitalized into homeowners' principal balance is unlawful.

89.     As a direct and proximate result of Defendant's violation of GBL § 349, Plaintiffs and the other members of the Class have suffered compensable harm and are entitled to preliminary and permanent injunctive relief, and to recover actual damages, costs and attorney's fees.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request the following relief:

a.     Certify this case as a class action and appoint the named Plaintiffs to be Class representatives and their counsel to be Class counsel;

b.     An order declaring the acts and practices of Defendant complained of herein to constitute a violation of the FDCPA;

c.     An order declaring the acts and practices of Defendant complained of herein to constitute a violation of GBL § 349;

d.     An order requiring Defendant to provide *quantum meruit* proof of the quality and quantity of services actually provided and invoices to support claimed legal costs in all foreclosure actions;

e.     An award of actual damages to named plaintiffs and the Class in the form of disgorgement of all amounts unlawfully collected by Defendant and reimbursement

19

of interest and other expenses incurred by Plaintiffs and class members as a result of Defendant's unlawful conduct;

f.      An order permanently enjoining Defendant from demanding fees above what is reasonable and customary fees for work actually performed and costs actually incurred;

g.     An order awarding statutory damages to each individual Plaintiff and to the FDCPA Class, pursuant to FDCPA, 15 U.S.C. § 1692k;

h.     An order awarding actual and/or minimum damages, whichever are greater, to each named plaintiff and the GBL Class members pursuant to GBL § 349(h);

i.      An order awarding Plaintiffs the costs of the action together with reasonable attorney's fees under GBL § 349(h), 15 U.S.C. § 1692k, and Fed. R. Civ. P. 23(h); and

j.      Grant Plaintiffs and the Classes such other and further relief as this Court finds equitable, just, necessary and proper.

### JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: Buffalo, New York
May 15, 2015

Respectfully Submitted,

WESTERN NEW YORK LAW CENTER

Keisha A. Williams, Esq.
237 Main Street, Suite 1130
Buffalo, New York 14203
Tel: 716-828-8415
Fax: 716-270-4005
kwilliams@wnylc.com

20

# EXHIBIT A

June 18, 2014

CHRISTOPHER M WHITE

█████████████████████

Re: LOAN NUMBER: ████████████████████
Property Address: ██████████████████
          BUFFALO, NY 14211

Dear Customer:

Enclosed is a proposed agreement to modify your loan. This Modification Agreement will not be binding or effective until both you and HSBC BANK USA, N.A. have signed it. Please complete the following steps to sign and return your loan modification no later than July 1, 2014.

I am sending this letter in reference to your application for assistance with the above mortgage.  We are committed to working with our borrowers who may be experiencing financial difficulties.  As part of this commitment, I am pleased to be your designated Case Manager.   I am your single point of contact throughout the review process to determine whether you are eligible for any Homeowners Assistance Programs. As part of this process, I am interacting with various departments working on your file and can assist you in answering any of your questions about your account.

Please contact DONALD SZALASNY with questions that you may have specific to your account or this letter.   My direct contact number is 800-750-2518, extension 85372 and my email address is Donald.Szalasny@mortgagefamily.com.

**Steps to complete the modification process**

1. All borrowers must sign in BLACK ink only the two (2) original copies of the enclosed documents. All signatures must be completed in the presence of a Notary Public and witness. The duplicate copy is for your records. The two (2) original copies must be returned to the address listed below.

2. The contribution amount of $0.00 MUST be in the form of CERTIFIED FUNDS. Mailing non-certified funds may result in the cancellation and rejection of the loan modification proposal.

3. Return the documents and contribution to the following address:

        Mortgage Service Center
        300 Prince George's Blvd Suite 101
        Upper Marlboro, MD 20774

Please allow 30 to 45 days for the Loan Modification process to be completed. You will receive a new coupon book after the Loan Modification is processed.

NOTE: If applicable, your total mortgage payment may change due to changes in your escrow account.

