UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER WHITE and WILLIAM SUITOR,
individually and on behalf of
all others similarly situated,

                                 Plaintiffs,

                                 **DECLARATION**

          - against -

FEIN, SUCH and CRANE, LLP,                  Case No.: 15-CV-438 - C

                               Defendant.

STATE OF NEW YORK       )
                         ) SS.:
COUNTY OF ERIE          )

       Keisha A. Williams, Esq. under penalty of perjury and pursuant to 28 U.S.C. § 1746, hereby declares as follows:

       1.      I am duly licensed and admitted to practice law in the State of New York, and I am a staff attorney at the Western New York Law Center (WNYLC), attorneys for Plaintiffs, Christopher White ("Mr. White") and William Suitor. WNYLC provides legal representation to homeowners facing foreclosure in Erie, Cattaraugus, Genesee, and Wyoming counties. WNYLC appears in a limited capacity to negotiate a settlement of the foreclosure action at settlement conferences. A case is deemed settled when it is resolved by satisfaction, reinstatement or permanent modification of the subject loan, or other agreement between the parties. Generally, WNYLC's limited representation does not include litigation of the underlying foreclosure action. WNYLC appeared on behalf of Mr. White in the underlying foreclosure case upon which this putative class action is based. As such, I am fully familiar with the facts and proceedings had in this action, and the matters set forth herein.

       2.      I submit this affirmation in support of Plaintiffs' opposition to Defendant's motion to dismiss Plaintiffs' putative class action complaint.

**The White Foreclosure**

*3.*     On or about June 18, 2014, Mr. White was offered a permanent modification of his loan, *see* Compl. Ex. "C" (Docket No. 1-3), which would capitalize all the arrears, fees and costs and bring his loan current. According to the modification agreement ("Agreement"), $22,933.66 was added to Mr. White's mortgage balance, including $6,041.56 in fees and costs. On July 3, 2014, Defendant provided a reinstatement letter to Mr. White's counsel at counsel's request. The letter is attached hereto as Exhibit "A".   The letter purported to provide a breakdown of the fees and costs included in the Agreement and consisted of (a) $4,436.56 for attorney fees and costs, and (b) $1,210.00 for "Outstanding Estimated Foreclosure Fees and Costs."

4.     On July 31, 2014, Mr. White, by and through his retained counsel, WNYLC,  filed a motion seeking, among other relief, an order barring the collection of all unsubstantiated fees and costs. Plaintiff's motion without its referenced exhibits is attached hereto as Exhibit "B". Defendant's Affirmation in Opposition without its referenced exhibits is attached hereto as Exhibit "C". [1]  At a hearing held on December 15, 2015, Defendant agreed to lower the $6,041.56 in claimed fees and costs to $4,300.00, which was to be reflected in a forthcoming amended modification agreement.

5.     Plaintiff's undue delay and outright refusal to justify its demand for fees jeopardized Mr. White's efforts to save his home from foreclosure,[2] and demonstrates Defendant's practice of denying homeowners' requests for verification of seemingly unreasonable fees and costs.

---

[1]     It should be noted that the *quantum meruit* affidavit provided by Defendant listed services the firm generally performs on behalf of all its foreclosure clients and was not specific to the work performed in the White foreclosure.  *See* Def's Mem. Ex. "9" (Docket No. 7-10).

[2]     A letter from HSBC denying Mr. White's application for a loan modification while he awaited the modified agreement is attached hereto as Exhibit "D".

1

6.      On May 11, 2015, Defendant provided Mr. White's counsel with a copy of the amended modification agreement. On May 19, 2015, Mr. White executed and returned the modified agreement to HSBC. *See* Def's Mem. Ex. "E" (Docket Document No. 7-5). A copy of Mr. White's counsel's letter withdrawing Plaintiff's motion in the lower court is attached hereto as Exhibit "E".[3]

**The FDCPA Class Includes Homeowners Who Settled Or Reinstated Their Mortgages Without The Assistance Of Counsel.**

7.      When a homeowner defaults on her mortgage, a law firm is hired by the lender or servicer to complete the foreclosure from initiation to transfer of the property to the successful bidder at auction or back to the investor. The homeowner may reinstate her loan, at any time before the property is sold at auction, by paying what is owed to the lender in missed payments and what the law firm claims it incurred in fees and costs as set forth in the reinstatement notice.

