UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER WHITE and
WILLIAM SUITOR,
individually and on behalf of
all others similarly situated,

                                        Plaintiffs,


                        -vs-                                    15-CV-438-JTC

FEIN, SUCH AND CRANE, LLP,

                                        Defendant.
_____

APPEARANCES:                WESTERN NEW YORK LAW CENTER, INC.
                            (KEISHA ALECIA WILLIAMS, ESQ., of Counsel),
                            Buffalo, New York, Attorneys for Plaintiffs.

                            BARCLAY DAMON, LLP (DENNIS R. McCOY, ESQ.,
                            of Counsel), Buffalo, New York, Attorneys for
                            Defendant.


## INTRODUCTION

Plaintiffs filed a class action complaint in this action on May 15, 2015, alleging

violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*

("FDCPA") and New York General Business Law ("GBL") § 349 (Item 1).  This matter is

presently before the court on the defendant's motion to dismiss the complaint pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Item 7).


## BACKGROUND and FACTS

In their complaint, plaintiffs allege that they are "consumers" and that defendant

is a "debt collector" as those terms are defined by the FDCPA. *See* Item 1, ¶¶ 5-7.

Defendant attempted to collect a debt owed by plaintiff White by way of a foreclosure

action filed in New York State Supreme Court, Erie County, and by plaintiff Suitor in

New York State Supreme Court, Niagara County. *Id.,* ¶¶ 9-10.  As part of the New York

State foreclosure process, the parties participated in a mandatory settlement

conference pursuant to New York C.P.L.R. § 3408.  *Id.,* ¶ 11.  In the event a foreclosure

action is settled prior to final judgment and sale, either for a loss mitigation option,

reinstatement, or payment in full, the applicable regulations provide that borrowers

"shall only be liable for reasonable and customary fees for work actually performed."  3

N.Y.C.R.R. ¶ 419.10(c); Item 1, ¶ 15.  Plaintiff alleges that defendant "systematically

and intentionally misrepresents, and attempts to collect from homeowners

unreasonable and deceptive costs for foreclosure-related services that are either

exaggerated or did not happen at all." *Id.,* ¶ 17.

Specifically, plaintiffs have alleged that defendant routinely charges borrowers a

"discontinuance fee" which is the cost of preparing and filing a motion for a

discontinuance. Plaintiffs allege that defendant charges this fee, prior to actually making

such a motion, and that in most cases it simply files a stipulation of discontinuance

(Item 1, ¶¶ 20-25).  Plaintiffs also allege that defendant routinely charges borrowers a

fee for the preparation and filing of a motion for an order of reference, although it is not

required to file such a motion and does not file such a motion in a settled case (Item 1,

¶ 26).  Plaintiffs allege that defendant routinely charges borrowers the cost it would

have incurred for the hiring of a referee to conduct a foreclosure sale, even in cases

that settle and where a foreclosure sale is not conducted. (Item 1, ¶¶ 27-28).  Plaintiffs

allege that defendant charges excessive attorneys' fees in the form of a flat rate, "allowable" fee that bears no relationship to the amount of legal work actually done. Additionally, they allege that defendant refuses to provide *quantum meruit* proof of the value of the services provided. (Item 1, ¶¶ 32-35).  Plaintiffs allege that defendants routinely charge borrowers the cost of filing a New York State pre-foreclosure notice, a filing for which defendant is not charged (Item 1, ¶¶ 36-38). Finally, plaintiffs allege that defendant routinely charges borrowers a fee for service of process significantly higher than is reasonable and customary. (Item 1, ¶ 39).

Plaintiff White was charged $6,041.56 in fees and costs as part of a loan modification agreement. *Id.*, ¶ 41.  In the case of plaintiff Suitor, $15,520.88 in fees and costs were capitalized and added to his loan according to a modification agreement. *Id.,* ¶ 52.  Plaintiff Suitor later received a refund of $2,629.59 plus interest from HSBC bank, which plaintiffs assert represents "fees and costs that Defendant unlawfully collected for services not actually rendered in Mr. Suitor's foreclosure action." *Id.,* ¶ 60.

