UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER WHITE, DARLENE SCHMIDT
and WILLIAM SUITOR,
individually and on behalf of
all others similarly situated,

       Plaintiffs,

   - against -

FEIN, SUCH and CRANE, LLP,

       Defendant.

Case No.: 15-CV-438 (LJV)

**AMENDED CLASS ACTION
COMPLAINT**

**Jury Trial Demanded**

## COMPLAINT FOR DAMAGES, INJUNCTIVE, DECLARATORY
## AND OTHER RELIEF

  Plaintiffs, Darlene Schmidt, Christopher White and William Suitor, on behalf of themselves and of all those similarly situated, by and through their undersigned attorneys, allege upon knowledge as to themselves and their own acts, and as to all other matters upon information and belief, and bring this Complaint against the above-named Defendant, Fein, Such and Crane, LLP (the "Defendant") and in support thereof allege the following:

## PRELIMINARY STATEMENT

  1.  This putative class action seeks relief for Defendant's violations of the Fair Debt Collection Practices Act, 15 USC § 1692, *et seq.* ("FDCPA"), and New York General Business Law § 349 ("GBL § 349"). Defendant, one of the largest foreclosure firms in the State of New York ("New York"), routinely exploits the foreclosure process by misrepresenting and inflating the costs it incurs for foreclosure-related services. Defendant systematically and intentionally uses unfair, unconscionable and deceptive means in connection with the collection of foreclosure related fees that are not legally due from the mortgagor and are prohibited by New York law.

2.      The unlawful attorney fees and costs demanded by Defendant increases the amount that financially strapped New York homeowners must raise to reinstate or payoff their mortgages and thereby avoid foreclosure. Defendant's unlawful practices contribute to the avoidable loss of consumers' homes and unlawfully strip equity from New York homeowners.

## JURISDICTION AND VENUE

3.      Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 USC §§ 1331, 1367(a), together with the pendent jurisdiction of the Court. Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202.

4.      Venue in this District is proper in that the Defendant transacts business here and the conduct complained of occurred here.

## PARTIES

5.      Plaintiff, Christopher White, is a natural person residing in Erie County, New York. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.      Plaintiff, William Suitor, is a natural person residing in Niagara County, New York. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

7.      Plaintiff, Darlene Schmidt, is a natural person residing in Erie County, New York. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8.      Defendant, Fein, Such and Crane, LLP (the "Defendant"), is a New York Domestic Registered Limited-Liability Partnership with a principal place of business located at 28 Main Street, Suite 1800, Rochester, New York 14614.

9.      Defendant regularly attempts to collect debts alleged to be due another, and is and has at all times pertinent hereto been a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10.      Defendant has attempted to collect a debt via a foreclosure action against Plaintiff

2

White filed in Erie County Supreme Court on or around September 23, 2013.

11.     Defendant has attempted to collect a debt via a foreclosure action against Plaintiff Suitor filed in Niagara County Supreme Court on or around September 05, 2013.

12.     Defendant has attempted to collect a debt via a foreclosure action against Plaintiff Schmidt filed in Erie Count Supreme Court on or around October 04, 2011.

## FACTUAL ALLEGATIONS

### I.     NEW YORK STATE'S RESIDENTIAL FORECLOSURE PROCESS

13.     A number of statutes have been enacted by the New York State Legislature in an attempt to stem the tide of home foreclosures. The first of these, CPLR § 3408, became effective August 8, 2008. Pursuant to CPLR § 3408, counsel for foreclosing plaintiffs are required to file a specialized Request for Judicial Intervention ("RJI") simultaneously with the filing of proof of service of the summons and complaint with the court clerk.  The court is mandated to schedule a settlement conference within 60 days after the filing of the RJI.

14.     These mandatory settlement conferences are intended to provide an opportunity for homeowners and lenders to try to reach a solution that avoids foreclosure. Homeowners have the opportunity to apply for loan modifications or other loss mitigation options (*e.g.*, short sale and deed-in-lieu-of-foreclosure) under the supervision of the court.  The New York Legislature and the New York court system have deemed these conferences a crucial step in the reduction of home foreclosures.

15.     To implement the Legislature's directives contained in CPLR § 3408, the New York State Unified Court System added Section 202.12-a to the Uniform Rules for the New York State Trial Courts ("Uniform Rules"). Section 202.12-a governs residential mortgage foreclosure actions and establishes mandatory court procedures for both the foreclosing plaintiff and the homeowner in

3

the Foreclosure Settlement Conference Part ("FSCP").  22 NYCRR 202.12-a(b).

16.     Once a case is assigned to the FSCP, the underlying residential foreclosure action, including discovery, is stayed until the case is either discontinued following settlement or the case is released from the FSCP without settlement. Foreclosing plaintiffs are required to hold all motions in abeyance while settlement conferences are being held, and are prohibited from charging, imposing or otherwise requiring payment from homeowners for any cost, including but not limited to attorneys' fees, for appearance at or participation in the settlement conference. *See* 22 NYCRR 202.12-a(c)(7).

17.     Further, the Superintendent of the Department of Financial Services' Emergency Regulations require that in the event a foreclosure action is terminated prior to the final judgment and sale for a loss mitigation option, a reinstatement, or payment in full, borrowers "shall only be liable for reasonable and customary fees for work actually performed." *See* 3 N.Y.C.R.R. § 419.10(c).

