## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NEW YORK

CHRISTOPHER WHITE, WILLIAM
SUITOR, and DARLENE SCHMIDT,
individually and on behalf of all others
similarly situated,

       Plaintiffs,

       vs.

FEIN, SUCH & CRANE, LLP,

       Defendants.

Case No.: 15-cv-00438 (LJV/HKS)

**DECLARATION OF PLAINTIFFS'
ATTORNEY, STUART T. ROSSMAN
PURSUANT TO FED. R. CIV. P. RULE
56(d)**

1

Plaintiffs respectfully submit this Declaration of their counsel, Stuart T. Rossman, pursuant to Fed. R. Civ. P. Rule 56(d) in order to show that they cannot present facts essential to justify their opposition to the motion for summary judgment (the "Motion for Summary Judgment") filed by Defendant, Fein, Such & Crane on July 31, 2017 (Docket No. 69), and in support of their request that the Court either deny the Motion for Summary Judgment or, alternatively, require Defendant to re-notice its Motion for Summary Judgment in order to allow Plaintiffs time to take further discovery related to said identified facts.[1]

I, Stuart T. Rossman, pursuant to 28 U.S.C. § 1747, hereby declare:

1. I am an attorney duly admitted to practice in this Court.  I am one of the attorneys for record for the Plaintiffs and am familiar with the facts and circumstances of this matter.

2. I am submitting this declaration in support of the Plaintiffs' opposition to Defendant's Motion for Summary Judgment.  As set forth in Plaintiffs' opposition, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment. Absent denying the Motion for Summary Judgment, however, Plaintiffs respectfully request the Court defer consideration of the Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(d) to allow Plaintiffs a reasonable opportunity to take discovery and present facts essential to justify their opposition.

3. Plaintiffs make this application without waiving the right to oppose Defendant's motion on any grounds including, without limitation, its argument that the evidence in

---

[1] See Fed. R. Civ. P. Rule 56(d) states that:
"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order."
The Supreme Court has recognized that non-movants are entitled to "a full opportunity to conduct discovery" before opposing summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

documents already obtained raises genuine, triable issues of material fact sufficient to defeat the Motion for Summary Judgment or that the Defendant fails as a matter of law to carry its initial, threshold burden for purposes of summary judgment under Fed. R. Civ. P. 56.

## PROCEDURAL BACKGROUND

4. On May 31, 2017, Plaintiffs moved, under Fed. R. Civ. P. Rule 6(B)(1)(A), for an extension of the parties' deadline to complete fact discovery until a date 45 days after the Court decided the Plaintiffs' Motion to Compel (Docket No. 63).

5. On June 26, 2017, Plaintiffs file a Motion to Supplement Plaintiffs' Motion to Extend Discovery (Docket No. 64).  Attached to said Motion to Supplement was the Declaration of Plaintiffs' Attorney, Brian L. Bromberg, in Support of Motion to Supplement Motion to Extend Briefing (Docket No. 64-1) identifying the Defendant's production of hundreds of pages of documents after the purported close of discovery.

6. On July 7, 2017, Plaintiffs moved to compel Defendant to respond to Plaintiffs' Interrogatories Nos. 2 and 3 (Docket No. 66).

7. On July 31, 2017, Defendant filed its Motion for Summary Judgment (Docket No. 69).  Accompanying the Motion for Summary Judgment, Defendant submitted the Affidavit of David P. Case ("Case Affidavit)(Docket No. 69-12) and a Statement of Material Fact (Docket No. 69-36) based, in part, on the Case Affidavit and its annexed exhibits.

8. Also on July 31, 2017, Plaintiffs filed their Motion to Extend the Deadline for Plaintiff to Move for Summary Judgment (Docket No. 70).