8433 11/12

Loan No: ▚▚▚▚▚▚▚▚▚▚

Upon the Modification Agreement becoming binding and effective, the mortgage will be modified to reflect the following terms:

## **LOAN MODIFICATION**

| | |
|---|---|
| Unpaid Principal Balance | $107,103.07 |
| Modification Note Rate | 3.500% |
| Date Note Rate is Effective | July 1, 2014 |
| First Modification Payment Due | August 1, 2014 |

The Modified payment breakdown:
| | |
|---|---|
| Principal & Interest | $414.91 |
| Escrow | $155.65 |
| New Monthly Payment | $570.56 |

The following is a breakdown of the Loan Modification.

## **MODIFICATION TRANSACTION COSTS DUE**

| | |
|---|---|
| Processing Fee | $0.00 |
| Recording Fee | $0.00 |
| Escrow Advance and/or Setup | $3,951.18 |
| Late Charges, NSF and/or Other Fees | $0.00 |
| Attorney Fees/costs, if applicable | $2,074.00 |
| Recoverable Advances, if applicable | $3,967.56 |
| Accrued Interest, if applicable | $12,940.92 |
| First Modified payment, if applicable | $570.56 |
| Misc | $ |
| | |
| Total contribution amount | $0.00 |
| The total amount added to your loan is | $22,933.66 |

In the event that the modification transaction costs above are less than indicated, any additional amount paid will be applied to reduce the unpaid principal balance of your loan.

Notice – If your request for assistance is approved, your acceptance of a loan modification, partial or complete lien forgiveness, short sale or deed in lieu may have consequences with respect to federal, state, or local tax liability, as well as eligibility for public assistance benefits. HSBC BANK USA, N.A. cannot advise you on the tax consequences or the effect on public assistance benefits. We encourage you to consult with a qualified individual or organization about the possible tax and/or other consequences resulting from a loan modification, partial or complete lien release, short sale or deed in lieu.

We look forward to receiving all of the required documents and funds prior to the deadline noted above. Thank you for your cooperation.

If you have any questions, regarding the Loan Modification documents or the process in general, please call 1-800-750-2518.

Sincerely,

Rep Name: MICHAEL PICCILLO
NMLS#: 2726
Mortgage Service Center

0433 11/12

After Recording Return To:
Mortgage Services
PO Box 5449
Mount Laurel, NJ 08054
Return to Phone: 877-766-8244

This Document Prepared By:
PHH Mortgage Corporation
PO Box 5449
Mount Laurel, NJ 08054
CHARLTON STANTON, SPECIALIST

Parcel ID Number:
140200111.40-2-12.1

Current UPB: $84,169.41
New UPB: $107,103.07
New Money: $22,933.66

Section: _____, Block: _____,
Lot: _____

_____ [Space Above This Line For Recording Data] _____

| | |
|---|---|
| Original Recording Date: June 10, 2004 | Loan No: ████████ |
| Original Loan Amount: $95,000.00 | Investor Loan No: ████████ |
| Original Lender Name: HSBC MORTGAGE | |
| CORPORATION (USA) | |
| New Money: $22,933.66 | |

Prepared Date: June 18, 2014

## LOAN MODIFICATION AGREEMENT
### (Providing for Step Interest Rate)

This property is or will be improved by a one or two family dwelling only.

This Loan Modification Agreement ("Agreement"), made this 12th day of June, 2014, between CHRISTOPHER M WHITE, whose mailing address is ████████████████████ ("Borrower") and HSBC BANK USA, N.A., whose address is ████████████████ NY 14203 ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated June 10, 2004 and recorded in Book/Liber 13167, Page 5423, Instrument No: 200406101272,  of the Official Records (Name of

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument        Form 3162 05/06 (rev. 06/12)
(page 1 of 6)

█████████  8303 01/14

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

    (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors,

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
CHRISTOPHER M WHITE  -Borrower


_____ [Space Below This Line For Acknowledgments] _____

State of New York

County of _____

On the ____ day of _____ in the year_____,

before me, the undersigned, _____ Notary Public, personally appeared
                                    (please print name)
CHRISTOPHER M WHITE, personally known to me or proved to me on the basis of satisfactory evidence
to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on
the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument.