8.      Homeowners attempting to reinstate their defaulted mortgages, without the assistance of counsel, are instructed by their lenders to request reinstatement notices directly from the law firm.  If these homeowners are successful in negotiating a loan modification or reinstating their loans before a foreclosure action is initiated or before a settlement conference is convened, they do so without the assistance of counsel. Generally, unrepresented homeowners who reinstate their loans must do so in reliance on information they receive directly from the law firm. A homeowner seeking to reinstate her loan must pay whatever fees and costs the law firm claims it is owed in the reinstatement notice. On the other hand, unrepresented homeowners who settle their defaulted mortgages through loan modifications receive their modification agreements directly from their

---

[3]      It should be noted that Mr. White's counsel reserved the right to renew other claims raised in the motion.

lenders or servicers with the law firm's claimed fees and costs already capitalized and added to their principal balances.

9.      Unrepresented homeowners seldom challenge the law firm's legal fees and costs because of the risk that they may lose an offered loan modification by doing so and incur additional legal costs or even lose their homes. Occasionally, homeowners will contact WNYLC after they have reinstated their loans or accepted loan modification agreements in an effort to challenge the law firm's unreasonable fees.

**Ryan Nadbrzuch**

10.      On March 28, 2014, Defendant, attorneys for M&T Bank, sent a letter to Mr. Nadbrzuch advising him that the amount due to reinstate his mortgage was $25,962.88. The letter is attached hereto as Exhibit "F".   According to the reinstatement notice, the $25,962.88 demanded included $3,817.00 in foreclosure costs and fees, which included $1,230.00 for "Outstanding Estimated Foreclosure Fees and Costs." A copy of a bank check dated April 23, 2014, in the amount of $25,962.88, forwarded from Mr. Nadbrzuch to Defendant on is attached hereto as Exhibit "G".

11.      On May 2, 2014, after he reinstated his mortgage, Mr. Nadbrzuch appeared at the initial settlement conference in the foreclosure action.  After the initial conference, Mr. Nadbrzuch retained WNYLC's services to resolve the disputed fees. To that end, follow-up conferences were held on June 9, 2014, July 25, 2014, July 28, 2014, July 31, 2014, August 29, 2014, October 3, 2014 and November 14, 2014. On July 31, 2014, after steadfastly denying Mr. Nadbrzuch's counsel's request to provide an itemization, [4]  Defendant submitted an itemization of its fees and costs. A copy is attached hereto as Exhibit "I".

---

[4]      On August 28, 2014, Defendant denied counsel's request and advised her to "file a motion for discovery." See Exhibit "H".

3

12.     On September 10, 2014, Defendant sent a letter to Mr. Nadbrzuch's counsel, the letter is attached hereto as Exhibit "J", admitting that Mr. Nadbrzuch was charged for services that were not provided by the firm, as well as other "forward looking" and "prospective" fees. [5]

**Durshawn Liggans**

13.     On March 6, 2015, WNYLC appeared at settlement conference on Mr. Liggans behalf. At the second conference held on April 10, 2015, settlement discussions were terminated after Mr. Liggans failed to reinstate his loan as promised.

14.     Upon information and belief, Mr. Liggans requested a reinstatement notice directly from Defendant. On April 16, 2015, Defendant sent a letter to Mr. Liggans advising him that the amount due to reinstate his mortgage was $11,478.82. The letter is attached hereto as Exhibit "L". According to the reinstatement notice, the $11,478.82 demanded included $819.00 for "Escrow Advance," $4,315.56 for "Mortgagor Recoverable Corporate Advance" and $530.00 for "Outstanding Estimated Foreclosure Fees and Costs." Upon information and belief, Mr. Liggans transmitted $11,478.82 to Defendant in accordance with the April 16, 2015 reinstatement notice. [6]

15.     Based on the foregoing, and on the reasons set forth in the accompanying memorandum of law, Defendant's motion to dismiss Plaintiffs' putative class action should be denied in its entirety.

I hereby swear and affirm the above under penalty of perjury this 23rd day of July, 2015.

---

[5]      M&T Bank reimbursed Mr. Nadbrzuch $640.00. See Exhibit "K" attached hereto.

[6]      On May 8, 2015, Defendant sent to Mr. Liggans' counsel a Notice to Discontinue Action, seeking to cancel the action "due to the borrower reinstating their loan with Plaintiff." See Exhibit "M" attached hereto.

4

/s/ Keisha A. Williams

_____

Keisha A. Williams