Plaintiffs allege that the practices of the defendant in collecting and attempting to collect certain fees and costs in the context of New York State foreclosure actions violate both the FDCPA and GBL § 349.  Specifically, plaintiffs allege that the defendant has attempted to collect an amount not permitted by law in violation of section 1692f(1) of the FDCPA, used unfair and unconscionable collection methods in violation of section 1692f, used deceptive, false and misleading representations in connection with the collection of a debt in violation of section 1692e, gave a false impression of the character, amount or legal status of a debt in violation of section 1692e(2), used false and deceptive collection methods in violation of section 1692e(10), and threatened to take legal action which

could not legally be taken in violation of section 1692e(5) (Item 1, ¶ 72).  Additionally,

plaintiffs allege that defendant's actions, in seeking to collect attorney's fees in

foreclosure-related actions which are not legally due and owing and falsely representing

the nature or amount of the debt to be collected, constitute deceptive acts and practices

in violation of GBL § 349. *Id., ¶¶* 82-83.


## DISCUSSION

In lieu of an answer, defendant filed a motion to dismiss the complaint pursuant to

Fed.R.Civ.P. 12(b)(6) (Item 7).  Defendant asserts that plaintiffs' claims against it are not

actionable under the FDCPA because its communications were directed at the plaintiffs'

attorneys, not the consumers themselves.  They contend that the claims pursuant to the

GBL must also be dismissed because the communications were neither consumer-

oriented nor directed to the public at large.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept the factual allegations in the complaint as true and draw all reasonable inferences

in favor of plaintiff. *Bold Electric, Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995).

Plaintiffs are required to plead enough facts "to state a claim for relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009). Although heightened factual pleading is not the

standard, *Twombly* holds that a "formulaic recitation of the elements of a cause of action

will not do ... .  Factual allegations must be enough to raise a right to relief above the

speculative level." *Twombly,* at 555.  "Determining whether a complaint states a plausible

claim for relief" is a "context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Iqbal,* at 679.  Reciting bare legal conclusions is insufficient, and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, at 679.  A pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery."  *Iqbal*, at 678–679.

### A.  The FDCPA Claims

Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors[,]" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002), with the purpose of "limiting the suffering and anguish often inflicted by independent debt collectors." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996) (internal quotation marks omitted). Section 1692e of the FDCPA proscribes debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and provides a non-exhaustive list of example violations. 15 U.S.C. § 1692e.  Section 1692f provides that a debt collector may not use "unfair or unconscionable means to collect a debt" and again provides a list of representative violations.  In this case, plaintiffs allege that defendant violated section 1692e by making false and deceptive representations, including misstating the character, amount or legal status of the debt and threatening to take legal action which was either not intended or could not legally be taken. They allege that defendant violated section 1692f by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law.  The gravamen of plaintiffs' claims is that defendant collected attorneys' fees and other costs as part of the loan modifications that were the result of settlement negotiations in the New York State court foreclosure actions and that these

amounts were not actually incurred by the defendant.

Defendant argues that plaintiffs' claims must fail because the subject communications were directed to plaintiffs' attorneys, not plaintiffs themselves. It asserts that the controlling law in the Second Circuit is "clear and unequivocal," *see* Reply Memorandum of Law (Item 10, p. 2), relying principally on *Kropelnicki v. Siegel,* 290 F.3d 118 (2d Cir. 2002).   Although not dispositive to its ruling in the case, the Second Circuit stated in dicta in *Kropelnicki* that "[a] review of the FDCPA's purpose, as explained both in the statute and in the legislative history, and this Court's treatment of the FDCPA in other cases leads us to believe that alleged misrepresentations to attorneys for putative debtors cannot constitute violations of the FDCPA."  *Kropelnicki,* 290 F.3d at 127.  The court further stated that "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Id.* at 128. Plaintiffs rely principally on *Paulemon v. Tobin,* 30 F.3d 307 (2d Cir. 1994), in which the court acknowledged a previous version of the FDCPA which excluded attorneys from the statutory definition of "debt collector," but found that the attorney-defendant, who sent a letter to the consumer's attorney, was not exempt from the current version of the FDCPA.