18.     The underlying residential foreclosure action in a case assigned to the FSCP is deemed "settled" when it is resolved by satisfaction, reinstatement or permanent modification of the subject loan, or by the closing of title following an agreed upon short sale or deed-in-lieu transaction. Pursuant to CPLR 3408(g), "[t]he plaintiff must file a notice of discontinuance [of the underlying residential foreclosure action] and vacatur of the lis pendens within one hundred fifty days after any settlement agreement or loan modification is fully executed."

## II.    DEFENDANT EXPLOITS THE FORECLOSURE PROCESS TO COLLECT UNLAWFUL FEES

19.     Defendant systematically and intentionally misrepresents, and attempts to collect from homeowners unreasonable and deceptive costs for foreclosure-related services that are either exaggerated or did not happen at all. These charges are capitalized and added to the homeowner's

principal balance. When a foreclosure action is settled through the foreclosure settlement conference process, homeowners must agree to pay these capitalized expenses through a loan modification or loan reinstatement, and homeowners seldom challenge the capitalized legal fees and costs because of the risk that they may lose an offered loan modification by doing so and incur additional legal costs or even lose their homes.

20.    In Erie County, conferences are overseen by rotating volunteer law clerks with no judicial authority. By taking advantage of the lack of oversight in settlement conferences, Defendant abuses the foreclosure process to charge whatever fees and costs it can get away with.  Homeowners seeking to save their homes from foreclosure must pay whatever fees and costs the law firm claims to have incurred in performing rendered services. Law clerks have no authority to question Defendant's claimed fees and costs, allowing the firm to, without accountability, unlawfully strip equity from New York homeowners.

21.    Despite being fully capable of calculating the cost of services actually rendered in the foreclosure action, Defendant routinely includes in its reinstatement notices to homeowners claims for services not rendered and expenses not actually incurred.  These unlawful charges are usually labeled as "Outstanding Estimated Foreclosure Fees and Costs" on the reinstatement and payoff notices Defendant provides to homeowners in default. These charges, however improper, are then assessed to homeowners when they reinstate their loans or are offered loan modifications.

**A.    Defendant's Demand for Estimated Fees and Costs Is Deceptive and Seeks to Collect Unlawful Fees**

      **a.    Discontinuance Cost**

22.    Disregarding the statutory requirement that foreclosure plaintiffs file a notice of discontinuance and vacatur of the lis pendens after the foreclosure action has been settled in the

FSCP, Defendant routinely charges homeowners for the preparation of motions to discontinue the underlying foreclosure actions. Although motions to discontinue are unnecessary, Defendant has admitted that it is the firm's practice to charge this fee in case it is compelled to seek an order from the court discontinuing the action even when it has not actually prepared the motion.

23.     Homeowners are generally informed of the law firm's fees and costs through a reinstatement notice. The purpose of the reinstatement notice is to inform the homeowners of the amount that must be paid in order to bring the loan current, as of the date of the notice - including foreclosure related expenses that are the homeowner's responsibility.

24.     The notice is thus an attempt to collect a debt from the homeowners. When a homeowner obtains a loan modification these amounts are paid to Defendant by the foreclosing party and capitalized into the homeowner's principal balance.

25.     Based upon information and belief, in the overwhelming majority of foreclosure cases, homeowners rarely appear in the underlying foreclosure actions. As such, it is the custom and practice of most foreclosing plaintiff law firms to file notices of discontinuance in settled cases.

26.     Based upon information and belief, while Defendant charges homeowners for the preparation of motions to discontinue, it is their custom to discontinue foreclosure actions by filing stipulations of discontinuance in settled cases not motions. Defendant's practice of charging homeowners for unnecessary services and hours not actually expended results in the collection of unearned and therefore unlawful fees.

27.     Based upon information and belief, Defendant recycles the same "Notice to Discontinue Action" in every foreclosure case. Defendant's practice of charging homeowners for the same time or work product repeatedly also results in the collection of unearned and therefore unlawful fees.

**b.**     **Order of Reference Cost**

28.     Disregarding the statutory requirement that foreclosing plaintiffs hold all motions in abeyance while settlement conferences are being held, Defendant routinely charges settling homeowners a fee for the preparation and filing of motions for orders of reference. Defendant is not required to and does not actually file motions for orders of reference in settled cases.  Defendant's practice of charging homeowners for services not actually provided results in the collection of unearned and therefore unlawful fees.

**c.**     **Referee Cost**

29.     Despite the fact that cases are settled in conference, Defendant routinely charges to homeowners the cost it would have incurred for the hiring of a referee to conduct a foreclosure sale, even though it did not actually incur that cost.

30.     In violation of New York Law and their mortgage documents, which obligate them to pay only the lender's reasonable expenses, homeowners are forced to pay these unlawful, estimated and unincurred charges in order to reinstate their mortgages or, in the case of a loan modification, these charges are capitalized and added to their principal balance. These unlawful charges create a substantial hardship for already financially strapped homeowners who are seeking to save their homes from foreclosure.

**B.**     **Defendant Uses Deceptive and Unfair Debt Collection Practices to Collect Overstated Attorneys' Fees and Costs**

31.     Defendant does not provide to borrowers on its own initiative *quantum meruit* proof of the quality and quantity of services provided to them and systematically refuses borrowers' requests to provide such *quantum meruit* proof as required by law in order to obfuscate the law firm's efforts to charge excessive, unauthorized and unlawful attorney's fee costs to homeowners.  .