9. On February 20, 2018, this Court, by Decision and Order of Magistrate Schroeder, ruled that Plaintiffs' "Interrogatories No. 2. and 3 seek information beyond the scope of the issues pertaining to the individual defendants in this action" and that to the extent that the information sought could be useful in discerning whether defendant's principal purpose is debt collection or whether its practices are consumer oriented, there are alternative avenues of discovery into defendant's business practices which would not impose such an undue burden upon defendant." Accordingly the Plaintiffs' motion to compel was denied and the Defendant's motion for a protective order was granted. (Docket No. 74).

10. On March 1, 2018, this Court, by text order of Magistrate Schroeder, ruled that "Plaintiff's letters to the Court do not indicate that deposition of defendant is essential to justify its opposition to the pending motion for summary judgment. Accordingly, the scheduling order for the motion for summary judgment will not be stayed. In the event that plaintiff is able to make a showing pursuant to Rule 56(d) or the motion for summary judgment is denied, this Court will set an updated deadline for completion of outstanding discovery." (Docket No. 76).

## FACTS CURRENTLY UNAVAILABLE TO PLAINTIFFS

11. Plaintiffs request additional discovery pursuant to Rule 56(d) about the arguments, and the allegations of fact upon which such arguments are premised, that Defendant has advanced as ground for summary judgment including, but not limited to the following factual contentions raised for the first time in the Case Affidavit, relied upon by the Statement of Uncontroverted Facts and incorporated in Defendant's Memorandum of Law in Support of its Motion for Summary Judgment:

4

- FSC's representation of HSBC Bank USA, N.A., (hereinafter "HSBC") began during or around December 2003. See Case Aff. at ¶ 6, and Statement of Uncontroverted Facts at ¶ 8.

- FSC's representation of KeyBank National Association (hereinafter "KeyBank") on mortgage foreclosure matters in New York began during or around March 2004. See Case Aff. at ¶ 7, and SUF at ¶ 9.

- At all times relevant to the Amended Complaint, FSC had written agreements with HSBC and KeyBank that set forth certain expectations, rights, duties, and obligations of the contracting parties. See Case Aff. at ¶ 8, and SUF at ¶ 10.

- The written agreements between FSC and its bank clients set forth the flat fees that these bank clients would pay to the Firm for services rendered. See Case Aff. at ¶ 8, and SUF at ¶ 11.

- The amount of fees that FSC can charge to its bank clients on any given foreclosure remain set by the written contractual agreements between FSC and its bank clients, regardless of the size of the underlying loan or whether the bank client receivers any fees from the debtor. See Case Aff. at ¶ 9, and SUF at ¶ 12.

- FSC's written agreement with HSBC required that FSC's fees be within Government-Sponsored Entity guidelines setting the flat fees for uncontested foreclosures set forth by the Federal National Mortgage Association in effect at the time of the referral or, where such flat fee is revised, then as to the effective date of the revised fee, unless otherwise approved by HSBC—which

would include certain services not covered by the flat fee, such as certain contested litigation. See Case Aff. at ¶ 10, and SUF at ¶ 13.

- Billing guidelines provided to FSC by HSBC required FSC to invoice HSBC pro rata amounts of the uncontested flat fee based upon certain milestones including, but not limited to, the preparation of the Complaint, service of process completed, application for Order of Reference prepared and/or filed, and sale scheduled. See Case Aff. at ¶ 10, and SUF at ¶ 14.

- FSC's contractual agreement with KeyBank also set forth the flat fee FSC was allowed to charge the bank for a completed uncontested foreclosure. See Case Aff. at ¶ 11, and SUF at ¶ 15.

- FSC's contractual agreement with and billing instructions received from KeyBank further set forth a pro rata schedule that allowed the Firm to charge it bank client a certain pro rata percentage of the total fee upon reaching certain milestones. See Case Aff. at ¶ 11, and SUF at ¶ 16.

- FSC undergoes routine, if not yearly, audits from its bank clients where many facets of the FSC's practice, including its billing practices and procedures, are scrutinized by its bank clients' auditors to ensure that FSC is following its clients' expectations and best practices. See Case Aff. at ¶ 17, and SUF at ¶ 17.