_____
Signature

_____
Office

My commission expires : _____

Origination Company: HSBC BANK USA, N.A.
NMLSR ID: 2726

EXHIBIT B

# FEIN, SUCH & CRANE, LLP

## Attorneys At Law

Northern New York
Relin, Goldstein & Crane, LLP
28 E. Main Street, Suite 1800
Rochester, New York 14614
585.232.7400  Fax 585-756-5202
Service By Facsimile Not Accepted

January 13, 2014

Christopher White c/o
███████████
Western New York Law Center
237 Main Street, Suite 1130
Buffalo, New York 14203
Via Facsimile: (716) 270-4005

       Re: White, Christopher
       Property Address: █████████████████
       Loan Servicer: PHH Mortgage
       Loan Number: ████████

Dear Sir/Madam:

      Pursuant to your request, I am enclosing the reinstatement figures with regard to the above-entitled mortgage. Due to the fact that this matter was forwarded to our office for foreclosure proceedings, there have been additional charges incurred. Accordingly, the total amount due to reinstate the above-referenced mortgage is as follows:

      Reinstatement figures estimated good through February 7, 2014:

| | |
|---|---|
| Total Payments Due | $20,203.92 |
| Accumulated Late Charge | 219.65 |
| Forecasted Late Charge | 10.46 |
| Other Fees Due | 290.00 |
| Mortgagor Recoverable Corporate Advance | 3,667.56 |
| Outstanding Incurred Foreclosure Fees and Costs | 779.00 |
| Outstanding Estimated Foreclosure Fees and Costs | 1,210.00 |
| Total Amount Due | $26,380.59 |

      This figure is an estimate good until February 7, 2014. Please make sure to use a cashier's check, payable to PHH Mortgage, and forward it to our office. Upon confirmation that the amount is sufficient to reinstate the loan and bring the account current with our

client, we will cancel the foreclosure action and Lis Pendens.

Federal Law requires us to notify you that we are acting as a debt collector, in an attempt to collect a debt. All information will be used for that purpose.

If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

Please be advised that this and any further communication will not stay the proceeding of this action unless notified in writing by lender or its counsel, or unless stayed by operation of law.

If you have any further questions, feel free to contact this office.

Very truly yours,
Fein, Such & Crane, LLP
Workout Department

# FEIN, SUCH & CRANE, LLP

### Attorneys At Law

Northern New York Office
28 East Main Street, Suite 1800
Rochester, New York 14614
585-232-7400
Fax 585-756-5202

March 26, 2014

Christopher White c/o ███████

Western New York Law Center
237 Main Street, Suite 1130
Buffalo, New York 14203
Via Facsimile: (716) 270-4005

       Re: White, Christopher
       Property Address: ████████████████
       Loan Servicer: PHH Mortgage
       Loan Number: ██████

Dear Sir or Madam:

Pursuant to your request, the breakdown of the Estimated Foreclosure Fees and Costs is as follows:

| | |
|---|---|
| Attorney Fees | $580.00 |
| Stipulation of Discontinuance Fee | 300.00 |
| Stipulation of Discontinuance Cost | 35.00 |
| Order | 45.00 |
| Ref Cost | 250.00 |
| Total Fees and Costs | $1210.00 |

     Federal Law requires us to notify you that we are acting as a debt collector, in an attempt to collect a debt. All information will be used for that purpose.

     If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

     Please be advised that this and any further communication will not stay the proceeding of this action unless notified in writing by lender or its counsel, or unless stayed by operation of law.

      If you have any further questions, feel free to contact this office.