The court's review of the law in the courts of the Second Circuit finds it neither clear nor unequivocal.  In *Kropelnicki,* the defendant debt collector made an alleged misstatement to the borrower's attorney, assuring the borrower's attorney that he would not institute a state court action without first contacting him.  The action was commenced and the borrower defaulted.  The Second Circuit found "serious flaws" in the borrower's argument "that a violation of the FDCPA occurs where a party alleges that his attorney

6

has been misled to the party's detriment." *Kropelnicki,* 290 F.3d at 128.  However, the

court found that the claimed violation of the FDCPA on the basis of the defendant's

alleged misrepresentation to the borrower's attorney was inextricably intertwined with an

underlying state court default judgment and that the *Rooker–Feldman*[1] doctrine barred

review of this claim. *Kropelnicki,* 290 F.3d at 129.  The court went on to decide that the

plaintiff had no standing to claim that misstatements in a letter violated the FDCPA, as

the letter was addressed to plaintiff's daughter.

Defendant also relies on *Gabriele v. American Home Mortg. Servicing, Inc.,* 503

F.App'x 89 (2d Cir. 2012).  In *Gabriele,* the court dismissed plaintiff's FDCPA claims, not

because the communications were directed to plaintiff's attorney, but because the

communications contained "mere technical falsehoods that misle[d] no one."  *Gabriele,*

503 F.App'x at 95 (quoting *Donahue v. Quick Collect, Inc.,* 592 F.3d 1027, 1034 (9th Cir.

2010)).  The fact that plaintiff was represented by counsel was just one factor in the

court's consideration of whether the communications could mislead the least

sophisticated consumer.[2] *Gabriele, supra,* at 95-96 ("Within the context of an adversary

proceeding in state court between two represented parties, these allegations simply do

not state plausible claims under the FDCPA.").

Additionally, defendant relies on *Tromba v. M.R.S. Assocs., Inc.,* 323 F.Supp.2d

424 (E.D.N.Y. 2004). The plaintiff in *Tromba* alleged that the debt collector violated

---

[1]  Under the *Rooker–Feldman* doctrine, lower federal courts lack subject matter jurisdiction over claims that effectively challenge state court judgments. *See D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 486–87(1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16 (1923).

[2]  The question of whether a communication complies with the FDCPA is determined from the perspective of the "least sophisticated consumer."  *See Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 90 (2d Cir. 2008); *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993).

sections 1692e, 1692e(3) and 1692e(10) of the FDCPA when an individual, not licensed to practice law in any state, sent a fax cover sheet to the plaintiff's attorney referring to himself as a "Senior Legal Associate."  The court, relying on *Kropelnicki, supra,* and limiting its holding to the facts alleged in the case, found that a communication from a debt collector to a borrower's attorney did not give rise to a violation of the FDCPA, where the communication "was solely directed to her attorney and no threat was made regarding contact with the debtor herself." *Tromba,* 323 F.Supp.2d at 428.  Here, the communications, while directed to the plaintiffs' attorneys, contained more than a technical misstatement in a fax cover sheet and were obviously intended to be conveyed to, reviewed by, and signed by the plaintiffs. Thus, the court finds defendant's reliance on *Tromba* is misplaced.

Finally, defendant relies on *Rojas v. Forster & Garbus LLP,* 2014 WL 3810124 (E.D.N.Y. July 31, 2014).   In *Rojas,* the plaintiff alleged violations of the FDCPA when the defendant rejected the renegotiation of a loan repayment plan and demanded a higher amount to resolve plaintiff's outstanding debt.  The court found that any purported misrepresentations made to plaintiff's attorney in support of her claim under section 1692d[3] were not actionable.  Relying on the dictum statement in *Kropelnicki,* the court stated that "[g]enerally, for a misrepresentation to be actionable under the FDCPA, the false statement must be made to the debtor directly and not to counsel." *Rojas, supra* at * 5.  This case provides the most direct support for defendant's position, although this court is not bound by it.