7

32.     Foreclosing plaintiffs or servicers rely upon the law firms they hire to perform all the legal work in the foreclosure action for the maximum allowable fee and to pass through only its actual, necessary and reasonable costs. When a foreclosure action does not proceed to judgment, servicers that hire the law firm do not absorb the law firm's costs or fees. Instead, servicers obtain reimbursement from homeowners by adding the costs and fees to the homeowner's principal balance. Therefore, servicers have little incentive to scrutinize the reasonableness of the fees charged by law firms because they ultimately pass those costs to someone else.

33.     Homeowners cannot police Defendant's fees effectively because Defendant routinely refuses to provide documentation in support of fees demanded.

a.      **"Allowable" Attorney Fees**

34.     In addition to the estimated fees and costs listed on Defendant's reinstatement notices, homeowners are also charged flat rate foreclosure attorneys' fees.  These fees are usually labeled as "allowable attorney fee," but bear no relationship to the services provided in each case. Instead, they are determined exclusively by the flat attorney fee (the "maximum allowable fee") agreed-upon between foreclosing plaintiffs or loan servicers and the law firm.

35.     All mortgage loan servicers operating within New York State are subject to New York State Department of Financial Services ("DFS") regulatory scheme. *See generally* 3 NYCRR Part 419. Among other things, the regulations sets forth the requirements relating to fees permitted to be collected by Servicers. 3 NYCRR 419.10(b). Pursuant to Part 419.10(c), "[a]ttorney's fees charged in connection with a foreclosure action shall not exceed reasonable and customary fees for such work.  In the event a foreclosure action is terminated prior to the final judgment and sale for a loss mitigation option, a reinstatement or payment in full, the borrower shall only be liable for reasonable and customary fees for work actually performed." 3 NYCRR 419.10(c).

36.     Defendant's practice of mechanically charging homeowners a flat fee for legal services and its routine refusal to provide *quantum meruit* proof of the value of services provided, denies homeowners and their counsel the ability to confirm that they were only charged actual, necessary, and reasonable costs as required by DFS and their respective mortgage documents.

37.     Under New York law, when a foreclosure action is discontinued for a loss mitigation option or a reinstatement, the attorney fees that homeowners are required to pay must be "reasonable": *i.e.*, commensurate with the work necessarily and actually completed. However, Defendant systematically demands that homeowners pay unearned charges for services not provided as a condition of permitting loss mitigation or reinstatement.

38.     Defendant uses recycled work product in foreclosure cases, and cases that are settled before or during the conference phase present no novel or difficult questions of law. Yet Defendant systematically demands homeowners pay a flat rate attorney's fee that is unearned, unreasonable, excessive and disproportionate to the quantity and quality of legal services actually rendered.

39.     When Defendant files for a Judgment of Foreclosure and Sale, its attorneys submit "Attorney's Affirmation[s]" in support of their fees. Each "Attorney's Affirmation" sets forth the time allegedly spent and the billing rate.

40.     Two publicly available "Attorney's Affirmation[s]" show that from intake to a point just prior to the time settlement conferences are held, Defendant purported to spend only 4.0 hours – at $150 an hour – on a foreclosure action.

41.     For example, attached as Exhibit M, is an "Attorney's Affirmation" dated June 26, 2013, from the case of *GMAC Mortgage, LLC v. Gehrke*, in which Craig Beiderman, Esq., of Fein Such & Crane, LLP, swears that:

Your affiant has performed or will perform the following services relative to the
herein mortgage foreclosure action:

| | |
|---|---|
| a.   Review original file, including mortgage(s) and note(s), credit application, appraisal report, abstract of title, bank notes, etc. | .75 hr |
| b.   Obtain redated abstract and review same. | .5 hr |
| c.   Prepare and file index number and Lis Pendens, prepare Summons and Complaint and file same. | 2.0 hrs |
| d.   Arrange for Service of Complaint on defendants, monitor service record service completion and track default dates | .75 hr |
| e.   Prepare attorney's Affidavit of Regularity, Order of Reference, Referee's Oath, Bill of Costs and client's Affidavit of Merit. | 1.5 hrs |
| f.   Receive and review Oath and Report of Amount due. Prepare Judgment of Foreclosure and Sale, forward same to client. | 1.75 hrs |
| g.   Prepare affirmation of service by mail, Notice of Foreclosure, of Sale. | .75 hr |
| h.   Arrange for publication of sale. | .5 hr |
| i.   Prepare Referee's Deed, Referee's Report of Sale and Statement of Sale. | .75 hr |
| j.   Arrange for sale of property. | .75 hr |
| k.   Prepare order confirming referee's report of sale and forward to Court. | .5 hr |
| l.   Miscellaneous communication with client, Supreme Court, and referee. | .5 hr |
| m.  Miscellaneous accounting chores. | 1.0 hrs |
| TOTAL | 12.0hours |

42.     For these services, Mr. Beideman, on behalf of Defendant, sought to collect $150 an

hour for "an attorney's fee allowance in the above-captioned matter in the sum of $1,800.00."

43.     And a little more than a year later, on July 17, 2014, Mr. Beiderman swore to and

submitted an "Attorney's Affirmation" in the case of *HSBC Bank USA, N.A. v. Hughes*, in which he

sought to collect $1,800 for having allegedly performed exactly the same work for the exact same

amounts of time as he worked on the *Gehrke* foreclosure. See Exhibit N.