- FSC's billings to its bank clients are carefully scrutinized by its bank clients, and FSC's bank clients will not pay for work that was not done or for fees or costs that are not sufficiently supported by either the agreements FSC has with

its bank clients or by back-up documentation.  See Case Aff. at ¶ 17, and SUF at ¶ 18.

- The fees that FSC's bank clients, including HSBC and KeyBank, agreed to pay FSC were not contingent on whether the bank client obtained reimbursement of those fees in a foreclosure proceeding or a negotiated settlement. See Case Aff. at ¶ 13, and SUF at ¶ 19.

- FSC has no control over what fees, costs and disbursements its bank clients may seek to recover through mortgage foreclosure. See Case Aff. at ¶ 16, and SUF at ¶ 20.

- At no time did FSC provide legal services to Mr. White. See White Admissions (McCoy Decl. Ex. 2) at Response No. 19; see also Case Aff. at ¶ 26, and SUF at ¶ 25.

- At no time did an attorney-client relationship exist between Mr. White and FSC. See White Admissions (McCoy Decl. Ex. 2) at Response No. 20, see also Case Aff. at ¶ 26, and SUF at ¶ 26.

- With the exception of the transmittal of the foreclosure Summons and Complaint, there were no communications between Mr. White and FSC concerning his mortgage with HSBC. See Plaintiff Christopher White's Amended Responses to Defendant's First Set of Interrogatories, dated and verified April 4, 2017 ("White Interrogatories") (McCoy Decl. Ex. 3) at Response No. 1; see also Case Aff. at ¶ 27, and SUF at ¶ 28.

- Following the commencement of the foreclosure proceeding, FSC was notified by the Erie County Court that a foreclosure settlement conference

(required under N.Y. C.P.L.R. § 3408 ("CPLR § 3408")) was scheduled for November 22, 2013; this conference was administratively adjourned to December 13, 2013. See Case Aff. at ¶ 29, and SUF at ¶ 29; see also Amended Complaint (McCoy Decl. Ex. 1) at ¶ 57.

- By the time of the December 13, 2013 settlement conference, HSBC had paid FSC approximately $3,082.56 in attorneys' fees and disbursements advanced by FSC on behalf of HSBC. See Case Aff. at fn. 8, and SUF at ¶ 30.

- CPLR § 3408 required the foreclosing mortgagee's counsel (i.e., FSC) to provide, among other things, "an itemization of the amounts needed to cure and pay off the loan… ." See CPLR § 3408(e)(1); see also Case Aff. at ¶ 31, and SUF at ¶ 31.

- This requirement was and is understood by FSC to mean that foreclosing mortgagee plaintiff and/or its counsel must provide to the mortgagor (or his or her counsel) reinstatement figures (to cure the default in the loan) and payoff figures (to pay off the loan). See Case Aff. at ¶¶ 31, 32, and SUF at ¶ 32.

- At the December 13, 2013 settlement conference, Mr. White was represented by counsel from Legal Aid Bureau of Buffalo. See Case Aff. at ¶ 30, and SUF at ¶ 33.

- Specifically, following Mr. White's change of counsel, FSC received a request from WNYLC (through its employee Valerie Malia) for reinstatement figures to cure Mr. White's mortgage default.  See Case Aff. at ¶ 33, and SUF at ¶ 37.

- In response to WNYLC's request, FSC on January 13, 2014 sent the reinstatement figures by facsimile to the attention of Valerie Malia at WNYLC. See Case Aff. at ¶ 33, and SUF at ¶ 38; see also Amended Complaint (McCoy Decl. Ex. 1) at Exhibit B.

- The January 13, 2014 letter was sent by FSC to WNYLC, and not to Mr. White. See Case Aff. at ¶ 33, and SUF at ¶ 39; see also Amended Complaint (McCoy Decl. Ex. 1) at Exhibit B.

- From January through March 2014, Mr. White's attorneys provided FSC with certain financial documentation needed by HSBC's loan servicer to consider the borrower for a loan modification agreement.  See Case Aff. at ¶ 34, and SUF at ¶ 41.