Very truly yours,
Fein, Such & Crane, LLP
Workout Department

# FEIN, SUCH & CRANE, LLP

### Attorneys At Law

Northern New York Office
28 East Main Street, Suite 1800
Rochester, New York 14614
585-232-7400
Fax 585-756-5202

March 26, 2014

Christopher White c/o ███████████

Western New York Law Center
237 Main Street, Suite 1130
Buffalo, New York 14203
Via Facsimile: (716) 270-4005

Re: White, Christopher
Property Address: ████████████████████
Loan Servicer: PHH Mortgage
Loan Number: ████████████

Dear Sir or Madam:

Pursuant to your request, the breakdown of the Incurred Foreclosure Fees and Costs is as follows:

| | |
|---|---|
| Attorney Fees | $779.00 |
| Total Fees and Costs | $779.00 |

Federal Law requires us to notify you that we are acting as a debt collector, in an attempt to collect a debt. All information will be used for that purpose.

If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

Please be advised that this and any further communication will not stay the proceeding of this action unless notified in writing by lender or its counsel, or unless stayed by operation of law.

If you have any further questions, feel free to contact this office.

Very truly yours,
Fein, Such & Crane, LLP
Workout Department

# FEIN, SUCH & CRANE, LLP

### Attorneys At Law

Northern New York Office
28 East Main Street, Suite 1800
Rochester, New York 14614
585-232-7400
Fax 585-756-5202

March 26, 2014

Christopher White c/o
████████████
Western New York Law Center
237 Main Street, Suite 1130
Buffalo, New York 14203
Via Facsimile: (716) 270-4005

> Re: White, Christopher
> Property Address: ███████████████████
> Loan Servicer: PHH Mortgage
> Loan Number: ███████

Dear Sir or Madam:

Pursuant to your request, the breakdown of the Mortgagor Recoverable Corporate Advance is as follows:

| | |
|---|---|
| Broker's Price Opinion | $285.00 |
| Paid Attorney Fees and Costs | 3,082.56 |
| Total Fees and Costs | $3,367.56 |

  Federal Law requires us to notify you that we are acting as a debt collector, in an attempt to collect a debt. All information will be used for that purpose.

  If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

  Please be advised that this and any further communication will not stay the proceeding of this action unless notified in writing by lender or its counsel, or unless stayed by operation of law.

    If you have any further questions, feel free to contact this office.

> Very truly yours,
> Fein, Such & Crane, LLP
> Workout Department

# FEIN, SUCH & CRANE, LLP

## Attorneys At Law

Northern New York Office
26 E. Main Street, Suite 1800
Rochester, New York 14614
585.232.7400  Fax 585-756-5202
Service By Facsimile Not Accepted

July 3, 2014

Christopher White c/o
Attn: Keisha A. Williams, Esq.
Western New York Law Center
237 Main Street, Suite 1130
Buffalo, New York 14203

> Re: White, Christopher
> Property Address: ███████████████
> Loan Servicer: PHH Mortgage
> Loan Number: ███████

Dear Sir or Madam:

Pursuant to your request, the breakdown of the Outstanding Incurred Foreclosure Fees and Costs is as follows:

| | |
|---|---|
| Attorney Fees | $779.00 |
| Total Outstanding Incurred Foreclosure Fees and Costs | $779.00 |

Pursuant to your request, the breakdown of the Outstanding Estimated Foreclosure Fees and Costs is as follows:

| | |
|---|---|
| Attorney Fees | $580.00 |
| Stipulation of Discontinuance Fee | 300.00 |
| Stipulation of Discontinuance Cost | 35.00 |
| Order of Reference | 45.00 |
| Referee Cost | 250.00 |
| Total Outstanding Estimated Foreclosure Fees and Costs | $1210.00 |

Pursuant to your request, the breakdown of the Mortgagor Recoverable Corporate Advance is as follows:

| | |
|---|---|
| Broker's Price Opinions | $285.00 |
| Title Costs | 655.56 |
| Summons & Complaint | 400.00 |
| Lis Pendens | 60.00 |
| Service of Process | 612.00 |
| Request for Judicial Intervention | 95.00 |
| Allowable Attorney Fees | 1,260.00 |
| Total Mortgagor Recoverable Corporate Advance | $3,367.56 |

Pursuant to your request, the breakdown of Other Fees Due is as follows:

| | |
|---|---|
| Property Inspections | $290.00 |
| Total of Other Fees Due | $290.00 |

Federal Law requires us to notify you that we are acting as a debt collector, in an attempt to collect a debt. All information will be used for that purpose.