---

[3] Although the court cited section 1692d (prohibiting harassing or abusive behavior in the collection of a debt), this statement was made in the context of its discussion of plaintiff's claims under section 1692e (prohibiting false or misleading representations).

Here, plaintiffs have alleged that the loan payoff and reinstatement quotes sent by defendant to their attorneys were false and misleading under section 1692e.  Under *Gabriele, supra,* the fact that the plaintiffs have legal representation is just one factor in this court's consideration of whether the defendant's communications were false and misleading under the least sophisticated consumer standard.  Plaintiffs allege that the defendant presents homeowners in foreclosure proceedings with loan modification terms that are essentially non-negotiable. Settlement conferences are overseen by volunteer law clerks with no judicial authority to question the fees and costs sought by the defendant. Item 1, ¶ 18. When asked by plaintiffs' counsel to provide *quantum meruit* proof of the attorneys' fees, defendant has refused. Item 1, ¶¶ 45, 55, 58.  To the extent that the loan payoff and reinstatement terms demand fees and costs that, as alleged, are not properly recoverable or valid, those statements are false and misleading.  *See Quinteros v. MBI Assocs., Inc.,* 999 F.Supp.2d 434, 439 (E.D.N.Y. 2014) (statement from debt collector seeking unlawful processing fee violates section 1692e because it falsely implies that debt collector was entitled to collect the fee in the first place); *Hallmark v. Cohen & Slamowitz, LLP,* 293 F.R.D. 410, 415-16  (W.D.N.Y. 2013) (letter demanding payment of a fee to which defendant may not be entitled is false and misleading and a violation of section 1692e). The fact that the plaintiffs are represented by counsel does not excuse the debt collector from the consequences of conveying inaccurate and unlawful information.  Accordingly, the court finds that plaintiffs have stated a claim under section 1692e of the FDCPA.

The plaintiffs also allege the violation of 1692f, the collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) not

expressly authorized by the agreement creating the debt or permitted by law. Communications regarding repayment details directed to plaintiffs' attorney and intended to be shared with the plaintiff have not been squarely addressed by *Kropelnicki* and its progeny. Plaintiffs do not dispute that defendant is entitled to attorneys' fees and other costs.  The mortgages at issue provide that "[i]n any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees . . .."  Items 7-3, 7-8.  Thus, the fees sought by defendant are "expressly authorized by the agreement creating the debt," in accordance with 15 U.S.C. § 1692f(1).  *See Sierra v. Forster and Garbus,* 48 F.Supp.2d 393, 395 (S.D.N.Y. 1999) (collection of fees expressly authorized by the agreement creating the debt does not violate the FDCPA).  However, the plaintiffs allege that the amounts were exaggerated, unreasonable, or not actually incurred.  New York law provides that, a loan servicer "may only collect a fee for services actually rendered." *See* N.Y.Comp. Codes R. & Regs, tit. 3, § 419.10(b) (2015).  Furthermore, "[i]n the event a foreclosure action is terminated prior to final judgment and sale for a loss mitigation option, a reinstatement or payment in full, the borrower shall only be liable for reasonable and customary fees for work actually performed."  *See* N.Y.Comp. Codes R. & Regs, tit. 3, § 419.10(c) (2015).  Accordingly, to the extent that the fees sought are unreasonable, exceed the customary cost for such work, or represent amounts for work not actually performed, they are not "permitted by law" and the attempt to collect such fees would constitute the violation of section 1692f(1) of the FDCPA.  *See Kaymark v. Bank of America, N.A.,* 783 F.3d 168, 175 (3rd Cir. 2015) (attempt by debt collector to

collect disputed fees for work not yet performed violated section 1692f of the FDCPA).

Having reviewed the allegations of the complaint, the court is satisfied that plaintiffs have alleged a plausible claim for relief under the sections 1692e and 1692f of the FDCPA.  Accordingly, defendant's motion to dismiss the FDCPA claims is denied.