44.     In fact, a comparison of Exhibit M and Exhibit N shows that the work allegedly

performed matches down to the quarter hour and the descriptions are identical.

45.     As demonstrated from their own affirmations, Defendant claims its attorneys

perform precisely the same work in every foreclosure action.

10

46.     In the case of the named plaintiffs and the class members, settlement took place between entry "d" and entry "e" on the timeline set forth on the "Attorney's Affirmation."

47.     At all times relevant hereto, CPLR § 3408(h) has provided that "[a] party to a foreclosure action may not charge, impose, or otherwise require payment from the other party for any cost, including but not limited to attorneys' fees, for appearance at or participation in the settlement conference."

48.     Therefore, Defendant should only have sought to recover $600 in attorney fees – *i.e.*, four hours of time spent at $150 an hour – for entries "a" through "d".

49.     Instead Defendant sought to recover $2,030 from each of the named plaintiffs, representing an unearned fee of at least $1,430.

50.     Defendant's own "Attorney's Affirmation[s]" evidence Defendant's fraudulent, deceptive, unconscionable and unlawful practice of attempting to collect unearned fees when an action is settled relatively early – *i.e.*, after service of the complaint on defendants - and that is what Defendant did here to the named plaintiffs and to the class members.

51.     Upon information and belief, based upon the experiences of the named plaintiffs and the "Attorney Affirmation[s]", Defendant unlawfully attempted to collect similar unearned fees under the same circumstances from each of the class members.

52.     The unearned attorney fees charged to the named plaintiffs and the class members are arbitrary, unreasonable, unlawful and punitive.

**b.     New York State Department of Financial Services Filing**

53.     Effective February 13, 2010, the New York State Banking Department (now known as New York State Department of Financial Services (NYDFS)) requires each lender, assignee or mortgage loan servicer to electronically file two (2) separate Notices with the New York State

Superintendent of Banks. The first Notice ("Form A") is required, within three business days after serving the 90-day pre-foreclosure notice for residential real property or cooperative apartments. The second Notice ("Form B") is required within five business days after filing a lis pendens. Each of the respective forms may be filed in bulk.

54.     Based upon information and belief, Defendant routinely charges to homeowners a cost for the filing of the second notice.

55.     Based upon information and belief, filers do not incur a cost for the filing of the required notices with DFS. Further, the required filings are usually done by the foreclosing plaintiffs or servicers and not the foreclosing law firms. In any event, the fee charged is unreasonable considering the labor and difficulty involved in performing this task.

      c.     **Service of Process Cost**

56.     Defendant routinely charges homeowners excessive fees for service of process. These fees are usually significantly higher than what is reasonable and customary for the same service in other actions. Defendant, when asked to provide documentation of costs, usually refuses to do so. In some cases, foreclosure defendants served simultaneously, at the same location are billed separately, the numbers of defendants served are overstated and service costs are padded with charges not usually related to service of process.

**C.     Individual Plaintiff Facts**

      *a.     Christopher White*

57.     On September 23, 2013, Defendant filed a foreclosure action against Mr. White on behalf of HSBC Bank. On December 13, 2013, the initial settlement conference was held at Erie County Supreme Court. Based on Mr. White's application for a loan modification, he was approved for a trial modification on March 31, 2014.

58.     On or around June 18, 2014, Mr. White, after completing a three month trial plan, was offered a permanent loan modification. On June 30. 2014, a copy of the agreement was provided to Mr. White's attorney. According to the agreement $22,933.66 was being added to Mr. White's principal balance. This amount included $6,041.56 labeled as fees and costs. A copy of the loan modification agreement is attached hereto as Exhibit A.

59.     Before the loan modification was offered, Defendant provided two reinstatement notices dated January 13, 2014 and March 26, 2014. On July 3, 2014, after the modification was offered Defendant provided another reinstatement notice. Copies of the reinstatement notices are attached hereto as Exhibit B.

60.     The reinstatement notices were rife with inconsistencies: the notice dated January 13, 2014 demanded fees and costs in the amount of $5,946.56;  the notice dated March 26, 2014 demanded fees and costs in the amount of $5,356.56 and the notice dated July 3, 2014  demanded fees and costs in the amount of $5,646.56.

61.     The Notice dated July 3, 2014, provided the following breakdown of the fees and costs charged to the client:

- Incurred Foreclosure Fees and Costs:
  | | |
  |---|---|
  | Attorney Fees | $779.00 |
  | **Total Outstanding Incurred Foreclosure Fees and Costs** | **$779.00** |

- Estimated Foreclosure Fees and Costs:
  | | |
  |---|---|
  | Attorney Fees | $580.00 |
  | Stipulation of Discontinuance Fee | 300 |
  | Stipulation of Discontinuance Cost | 35 |
  | Order | 45.00 |
  | Ref Cost | 250.00 |
  | **Total Outstanding Estimated Foreclosure Fees and Costs** | **$1,210.00** |

- Mortgagor Recoverable Corporate Advance:
  | | |
  |---|---|
  | Broker's Price Opinion | $285.00 |
  | Title Costs | 655.56 |

13

| | |
|---|---|
| Summons & Complaint | 400.00 |
| Lis Pendens | 60.00 |
| Service of Process | 612.00 |
| Request for Judicial Intervention | 95.00 |
| Allowable Attorney Fees | 1,260.00 |
| **Total Mortgagor Recoverable Corporate Advance** | **$3,367.56** |

- Other Fees Due:

| | |
|---|---|
| Property Inspections | $290.00 |
| **Total of Other Fees Due** | **$290.00** |

62.     Defendant charged Mr. White estimated fees and costs in the amount of $1,210.00 for services not actually provided, some of which Defendant knew would never be provided. These charges were capitalized and added to Mr. White's principal balance. Defendant repeatedly denied Mr. White's request to provide *quantum meruit* proof of the attorney fees and costs added to his principal balance.