- In response to additional requests to FSC by WNYLC for further information, FSC on March 26, 2014 faxed to Mr. White's counsel (again to the attention of Valerie Malia) correspondence which provided a further description or explanation of the Outstanding Incurred Fees and Costs, the Outstanding Estimated Fees and Costs, and the Mortgagor Recoverable Corporate Advance listed in the January 13, 2014, letter. See Case Aff. at ¶ 37, and SUF at ¶ 42; see also Amended Complaint (McCoy Decl. Ex. 1) at Exhibit B.

- The March 26, 2014 letters were sent by FSC to WNYLC, and not to Mr. White. See Case Aff. at ¶ 37, and SUF at ¶ 43; see also Amended Complaint (McCoy Decl. Ex. 1) at Exhibit B.

- On or about April 25, 2014, FSC received a letter from WNYLC attorney Keisha Williams, Esq., objecting to the fees and costs that HSBC sought to

recover and as listed in the March 26, 2014, letters.  See Case Aff. at ¶ 38, and

SUF at ¶ 48; and Exhibit "B" as referenced therein.

- FSC did not send the proposed mortgage modification agreement to Mr.

  White. See Case Aff. at ¶ 40, and SUF at ¶ 50.

- At a June 30, 2014 settlement conference appearance, Attorney Williams

  wanted to understand a breakdown of the fees that HSBC had included in its

  mortgage modification offer to Mr. White. See Case Aff. at ¶ 39, and SUF at ¶

  53.

- Attorney Williams followed up with FSC in an e-mail asking for a detailed

  breakdown of the fees and costs that HSBC was seeking to recover through

  the mortgage modification agreement.  See Case Aff. at ¶ 39, and SUF at ¶ 54.

- FSC contacted its bank client for the information Attorney Williams had

  requested, and on July 3, 2014, FSC responded to Attorney Williams. See

  Case Aff. at ¶ 39; see also Amended Complaint (McCoy Decl. Ex. 1) at

  Exhibit B, and SUF at ¶ 55.

- The July 3, 2014 letter was sent by FSC to WNYLC, and not to Mr. White.

  See Case Aff. at ¶ 39; see also Amended Complaint (McCoy Decl. Ex. 1) at

  Exhibit B, and SUF at ¶ 56.

- Attorney Williams subsequently brought a motion, originally returnable on

  August 25, 2014, to have the Erie County Court determine that HSBC had not

  negotiated in good faith and to bar HSBC from collecting or charging Mr.

  White any "unsubstantiated attorneys' fees [and] out-of-pocket expenses or

costs" (the "Fee Motion"). See Case. Aff. at ¶ 41 and Exhibit "C" as referenced therein, and SUF at ¶ 58.

- FSC responded to the Fee Motion, Attorney Williams replied, and FSC sent Attorney Williams a quantum meruit fee affirmation. See Case. Aff. at ¶ 42, and SUF at ¶ 59.

- Specifically, Attorney Williams, on behalf of Mr. White, negotiated with FSC, on behalf of its client, to resolve the dispute concerning fees and costs as follows: attorneys' fees of $1,500.00 and costs/expenses in the amount of $2,800.00 would be recapitalized into a loan modification agreement.  See Case Aff. at ¶ 43 and Exhibits "D" and "E" as referenced therein, and SUF at ¶ 61.

- While FSC's bank client negotiated and agreed to accept a reduced recovery of attorneys' fees and costs, FSC was paid the full amount of its fees by its client.  See Case Aff. at ¶ 44, and SUF at ¶ 64.

- Specifically, HSBC paid FSC a total of $11,136.56 in attorneys' fees and reimbursed advances, but only recovered a total of $4,300.00 from Mr. White through the loan modification agreement.  See Case Aff. at fn. 11, and SUF at ¶ 65.

- The loan modification agreement was subsequently amended by HSBC to reflect the negotiated settlement, including those negotiated fees and costs HSBC would recover through the modified and recast loan. See Case Aff. at ¶ 45, and SUF at ¶ 66.