If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

Please be advised that this and any further communication will not stay the proceeding of this action unless notified in writing by lender or its counsel, or unless stayed by operation of law.

If you have any further questions, feel free to contact this office.

Very truly yours,
Fein, Such & Crane, LLP
Workout Department

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.  Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

8.  This Agreement modifies an obligation secured by an existing security instrument recorded in Niagara County, NY, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $61,636.42. The principal balance secured by the existing security instrument as a result of this Agreement is $77,157.30, which amount represents the excess of the unpaid principal balance of this original obligation.

 

(page 3 of 5)

8300h 01/14

_____ (Seal)
WILLIAM T SUITOR  -Borrower

_____ (Seal)
JENNIFER R SUITOR  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of New York

County of __Niagara__

On the 29th day of __August__ in the year 2014
before me, the undersigned, __Amy Smith__ Notary Public, personally appeared
                                    (please print name)
WILLIAM T SUITOR AND JENNIFER R SUITOR, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by
his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the
individual(s) acted, executed the instrument.

__Amy Smith__
Signature

__716-754-1925__
Office

                                    AMY SMITH
                         Notary Public, State of New York
                             Appointed in Niagara County
                         My Commission Expires Nov. 8 2017

My commission expires : Nov. 8, 2017

Origination Company: HSBC BANK USA, N.A.
NMLSR ID: 2726

8300h 01/14                                          (page 4 of 5)

HSBC BANK USA, N.A.

By: _____ (Seal) - Lender
Name:        Andrea Kanopka
Title: VICE PRESIDENT AND ASSISTANT SECRETARY of the Residential Mortgage Loan Administrative
Services Division of HSBC Bank USA, N.A.

_____
Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____

State of New Jersey, County of Burlington

On _____ 9/18 _____, 2014, before me, _____ **REBECCA SEAMAN** _____,
                                                          (please print name)

a Notary Public in and for said State, personally appeared

                    Andrea Kanopka
_____ of the
Corporation, personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me that they executed
the same in their capacity, and that by their signature on the instrument, the individual, or the person upon
behalf of which the individual acted, executed the instrument.

Notary Public

_____
Notary Public of New Jersey
My Commission expires: _____

REBECCA L. SEAMAN
NOTARY PUBLIC OF NEW JERSEY
I.D. # 2424214
My Commission Expires 8/22/2017

E300h 01/14                                                                    (page 5 of 5)

7165042623



## AFFIDAVIT UNDER SECTION 255 OF THE NEW YORK STATE LAW
### (Modification Agreement)

**State of NY**
**County of Niagara**

I,_____, being duly sworn, deposes and says:

　　1.　That he/she is the agent for the owner and holder of the hereinafter described mortgage, and is familiar with the facts set forth herein.

　　2.　A certain mortgage bearing the date of November 08, 2004, in the principal amount of SEVENTY THOUSAND FOUR HUNDRED EIGHTY THREE AND NO/100 ($70,483.00) was made by WILLIAM T SUITOR AND JENNIFER R SUITOR as Mortgagor to HSBC MORTGAGE CORPORATION (USA) as original Mortgagee, recorded on November 8, 2004, in Book/Liber 4984, Page 503, Instrument No: 2008708, Mortgage tax paid $_____, in the Niagara County Clerk's Office, upon which the mortgage tax was duly paid thereon.

　　3.　The instrument offered for recording herewith is a Modification made by WILLIAM T SUITOR AND JENNIFER R SUITOR to HSBC BANK USA, N.A. effective August 1, 2014, and to be recorded in the Niagara County Clerk's Office.