### B.  The GBL Claim

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service . . .." N.Y. Gen. Bus. § 349(a) (McKinney 2015). To establish a claim under GBL § 349, the plaintiff must show: "(1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744-45 (N.Y. 1995)).

A plaintiff may satisfy the "consumer-oriented" element by showing that the alleged deceptive act or practice "has a broader impact on consumers at large or similarly situated consumers." *Yurman Studio, Inc. v. Castaneda*, 591 F.Supp.2d 471, 491 (S.D.N.Y. 2008) (citation and internal quotation marks omitted).  Thus, disputes that are "unique to the parties," such as "[p]rivate contract dispute[s]," do not "fall within the ambit of the statute." *Oswego Laborers' Local*, 647 N.E.2d at 744; *see also Maurizio v. Goldsmith,* 230 F.3d 518, 522 (2d Cir. 2000) ("It is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest.' " (citation omitted)). In addition to establishing that the acts were directed at consumers, the plaintiff must show that "defendant is engaging in an act or practice that is deceptive or misleading in

a material way and that plaintiff has been injured by reason thereof." *Oswego Laborers'*

*Local*, 647 N.E.2d at 744 (citation omitted). New York courts employ "an objective

definition of deceptive acts and practices, whether representations or omissions, limited

to those likely to mislead a reasonable consumer acting reasonably under the

circumstances." *Oswego Laborers' Local*, 647 N.E.2d at 745.

The requirement that defendants engaged in "consumer-oriented" conduct has

been construed liberally. *New York v. Feldman*, 210 F.Supp.2d 294, 301 (S.D.N.Y.

2002) (internal citations and quotation marks omitted). "Consumer-oriented" has been

defined in this circuit as "conduct that potentially affects similarly situated consumers."

*SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir.1996) (citation

and internal quotations omitted). As the New York Court of Appeals has stated,

"[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive

behavior." *Oswego Laborers' Local,*  647 N.E.2d at 744.  Instead, the critical question is

whether "the acts or practices have a broad [ ] impact on consumers at large." *Id.; see,*

*e.g., Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51–53 (2d Cir. 1992)

(holding GBL § 349 applicable to insurers where plaintiffs demonstrated that similar

practices had been employed by defendant against multiple insureds). "Based on this

standard, courts have found sufficient allegations of injury to the public interest where

plaintiffs plead repeated acts of deception directed at a broad group of individuals."

*Feldman*, 210 F.Supp.2d at 301 (collecting cases).

Here, defendant argues that the alleged misleading or deceptive practices

occurred within the context of private settlement agreements, which fall outside the

scope of the statute. Plaintiffs have alleged that defendant engaged in deceptive

12

practices directed not just at them, but also at a large class of similarly situated debtors. While it is true that defendant entered into private settlement agreements with the plaintiffs, defendant sought attorneys' fees and costs in accordance with its established practice and policies. It is alleged that all debtors in foreclosure actions brought by defendant would be subject to the same practices and policies. Defendant's acts therefore arguably have a "broader impact" on the consuming public.  The court concludes that, at this stage of the case, plaintiffs have adequately alleged consumer-oriented conduct sufficient to state a claim under GBL §349. *See Kapsis v. Am. Home Mort. Servicing Inc.,* 923 F.Supp.2d 430, 450 (E.D.N.Y. 2013) (allegations that mortgage loan servicer failed to properly credit accounts, failed to timely respond to communications sent by debtors, issued false or misleading monthly statements and escrow projection statements, and refused to provide detailed accountings to debtors for sums allegedly owed satisfied consumer-oriented conduct requirement of GBL § 349). Accordingly, defendant's motion to dismiss plaintiff's GBL § 349 claim is denied.

## CONCLUSION

Based on the foregoing, the defendant's motion to dismiss the complaint is DENIED.  Defendant is directed to file a responsive pleading in accordance with the Federal Rules of Civil Procedure.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   October 21, 2015