63.     On information and belief, the attorneys' fees sought represented the portion of a flat fee negotiated by Defendant with its client, HSBC Bank, which exceeded the value of work actually performed or expected to be performed by Defendant, which amount could not lawfully be shifted to the homeowner under his mortgage and New York law.

### b.     *William Suitor*

64.     On or around September 5, 2013, Defendant, Fein, Such and Crane, filed a foreclosure summons and complaint on behalf of its client, HSBC Bank, against Mr. and Ms. William Suitor.

65.     On September 23, 2013, Mr. Suitor filed a pro se answer and counterclaim that raised a number of affirmative defenses.

66.     On September 25, 2014, Mr. Suitor amended his answer, asserting that the Plaintiff did not file a Request for Judicial Intervention (RJI) as required by Uniform Rule 202.12-a(b).

14

67.    The initial settlement conference was held on October 24, 2013. Mr. Suitor, working with his assigned counsel, Daniel Webster of Legal Services for the Elderly, submitted an application for a loan modification to PHH, the loan servicer.

68.    On or around July 18, 2014, Mr. Suitor was approved for a loan modification. A copy of the loan modification agreement is attached hereto as Exhibit C.

69.    According to the modification agreement, $15,520.88 in fees and costs were capitalized and added to his loan. The capitalized amount included attorney's fees and costs in the amount of $1,748.00 and an unexplained "Recoverable Balance" in the amount of $3,767.59. According to the agreement, Mr. Suitor had until July 31, 2014 to sign and return the modification agreement. The first payment under the modification agreement was due on September 1, 2014.

70.    Despite having questions about the reasonableness of the charged fees and costs, Mr. Suitor, in an effort to not default on the offered modification and risk losing his home, signed and returned the modification agreement.

71.    On or around August 8, 2014, Mr. Suitor, by and through his counsel, Daniel Webster, wrote a letter to Defendant's office requesting a breakdown and disputing the attorney's fees and costs. A copy of the letter is attached hereto as Exhibit D.

72.    On or around August 14, 2014, Defendant's associate attorney V.S. Vilkhu, responded to Mr. Webster defending the fees and costs totaling $5,515.59 charged to Mr. Suitor. Mr. Vilkhu failed to provide a breakdown of the $1,748.00 labeled as attorney's fees. A copy of Mr. Vilkhu's letter is attached hereto as Exhibit E.

73.    The $3,767.59 labeled as recoverable balance was broken down as follows:

| | |
|---|---|
| Litigation Fee: | $1,332.03 |
| Filing Fee- Notice of Pendency: | $35.00 |
| Filing Fee-Judicial Intervention | $95.00 |

15

| | |
|---|---|
| Court Cost- Index Number: | $400.00 |
| Title Cost- Title Search: | $520.56 |
| Attorney Fees: | $875.00 |
| Service Cost: | $510.00 |
| **Total Recoverable Balance:** | **$3,767.59** |

74.     Although the case was settled in conference and there was no litigation, Defendant charged Mr. Suitor $1,332.00 in litigation fee. In addition to the $1,748.00 labeled as attorney's fees and costs and the $$1,332.00 "litigation fee," the "Recoverable Balance" also included an additional $875.00 in attorney's fees.

75.      Defendant's failure to provide *quantum meruit* proof of the value of services provided, denied Mr. Suitor and his counsel the opportunity to properly review the reasonableness of the legal fees charged.

76.     On or around April 1, 2015, HSBC, after reviewing Mr. Suitor's account, informed him that he was entitled to a refund in the amount of $2,701.35. According to HSBC's letter, the refund included " $2,629.59 in fees and/or cost previously assessed to Mr. Suitor's account and included in the loan modification and interest accrued in relation to those fees and/or costs from the effective date of the modification to 3/31/2015 in the amount of $71.76." The refund was applied to Mr. Suitor's principal balance. A copy of HSBC's letter is attached hereto as Exhibit F.

77.     On information and belief, the $2,629.59 refund represented fees and costs that Defendant unlawfully collected for services not actually rendered in Mr. Suitor's foreclosure action.

*c.     Darlene Schmidt*

78.     On October 4, 2011, Defendant filed a foreclosure action against Darlene Schmidt ("Ms. Schmidt" or "the homeowner") on behalf of KeyBank National Association ("KeyBank"). On January 11, 2013, the initial settlement conference was held at Erie County Supreme Court. At the

16

initial settlement conference, Ms. Schmidt informed the court that she had entered into a settlement agreement with KeyBank. Under the agreement, her home equity line of credit would be reinstated after she successfully completed three trial payments, the last of which was due on February 18, 2013.  Conferences were adjourned until March 4, 2013.

79.     On February 6, 2013, Ms. Schmidt's counsel faxed a request for payoff and reinstatement figures to Defendant's office. At the March 4, 2013 conference, Defendant's local counsel informed the court that a breakdown of the fees and costs could not be provided as Defendant's foreclosure file was closed on February 18, 2013, after Ms. Schmidt's account was re-aged on February 15, 2013. Once again, the court adjourned the conference and directed Defendant to provide a breakdown of its fees and costs before the next conference scheduled for April 8, 2013.