- FSC, on behalf of its client, transmitted the revised loan modification agreement to Attorney Williams on May 11, 2015. See Case Aff. at ¶ 45 and Exhibit "F" as referenced therein, and SUF at ¶ 67.

- Attorney Williams withdrew the Fee Motion. See Case Aff. at ¶ 46 and Exhibit "G" as referenced therein, and SUF at ¶ 68.

- On or around September 5, 2013, FSC on behalf of HSBC instituted a foreclosure proceeding against Mr. and Mrs. Suitor. See Amended Class Action Complaint (Docket Document No. 45 (McCoy Decl. Ex. 1) at ¶ 64; see also Suitor Admissions (McCoy Decl. Ex. 5) at Response No. 4; Case Aff. at ¶ 50; SUF at ¶ 78; and see May 4, 2017 Deposition Transcript of William Suitor ("Suitor Deposition") (McCoy Decl. Ex. 7) at p. 19, lines 12-16.

- At no time did FSC provide legal services to Mr. Suitor. See Suitor Admissions (McCoy Decl. Ex. 5) at Response No. 17; see also Case Aff. at ¶ 51, and SUF at ¶ 79.

- At no time did an attorney-client relationship exist between Mr. Suitor and FSC. See Suitor Admissions (McCoy Decl. Ex. 5) at Response No. 18, see also Case Aff. at ¶ 51, and SUF at ¶ 80.

- Mr. and Mrs. Suitor initially appeared pro se in the foreclosure action, answering the foreclosure Complaint and then amended their answer within the time period prescribed by New York law to do so as of right. See Case Aff. at ¶ 54 and Exhibit "J" as referenced therein, and SUF at ¶ 82; see also Amended Complaint (McCoy Decl. Ex. 1) at ¶¶ 65, 66.

- Following the commencement of the foreclosure proceeding, FSC was notified by the New York State Supreme Court in Niagara County that a NY CPLR § 3408 foreclosure settlement conference was scheduled for October 24, 2013. See Case Aff. at ¶ 55 and Exhibit "K" as referenced therein, and SUF at ¶ 83; see also Amended Complaint (McCoy Decl. Ex. 1) at ¶ 67.

- At the October 24, 2013 § 3408 settlement conference, neither of the Suitors, nor an attorney on their behalf, appeared and the matter was released from settlement conferences. See Case Aff. ¶ 56, and SUF at ¶ 84.

- By the time of the October 24, 2013 settlement conference, FSC had been paid $2,435.56 in attorneys' fees and costs by its client. See Case Aff. at fn. 13, and SUF at ¶ 85.

- Four days later, the New York Supreme Court in Niagara County issued a new § 3408 settlement conference notification, scheduling a settlement conference for November 14, 2013. See Case Aff. ¶ 56 and Exhibit "L" as referenced therein, and SUF at ¶ 86.

- At the November 14, 2013 settlement conference, Attorney Webster appeared on behalf of the Suitors.  See Case Aff. at ¶ 58, and SUF at ¶ 88.

- The November 14, 2013 settlement conference was adjourned to February 13, 2014, to give Attorney Webster an opportunity to assist his clients in submitting a completed mortgage modification application package. See Case Aff. at ¶ 58, and SUF at ¶ 89.

- As was the case in the White matter, NY CPLR § 3408 required the foreclosing mortgagee's counsel (i.e., FSC) to provide, among other things,

"an itemization of the amounts needed to cure and pay off the loan… ." See

CPLR § 3408(e)(1); see also Case Aff. at ¶ 59, and SUF at ¶ 90.

- This requirement was and is understood by FSC to mean that foreclosing

  mortgagee plaintiff and/or its counsel must provide to the mortgagor (or his or

  her counsel) reinstatement figures (to cure the default in the loan) and payoff

  figures (to pay off the loan). See Case Aff. at ¶ 59, and SUF at ¶ 91.

- The settlement conferences continued for several months with all of FSC's

  communications being with its bank client and with Attorney Webster. See

  Case Aff. at ¶60, and SUF at ¶ 92.