　　4.　The instrument offered for recording modifies and does not create or secure any new or further lien, indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the recorded mortgage hereinabove first described with the exception of the following amount:

| | | |
|---|---|---|
| a) | Unpaid principal balance | $61,636.42 |
| b) | New unpaid principal balance | $77,157.30 |
| c) | b minus a equals (New Money) | $15,520.88 |
| d) | Additional obligation secured by mortgage as modified | |

Additional mortgage recording tax of $_____ is therefore being paid on this Modification on the sum set forth in 4c.

That Exemption from further tax is CLAIMED under Section 255 of the Tax Law.
**HSBC BANK USA, N.A.**

_____
Name: _____
Title: _____

Sworn to before me this _____ day of _____, 20_____.

_____
Notary Public, State of _____
My Commission Expires: _____





Page 1 of 1

# EXHIBIT D

# Foreclosure Prevention Project
## OF BUFFALO AND WESTERN NEW YORK

| EXECUTIVE DIRECTORS | SENIOR STAFF ATTORNEYS | STAFF ATTORNEYS | | PARALEGALS | |
|---|---|---|---|---|---|
| JOE KELEMEN | WILLIAM BERRY | MARC CONNORS | SEETA PERSAUD | KATE LOCKHART | THERESA MILLER |
| KAREN L. NICOLSON | PAUL CURTIN | PAULETTE COOKE | ANDREW SPONG | JOY MCDUFFIE | MARK SEBASTIAN |
| DAVID C. SCHOPP | | SARAH GALVAN | DANIEL WEBSTER | VALERIE MALIA | MELISSA WOODS |
| | | AMY GATHINGS | KEISHA WILLIAMS | | |

*CREATING COMMUNITY STABILITY BY MAINTAINING HOMEOWNERSHIP*

August 8, 2014

Fein, Such & Crane LLP
28 East Main Street, Suite 1800
Rochester, NY 14614

      RE: HSBC Bank v. Suitor; Index # E150988/2013

To Whom It May Concern,

      My clients, William and ▮▮▮▮▮ Suitor, have received your client's offer for a loan modification. Please note they did not receive the papers until August 1, 2014 where the letter requested its return by July 31, 2014. My clients want to accept the modification, but take issue with the new principle balance. Particularly, my clients dispute the addition of fees and costs in the amount of $1,748.00 and a "recoverable balance" in the amount of $3,767.59. If this "recoverable balance" cannot be substantiated by documented evidence, then the defendants request HSBC / PHH deduct this amount and re-calculate the modification.

      William Suitor duly filed and served a pro se answer asserting several viable defenses in this action and reserved his right to attorney's fees. Under Real Property Law § 282 a prevailing defendant can be awarded attorney's fees in a foreclosure action. Since neither party is prevailing (or both are prevailing), I propose a settlement where both parties waive their claims for fees and costs and other amounts, and we re-calculate the modification based on the lower new principle balance. We have a settlement conference in this action on August 14, 2014, where we can work through the Court to settle the issue. Hopefully, we can resolve the issue among ourselves prior to that date.

Sincerely,

*Daniel Webster [signature]*

Daniel Webster, Staff Attorney
237 Main Street, 10th Floor
Buffalo, New York 14203-2717
716-853-3087 ext. 203
dwebster@lsed.org

cc: Rob Gleichenhaus, Esq. (via email)

237 MAIN STREET, BUFFALO, NY 14203
716-853-3087
LEGAL AID BUREAU OF BUFFALO, INC., SUITE 1602
WESTERN NEW YORK LAW CENTER, SUITE 1130
LEGAL SERVICES FOR THE ELDERLY, DISABLED OR DISADVANTAGED OF WNY, INC, SUITE 1015

SUPPORTED BY THE NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL

# EXHIBIT E

# FEIN, SUCH & CRANE, LLP

### Northern New York Office

28 East Main Street, Suite 1800
Rochester, New York 14614
585-232-7400
Direct Fax: 585-756-5201 (Evictions/Contested Litigation) (fax not for service of papers)
Direct Fax: 585-756-5200 (Settlement Conferences) (fax not for service of papers)

August 14, 2014

Daniel Webster, Esq.
Legal Services for the Elderly
237 Main Street, 10th Floor
Buffalo, New York 14203-2717

Re:   HSBC vs. Suitor, et al.
      Index: 150988/2013

Dear Mr. Webster,

Please be advised that my office received your letter dated August 8, 2014 wherein you dispute the additional fees and costs in the amount of $1,748.00 and a recoverable balance in the amount of $3,767.59.