80.     On March 26, 2013, Ms. Schmidt's counsel requested and received a payoff statement directly from KeyBank. See Exhibit G. According to the statement, Ms. Schmidt's payoff balance was $43,546.58. The payoff included the following amounts:

| | |
|---|---|
| Principal Balance | $33,547.44 |
| Interest | $334.61 |
| Late Charges | $0.00 |
| Outstanding Legal Fees and Cost | $9,664.53 |
| Total Due as of 04/08/2013 | $43,546.58 |

81.     Ms. Schmidt's counsel provided Defendant with a copy of the Payoff Statement received from KeyBank and requested a detailed breakdown of the claimed legal fees and costs.

82.     Defendant failed to provide a breakdown of its fees and costs at the settlement conference held on April 8, 2013. Subsequent settlement conferences were held on May 13th, May 31st, June 13th, July 15th, July 30th, August 9th and August 19th to allow Defendant and KeyBank to justify or reduce their unsupported legal fees and costs claim.

83.     On June 13, 2013, Defendant submitted a "FC Fee Break Down." See Exhibit H.

According to the breakdown, the capitalized $9,664.53 included $5,854.36 in attorney/legal fees and costs and $3,810.17 labeled as "Re-age Deferment." Re-age deferment refers capitalized unpaid interest. Ms. Schmidt's counsel renewed her objection to the claimed fees and costs and requested a more detailed breakdown.

84.     On August 9, 2013, Defendant's office provided another breakdown and indicated that the fees and costs had been reduced to $3,443.56. See Exhibit I. Defendant also notified the court that KeyBank had been informed of the reduction in attorneys' fees and costs, and the reduction would be reflected in the homeowner's next mortgage statement. According to the breakdown, the following fees and costs were charged to the Ms. Schmidt:

| | |
|---|---|
| Broker's Price Opinion s | $34.00 |
| Reconveyance Fee | 50.50 |
| Allowable Fees through Service Step | 1,260.00 |
| Title Search | 457.00 |
| Sales Tax on Title Search | 36.56 |
| Index Number | 400.00 |
| Lis Pendens | 60.00 |
| NYBD Form B | 150.00 |
| Service of Process | 520.00 |
| Request for Judicial Intervention | 95.00 |
| Order of Reference | 45.00 |
| Prepare Stipulation of Discontinuance | 300.00 |
| Stipulation of Discontinuance | 35.00 |
| **Total Fees and Costs** | **$3,443.56** |

85.     On September 17, 2013, Ms. Schmidt's counsel was advised by a KeyBank representative that the bank's Legal Team had no record of a discussion with Defendant regarding a reduction of the attorney's fees and costs charged to the homeowner. On September 20, 2013, at the tenth settlement conference, Defendant failed to provide confirmation that the attorney's fees and costs were reduced.

86.     On November 7, 2013, Ms. Schmidt filed a motion seeking to bar Defendant and KeyBank from collecting any legal fees above the statutory maximum prescribed by CPLR § 8302(b)(c) and (d) due to Defendant's failure to submit proof of legal services rendered.

87.     On November 20, 2013, Defendant's office submitted to Ms. Schmidt's counsel a payoff breakdown. See Exhibit J. According to the breakdown, the homeowner's account was adjusted as follows:

| | |
|---|---|
| New Outstanding balance | $39,658.42 |
| Total Principal | $31,960.13 |
| | |
| Outstanding Fees and Costs along with Re-age Deferment | $7,698.29 |
| Re-age Deferment | $3,810.17 |
| | |
| Outstanding Legal Fees and Costs | $3,888.12 |
| | |
| 90 Day Demand (Taken off Summary) | $200.00 |
| NY DOB Step 1 (Taken off Summary) | $75.00 |
| Service Costs – Statutory Mailing (Taken off Summary) | $20.80 |
| Reconveyance Fee (Added to Summary) | $50.50 |
| | |
| | $3642.82 |
| Total Finance Charges Due (listed on Summary | $199.26 |
| | |
| Outstanding Legal Fees and Costs | $3,443.56 |

88.     According to the email from Tanner Guild, a paralegal at Defendant's office, attached hereto as Exhibit K, the three charges noted in the above adjustment as "taken off summary" were charges that were "non-recoverable," and should not have been charged to Ms. Schmidt.

89.     On October 20, 2011, Ms. Schmidt was served with process personally, and on behalf of her three sons. Nevertheless, Defendant failed to provide any documentation to support the claimed $520.00 service of process cost. Defendant also failed to remove the following unauthorized

fees and costs:

| | |
|---|---|
| NYBD Form B | $150.00 |
| Order of Reference | $45.00 |
| Prepare Stipulation of Discontinuance | $300.00 |
| Stipulation of Discontinuance | $35.00 |
| Reconveyance Fee | $50.50 |

90.     On December 20, 2013, the hearing on Ms. Schmidt's motion was adjourned to

January 31, 2014 to allow Defendant an opportunity to settle the fees or submit responding papers.

On January 31, 2014, the hearing date was once again adjourned to February 28, 2014.

91.     On February 14, 2014, almost one year after the first settlement conference,

Defendant finally provided a mortgage statement reflecting the reduction in Ms. Schmidt's balance.