- At no time during Attorney Webster's representation of the Suitors did FSC

  contact the mortgagors.  See Case Aff. at ¶ 60, and SUF at ¶ 93.

- The proposed mortgage modification agreement was prepared by HSBC, and

  not by FSC.  See Case Aff. at ¶ 66, and SUF at ¶ 95.

- The proposed mortgage modification agreement was sent to the Suitors by

  HSBC, and not by FSC. See Suitor Admissions (McCoy Decl. Ex. 5) at

  Response No. 8; see also Case Aff. at ¶ 61, and SUF at ¶ 96.

- Attorney Webster did not respond in writing to challenge or question the

  breakdown and explanation provided in Attorney Vilkhu's letter. See Case

  Aff. at ¶ 64, and SUF at ¶ 105.

- On January 2, 2015 Attorney Webster consented to discontinue the Suitor

  Foreclosure action.  See Case Aff. at ¶ 64 and Exhibit "M" as referenced

  therein, and SUF at ¶ 110.

- In the Suitor foreclosure proceeding, FSC was paid a total of $7,028.15 in attorneys' fees and disbursements made on behalf of its bank client. See Case Aff. at ¶ 66, and SUF at ¶ 114.

- While HSBC independently determined to provide the Suitors with a refund of $2,701.35, at no time did FSC refund back to HSBC any of the fees that its bank client had paid too it.  See Case Aff. at ¶ 66, and SUF at ¶ 117.

- On or around October 4, 2011, FSC on behalf of KeyBank instituted a foreclosure proceeding against Ms. Schmidt.  See Amended Class Action Complaint (McCoy Decl. Ex. 1) at ¶ 78; see also Schmidt Admissions (McCoy Decl. Ex. 8) at Response No. 7; Case Aff. at ¶ 70, and SUF at ¶ 125.

- At no time did FSC provide legal services to Mr. Suitor. See Schmidt Admissions (McCoy Decl. Ex. 8) at Response No. 18; see also Case Aff. at ¶ 72, and SUF at ¶ 126.

- At no time did an attorney-client relationship exist between Mr. Suitor and FSC. See Schmidt Admissions (McCoy Decl. Ex. 8) at Response No. 19, see also Case Aff. at ¶ 72, and SUF at ¶ 127.

- Following the commencement of the foreclosure proceeding, FSC was notified by the New York State Supreme Court in and for Erie County that a CPLR § 3408 foreclosure settlement conference was scheduled for January 11, 2013. See Case Aff. at ¶ 76, and SUF at ¶ 138; see also Amended Complaint (McCoy Decl. Ex. 1) at ¶ 78.

- On December 28, 2012 – approximately two weeks before the scheduled CPLR § 3408 conference – FSC was advised by its bank client to put its file

on hold as the client and Ms. Schmidt were directly working with each other on loss mitigation. See Case Aff. at ¶ 77, and SUF at ¶ 139.

- Although FSC was asked by its bank client to put its file on hold, FSC was nonetheless required to prepare for and attend the January 13, 2013 settlement conference. See Case Aff. at ¶ 77, and SUF at ¶ 140.

- At the January 13, 2013 conference, FSC was advised that that KeyBank was working directly with Ms. Schmidt and/or her attorney on a "re-age" plan; and that Ms. Schmidt made the first of three payments of $427.89 to effectuate the re-age. See Case Aff. at ¶ 78, and SUF at ¶ 141; see also Amended Complaint (McCoy Decl. Ex. 1) at ¶ 78 ("At the initial settlement conference, Ms. Schmidt informed the court that she had enetered into a settlement agreement with KeyBank.")

- By the time of January 11, 2013 settlement conference, the Firm had been paid $2,734.06 in attorneys' fees and costs by its client. See Case Aff. at fn. 19, and SUF at ¶ 142.

- FSC was not involved with the negotiations between the bank and borrower which had begun prior to the first statutorily-mandated Court-supervised settlement conference. See Case Aff. at ¶ 78, and SUF at ¶ 143.