Please be advised that Plaintiff will not waive any of the attorney fees. Please note that a condition of the mortgage contract specified that in case of default, Plaintiff is entitled to legal fees. As you are aware, Defendant indeed defaulted. As a direct result of that default, Plaintiff was compelled to, at a minimum, file a lawsuit, commence a title search, effectuate service and process Defendant's answer. Indeed, a settlement conference would never have never been scheduled if Plaintiff had not filed its Request for Judicial Intervention (RJI). The fee breakdown if the $3,767.59 is as follows:

| | |
|---|---|
| Litigation Fee: | $1,332.03 |
| Filing Fee- Notice of Pendency: | $35.00 |
| Filing Fee- Judicial Intervention: | $95.00 |
| Court Cost-Purchase of Index Number: | $400.00 |
| Title Cost-Title Search: | $520.56 |
| Attorney Fees: | $875.00 |
| Service Cost: | $510.00 |
| **Total Recoverable Balance:** | **$3,767.59** |

In regards to your argument that you are entitled to fees under Real Property Law 282 I urge you to read the statute before you cite to it. Please be advised that you are only entitled to fees where it has been proven Plaintiff has failed to perform under the mortgage contract. Please identify where Plaintiff has failed to perform under the mortgage contract. The only party who has failed under the mortgage contract is our client. Moreover, please identify which of your filed defenses were meritorious in this action. The fact is none were and thus you as attorney are entitled to nothing.

Thank you for your letter.

Sincerely,

Y.S. Vilknu, Esq.

Cc:   Robert B. Gleichenhaus, Esq.
      Gleichenhaus, Marchese & Weishaar, P.C.
      930 Convention Tower
      43 Court Street
      Buffalo, New York 14202
      gleich6@gmail.com

# EXHIBIT F

# HSBC 

2001 Bishops Gate Blvd
Mt. Laurel, NJ 08054

Tel 866-435-7085
Fax 856-917-8003


WILLIAM SUITOR
P.O.BOX 244
YOUNGSTOWN        NY, 14174-0000


April 1, 2015


Dear Customer;

As your Case Manager I, ROBERT MULCAHY remain committed to working with you. Please contact me with any questions that you have regarding your account or the information contained within this letter. My direct contact number is 877-387-9031, extension 8823. If you cannot reach me and do not wish to leave a message, you may press 0 and another Case Manager will assist you.

During a recent review of your account, it was determined that you are entitled to a refund of certain fees and/or costs, previously assessed to your account and included in your loan modification. Funds in the amount of $2,701.35 have been applied to the Unpaid Principal Balance of your loan. The principal application includes $2,629.59 in fees and/or costs that were included in the loan modification and interest accrued in relation to those fees and/or costs from the effective date of the modification to 3/31/2015 in the amount of $71.76. As always, we value you your business and appreciate your attention to this matter.


Sincerely,


ROBERT MULCAHY
Case Manager

Our representatives are available Monday through Thursday between the hours of 8:30am to 8:30pm, Friday from 8:30am to 5:00pm EST

If your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

Esta carta contiene informacion importante sobre su cuenta y podria requerir su atencion. Si tiene alguna pregunta y desea hablar en espanol con un empleado, sirvase comunicarse con nosotros al 1-888-648-3124 durante nuestras horas de oficina normales. Nosotros tenemos representantes cuales hablan en Espanol. Estos representantes estan disponibles las horas de la Lunes a Jueves 8:30am a 8:30pm y Viernes de 8:30am a 5:00pm EST.

*Log in to www.us.hsbc.com – your servicing website connection*