A copy of the statement is attached hereto as Exhibit L. On April 4, 2014, the foreclosure action was

discontinued by stipulation of the attorneys for both parties.

<u>CLASS ALLEGATIONS</u>

92.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

This Count is brought by Plaintiff, individually and on behalf of two classes consisting of

consumers with New York State addresses, as follows: **(The FDCPA Class)**

**All consumers with New York addresses, who: (a) during the period from May 15, 2014 to**

**present; (b) were served with or sent loan-modification letters, loan-reinstatement letters**

**or letters in a form materially identical or substantially similar to the letters sent to**

**Plaintiffs, copies of which are attached to this Amended Complaint as Exhibits A –C, H, I**

**and J; and (c) the letter was not returned by the postal service as undelivered.**

**(The GBL sec. 349 Class)**

**All consumers with New York addresses, who: (a) during the period from May 15, 2012 to**

**present; (b) were served with or sent loan-modification letters, loan-reinstatement letters or letters in a form materially identical or substantially similar to the letters sent to Plaintiffs, copies of which are attached to this Amended Complaint as Exhibits A –C, H, I and J; and (c) the letter was not returned by the postal service as undelivered.**

93.      Plaintiffs do not know the exact size of or identities of the proposed classes, because such information is in the exclusive control of Defendant. Plaintiffs believe that the Classes encompass thousands of individuals whose identities can be readily ascertained from Defendant's books and records. Therefore, the proposed classes are so numerous that joinder of all members is impracticable.

94.      All members of the classes have been subject to and affected by the same conduct. The claims are based on Defendant's violation of 3 NYRR § 419.10(c) and Uniform Rules § 202.12-a(7), by collecting and attempting to collect unlawful attorney's fees and costs for foreclosure related services.  There are questions of law and fact that are common to the Classes and predominate over any questions affecting only individual members of the Classes. These questions include but are not limited to the following:

a.      whether Defendant is entitled to charge borrowers attorneys' fees  for foreclosure related services and expenses not actually rendered or incurred;

b.      whether Defendant's conduct in collecting and attempting to collect attorneys' fees which are not legally due and owing under New York State law violated 15 U.S.C. §§ 1692f and 1692f(1);

c.      whether Defendant's conduct in collecting and attempting to collect attorneys' fees which are not legally due and owing under borrower's mortgage documents violated 15 U.S.C. § 1692f(1);

d.      whether Defendant violated Uniform Rules § 202.12- a(b)(7)by collecting and attempting to collect attorney's fees for motions allegedly prepared while settlement conferences are being held;

e.      whether Defendant's collection and attempted collection of amounts prohibited Uniform Rules § 202.12- a(b)(7)constitutes an unfair collection practice in violation of

the FDCPA;

f.        whether Defendant's collection and attempted collection of amounts prohibited Uniform Rules § 202.12- a(b)(7)constitutes a "deceptive practice" in violation of GBL § 349;

g.        whether by sending homeowners reinstatement notices and loan modification offers requiring payment of amounts prohibited by law from collection, Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10);

h.        whether Defendant violated 3 N.Y.C.R.R § 419.10(c) by collecting and attempting to collect unauthorized and inflated attorney's fees and for foreclosure related services and expenses not actually rendered or incurred;

i.        whether Defendant's violation of 3 N.Y.C.R.R § 419.10(c) constitutes an unfair collection practice in violation of the FDCPA;

j.        whether Defendant's violation of 3 N.Y.C.R.R § 419.10(c) constitutes a "deceptive practice" in violation of GBL § 349;

k.        whether the above practices caused Class members to suffer injury; and

l.        the proper measure of damages and injunctive relief.

95.        The claims of the individual named Plaintiffs are typical of the claims of the Classes and do not conflict with the interests of any other members of the Classes in that both Plaintiffs and the other members of the Classes were subjected to the same conduct.

96.        The named Plaintiffs will fairly and adequately represent the interest of the Classes. They are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class action litigation, and CPLR § 3408 representation.

97.        A class action is superior to other methods for the fast and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

98.        Certification of the Classes pursuant to Fed. R. Civ. P. 23(b)(2) and (3) is appropriate.

A class action is the only appropriate means of resolving this controversy because the Class members are not generally aware of their rights and are unlikely to enforce them when faced with the Hobson's choice of doing so at the cost of potentially having a loan modification offer expire and losing their homes. In the absence of a class action, a failure of justice will result.

## COUNT 1

### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

99.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

100.    The FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt. 15 U.S.C. § 1692f.

101.    Defendant violated the FDCPA with respect to the Plaintiffs and each member of the class. Said violations include, without limitation:

   **a.**  attempting to collect amounts not permitted by law (15 U.S.C. § 1692f(1));

   **b.**  using unfair and unconscionable collection methods (15 U.S.C. § 1692f);

   **c.**  Using deceptive, false, misleading representation in connection with debt collection (15 U.S.C. § 1692e

   **d.**  giving a false impression of the character, amount or legal status of the alleged debt (15 U.S.C. § 1692e);

   **e.**  using false or deceptive collection methods (15 U.S.C. § 1692e(10)); and

   **f.**  impliedly threatening to take illegal action which cannot legally be taken – collecting the costs and fees (15 U.S.C. § 1692e(5)).

102.    As a result of the above violations of the FDCPA, Defendant is liable to Plaintiffs and the Classes for the maximum amount of statutory damages provided under 15 U.S.C. § 1692k, attorney's fees, litigation expenses and costs, and such other and further relief as this Court deems just and proper.