- At the time of the January 11, 2013 settlement conference, Ms. Schmidt was represented by counsel, specifically, Amy Gathings of WNYLC. See Case Aff. at ¶ 79, and SUF at ¶ 144.

- At the January 11, 2013 settlement conference, Attorney Gathings appeared for Ms. Schmidt and asked that a copy of the re-age paperwork paperwork, if

any, be provided, and that the matter to be adjourned.  See Case Aff. at ¶ 79,
and SUF at ¶ 145.

- The settlement conference was adjourned to March 4, 2013.  See Case Aff. at
  ¶ 79, and SUF at ¶ 146.

- KeyBank formally closed its file with FSC on February 19, 2013.  See Case
  Aff. at ¶ 80, and SUF at ¶ 147.

- However, since the foreclosure action remained open and settlement
  conferences were ongoing, FSC was required to continue to prepare for and
  attend them. See Case Aff. at ¶ 80, and SUF at ¶ 148.

- At the March 4, 2013 settlement conference, FSC advised the Court that the
  re- age was completed and the account was considered current by KeyBank.
  See Case Aff. at ¶ 81, and SUF at ¶ 150.

- At the March 4, 2013 settlement conference, Attorney Williams demanded
  production of the re-age paperwork and would not allow the action to be
  discontinued. See Case Aff. at ¶ 81, and SUF at ¶ 151.

- The March 4, 2013 settlement conference was adjourned to April 8, 2013.
  See Case Aff. at ¶ 81, and SUF at ¶ 152.

- Over the next several months, communications were made between FSC and
  Attorney Williams concerning a breakdown of the attorneys' fees, costs and
  expenses for which the bank was seeking reimbursement and which would be
  re-aged into Ms. Schmidt's account. See Case Aff. at ¶¶ 82-86, and SUF at ¶
  153.

- Since the matter had been closed, FSC did not know what KeyBank charged to Ms. Schmidt's account; FSC contacted KeyBank to obtain the requested information. See Case Aff. at ¶¶ 87, 89, and SUF at ¶ 154.

- On or about June 12, 2013, FSC received from its client a breakdown of the $9,664.53 that appeared to have been included by KeyBank in the re-age.  See Case Aff. at ¶ 89, and SUF at ¶ 155.

- By correspondence dated August 9, 2013, FSC provided a detailed breakdown of the $3,443.56 in fees and costs. See Case Aff. at ¶ 91, and SUF at ¶ 157; see also Amended Complaint (McCoy Decl. Ex. 1) Exhibit I.

- After review of the breakdown of the "Outstanding Legal Fees and Costs" provided in the August 9, 2013 correspondence, Attorney Williams, while at the August 9, 2013 settlement conference and in the presence of the Court's Confidential Law Clerk Jennifer Runfola, confirmed that while she was satisfied with the breakdown provided, KeyBank's billing statement was not correct. See Case Aff. at ¶ 95, and SUF at ¶ 161.

- The Firm has no control over KeyBank's billing statements. See Case Aff. at ¶ 95, and SUF at ¶ 162.

- The settlement conference was continued to September 20, 2013 in order to give KeyBank an opportunity to correct its billing statement. See Case Aff. at ¶ 95, and SUF at ¶ 163.

- On September 10, 2013, Attorney Williams called FSC and advised that she refused to consent to discontinue the action unless and until KeyBank reduced

the amount of attorneys' fees to be paid as part of the re-age of Ms. Schmidt's account. See Case Aff. at ¶ 97, and SUF at ¶ 164.

- On November 7, 2013 Attorney Williams, on behalf of Ms. Schmidt, filed a motion to bar KeyBank from recovering more than $150.00 in attorneys' fees and costs, and to award Schmidt's attorneys' fees and costs (the "Schmidt Fee Motion"). See Case Aff. at ¶ 100 and Exhibit "T" as referenced therein, and SUF at ¶ 165.