<u>COUNT II</u>

**VIOLATION OF NEW YORK GERNERAL BUSINESS LAW § 349**

103.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

104.    GBL § 349(a) prohibits deceptive acts or practices in the conduct of any business trade or commerce or in the furnishing of any service in New York State.

105.    Plaintiffs bring this claim on behalf of themselves and on behalf of each member of the Class described above.

106.    Under GBL § 349(a), an individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful acts or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."

107.    Defendant's practice of demanding excessive, unauthorized and unlawful costs for foreclosure-related services creates a substantial hardship for financially strapped homeowners.

108.    A homeowner receiving Defendant's reinstatement notice could reasonably be deceived and conclude that he or she must pay the unlawful fees and costs demanded by the defendant.

109.    By providing homeowners with reinstatement notices demanding inflated fees and costs, Defendant increases the amount homeowners have to raise to reinstate their loans.  Thereby preventing homeowners from expeditiously resolving their mortgage arrears. Simultaneously, as Defendant's conduct deters homeowners from reinstating their mortgages, homeowners' loan balances increase because of unnecessary late fees, delinquent interest, and foreclosure-related costs and fees assessed against homeowners' accounts. Such increased loan balances render it more difficult for homeowners to qualify for loan modifications.

110.    Based on Defendant's own admission, it has a company-wide policy of demanding

24

payment for foreclosure-related services when such fees are not legally due and owing. This practice is recurring, deceptive and misleading.

111.    Defendant violated, and continues to violate GBL § 349(a) with respect to the Plaintiffs and each member of the Class. Said violations include, without limitation:

      **a.**   seeking to collect and collecting attorney's fees for foreclosure-related services when such fees are not legally due and owing; and

      **b.**   falsely representing the nature, character or amount of the debt sought to be collected;

112.    Defendant's false representations constitute deceptive acts or practices in the conduct of business, trade or commerce in violation of GBL § 349.

113.    Defendant's deceptive acts and practices have a broad impact on the consuming public at large and are not private contract disputes, unique to the parties.

114.    Defendant's false representations were materially misleading and likely to mislead a reasonable consumer acting reasonably under the circumstances.

115.    Defendant committed the above-described acts willfully and/or knowingly.

116.    Defendant's deceptive acts have caused injury and damage to Plaintiffs and the Class and, unless enjoined, will cause further irreparable injury.

117.    Plaintiffs and members of the Class are entitled to a declaratory judgment that Defendant's practice of providing homeowners with reinstatement notices demanding payment for foreclosure related-services when such fees are not legally due and owing and/or causing such fees to be capitalized into homeowners' principal balance is unlawful.

118.    As a direct and proximate result of Defendant's violation of GBL § 349, Plaintiffs and the other members of the Class have suffered compensable harm and are entitled to preliminary and permanent injunctive relief, and to recover actual damages, costs and attorney's fees.

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.     Certify this case as a class action and appoint the named Plaintiffs to be Class representatives and their counsel to be Class counsel;

b.     An order declaring the acts and practices of Defendant complained of herein to constitute a violation of the FDCPA;

c.     An order declaring the acts and practices of Defendant complained of herein to constitute a violation of GBL § 349;

d.     An order requiring Defendant to provide *quantum meruit* proof of the quality and quantity of services  actually provided and invoices to support claimed legal costs in all foreclosure actions;

e.     An award of actual damages to named plaintiffs and the Class in the form of disgorgement of all amounts unlawfully collected by Defendant and reimbursement of interest and other expenses incurred by Plaintiffs and class members as a result of Defendant's unlawful conduct;

f.     An order permanently enjoining Defendant from demanding fees above what is reasonable and customary fees for work actually performed and costs actually incurred;

g.     An order awarding statutory damages to each individual Plaintiff and to the FDCPA Class, pursuant to FDCPA, 15 U.S.C. § 1692k;

h.     An order awarding actual and/or minimum damages, whichever are greater, to each named plaintiff and the GBL Class members pursuant to GBL § 349(h);

i.     An order awarding Plaintiffs the costs of the action together with reasonable attorney's fees under GBL § 349(h), 15 U.S.C. § 1692k, and Fed. R. Civ. P. 23(h); and

j.     Grant Plaintiffs and the Classes such other and further relief as this Court finds equitable, just, necessary and proper.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury on all issues so triable.

Dated:  Buffalo, New York
November 7, 2016                                         Respectfully Submitted,


                                                        WESTERN NEW YORK LAW CENTER


                                                        /s/ Keisha A. Williams
                                                        Keisha A. Williams, Esq.
                                                        237 Main Street, Suite 1130
                                                        Buffalo, New York 14203
                                                        Tel:  716-828-8415
                                                        Fax: 716-270-4005
                                                        Email: kwilliams@wnylc.com

**ATTORNEYS FOR PLAINTIFFS**
Brian L. Bromberg
BROMBERG LAW OFFICE, P.C
26 Broadway, 21st Floor
New York, New York 10004
Tel: 212-248-7906
Fax: 212-248-7908
Email: brian@bromberglawoffice.com

Stuart T. Rossman
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
Tel: 617 542-8010
Fax: 617 542-8028
Email srossman@nclc.org

Charles M. Delbaum
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
Tel: 617-542-8010
Fax: 617-542-8028
Email cdelbaum@nclc.org