- The Schmidt Fee Motion was adjourned to February 28, 2014, to allow the parties an opportunity to discuss and resolve the remaining issues. See Case Aff. at ¶ 102, and SUF at ¶ 166.

- On February 14, 2014, FSC Attorney Vikram S. Vilkhu had a telephonic conference with Attorney Williams to discuss the matter. See Case Aff. at ¶ 104, and SUF at ¶ 167.

- Among the items discussed were the previous breakdown of the Firm's fees and costs charged to KeyBank, and the KeyBank's provision of a corrected billing statement. See Case Aff. at ¶ 104, and SUF at ¶ 168.

- On the basis of the February 14, 2014 discussion, Attorney Williams advised she would withdraw the Schmidt Fee Motion once she had discussed same with her client. See Case Aff. at ¶ 104, and SUF at ¶ 169.

- On February 27, 2014, Attorney Williams advised the Court in an e-mail that "Mr. Vilkhu and I were able to resolve the outstanding issues" and that she had executed and returned the consent to discontinue the action. See Case Aff. at ¶ 105 and Exhibit "U" as referenced therein, and SUF at ¶ 170.

- The discontinuance of the Schmidt foreclosure action was filed on or about March 20, 2014.  See Case Aff. at ¶ 106 and Exhibit "V" as referenced therein, and SUF at ¶ 171.

- FSC was paid the full amount of its fees by Keybank, regardless of what KeyBank actually recovered from Ms. Schmidt. See Case Aff. at ¶ 106, and SUF at ¶ 172.

- By the end of the Schmidt foreclosure matter, FSC was paid a total of $4,654.86 by KeyBank. See Case Aff. at fn. 27, and SUF at ¶ 173.

- KeyBank paid more to FSC than the $3,359.06 it recovered from Ms. Schmidt. See Case Aff. at fn. 27, and SUF at ¶ 174.

The requested evidence will also assist Plaintiff to establish triable issues of fact.

## PROPOSED RULE 56(D) DISCOVERY

12.  As detailed below, Plaintiff request the following discovery:

- Documents concerning correspondence and agreements between HSBC and FSC concerning the payment of attorneys' fees and disbursements in general and specifically regarding the Christopher White and William Suitor accounts.

- Documents concerning correspondence and agreements between Keybank and FSC concerning the payment of attorneys' fees and disbursement in general and specifically regarding the Darlene Schmidt account.

13. A deposition of David P. Case to : (1) inquire about the facts contained in his Affidavit in Support of the Defendant's Motion for Summary Judgment; (2) authenticate and explain the documents he produced in support of Defendant's Motion for Summary Judgment; (3) challenge the foundations and evidentiary bases

for the admissibility of the factual allegations, statements and documents asserted in support of Defendant's Motion for Summary Judgment; (4) challenge his qualifications to serve, as he seeks to do in his Affidavit in Support of the Defendant's Motion for Summary Judgment, as an expert competent to testify not only about his firm's 'fee arrangements' but also about 'the industry standards set by the government sponsored entities'; and (5) inquire about the discovery topics outlined above.  The Plaintiffs have had no opportunity to conduct discovery into these issues to date.

14. Based on information obtained by the Plaintiffs, there are reasonable grounds to believe that the further discovery requested herein will assist Plaintiffs to create genuine, triable issues of material fact.  See, Declaration of Plaintiff's Attorney, Keisha A. Williams, in Support of Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment; Declaration of Jordan Zeranti in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment and Plaintiffs' Response to Fein, Such & Crane's Statement of Material Facts in Support of Its Motion for Summary Judgment to be filed herewith with Plaintiffs Opposition to Defendant's Motion for Summary Judgment.

15. Accordingly, each of the Rule 56(d) discovery requests for production of documents and depositions are targeted, relevant and necessary for clarifying the facts adduced to date and thus likely to assist Plaintiffs in raising genuine, triable issues of material fact in opposition to Defendant's Motion for Summary Judgment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 11th day of May, 2018.

Stuart T. Rossman (B.B.O. No. 430640)