UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER WHITE, WILLIAM SUITOR, and DARLENE SCHMIDT, *Individually and On Behalf of All Others Similarly Situated*,

Plaintiffs,

v.

FEIN, SUCH, & CRANE, LLP,

Defendant.

15-CV-00438-LJV-HKS
DECISION & ORDER

Plaintiffs Christopher White ("White"), William Suitor ("Suitor"), and Darlene Schmidt ("Schmidt"),[1] individually and on behalf of all others similarly situated (collectively, "the plaintiffs"), have filed a complaint against Fein, Such, & Crane, LLP ("the defendant" or "Fein Such"). Docket Item 1. They allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and New York General Business Law ("GBL") § 349. *Id.* On October 26, 2015, the Hon. John T. Curtin denied the defendant's motion to dismiss the complaint, Docket Item 12, and the plaintiffs amended their complaint about a year later. Docket Item 45.

On July 31, 2017, Fein Such moved for summary judgment. Docket Item 69. In the meantime, the Court had referred the case to United States Magistrate Judge H. Kenneth Schroeder, Jr., Docket Item 39, and on March 1, 2018, Judge Schroeder found that there was no need to stay the summary judgment briefing to allow for more

[1] Schmidt was added as a plaintiff when the plaintiffs amended the complaint. *See* Docket Items 43, 45.

discovery under Fed. R. Civ. P 56(d). Docket Item 76. So while discovery continued, the plaintiffs responded to the summary judgment motion on May 11, 2018. Docket Items 79, 80, 81, 83. But the plaintiffs also asked the Court to deny or re-notice the summary judgment motion to allow for more discovery purportedly necessary to oppose the motion. Docket Item 82. The defendant replied on June 8, 2018. Docket Item 88.

After briefing on the summary judgment motion was completed, both parties submitted supplemental authority to the Court. The motion then was referred to Judge Schroeder for a report and recommendation, but this Court now rescinds that referral and addresses the motion in the first instance. For the following reasons, the Court grants the defendant's motion.

## FACTUAL BACKGROUND[2]

White and Suitor entered into mortgage agreements with HSBC Bank USA, N.A. ("HSBC"). Docket Item 83 ¶¶ 21, 75. Schmidt entered into a mortgage agreement with KeyBank National Association ("KeyBank"). *Id.* ¶ 122. After each of the plaintiffs defaulted on his or her respective mortgage, three separate foreclosure actions (the "foreclosure proceedings") were brought against them by HSBC and KeyBank. *Id.* ¶ 7. Fein Such represents HSBC and KeyBank in foreclosure actions, *id.* ¶¶ 8, 9, and it represented them in the foreclosure proceedings, *id.* ¶ 7.

[2] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party. *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011). The following facts are taken from Fein Such's statement of material facts, Docket Item 69-36; the plaintiffs' response to Fein Such's statement of material facts, Docket Item 83; and the exhibits incorporated in those filings. The facts are construed in the light most favorable to the plaintiffs.

The plaintiffs' claims arise from attorneys' fees and costs purportedly due to Fein Such in connection with the foreclosure proceedings. The plaintiffs allege that Fein Such sent them notices demanding the payment of fees that were not earned and costs that were not incurred. *See id*. ¶¶ 70, 119, 176. And the plaintiffs allege that those notices violated the FDCPA and the GBL. *Id*.

According to the plaintiffs, New York Civil Practice Law and Rules § 3408 requires the parties in a foreclosure proceeding to participate in a settlement conference. *Id*. ¶ 29. Here, the plaintiffs allege that each of their settlement conferences had substantial similarities. For example, and as most relevant here, during each conference, the parties' negotiations, *see id*. ¶ 35, 93, 132, included discussions about attorneys' fees and costs, which the underlying mortgage agreements required the plaintiffs to pay in the event of a foreclosure. *Id*. ¶¶ 22, 36, 76, 123. In each conference, the plaintiffs' attorneys objected to the purported attorneys' fees and costs and asked for explanations about the defendant's fees. *Id*. ¶¶ 48, 52-54, 58, 59, 92, 99, 101-03, 105, 153, 161, 164. But despite the disagreements, each plaintiff ultimately settled his or her foreclosure proceeding, agreeing to pay at least some amount in attorneys' fees and costs. *Id*. ¶¶ 60, 61, 107, 109, 171, 172.

White's claim is based on four specific communications or actions that he contends were improper attempts by the defendant to collect a debt in violation of the FDCPA and GBL § 349. *Id*. ¶ 70. These include 1) the defendant's reinstatement notice delivered on January 13, 2014, 2) the defendant's reinstatement notice delivered on March 26, 2014, 3) the addition of fees and costs to White's principal balance under the mortgage modification agreement, and 4) the defendant's reinstatement notice

delivered on July 3, 2014. *Id*. White admits that he did not incur any actual damages as a result of these acts or communications. *Id*. ¶¶ 73, 74.

Suitor's claim is based on two specific communications or actions that he contends were improper attempts by the defendant to collect a debt in violation of the FDCPA and GBL § 349. *Id*. ¶ 119. These include 1) the addition of fees and costs to Suitor's principal balance under the mortgage modification agreement, and 2) the defendant's fee breakdown delivered on August 14, 2014. *Id*. Suitor also admits that he did not incur any actual damages as a result of these acts or communications. *Id*. ¶¶ 120, 121.

Finally, Schmidt's claim is based on two specific communications or actions that she contends were improper attempts by the defendant to collect a debt in violation of the FDCPA and GBL § 349. *Id*. ¶ 176. These include 1) the addition of fees and costs to Schmidt's principal balance under the mortgage modification agreement, and 2) the defendant's reinstatement notice delivered on June 13, 2013. *Id*. Schmidt also admits that she did not incur any actual damages as a result of these acts or communications. *Id*. ¶¶ 178, 179.

All communications about which the plaintiffs complain were between Fein Such and each plaintiff's respective attorney; no communications were sent to any of the plaintiffs directly. *Id*. ¶¶ 36, 100, 136.

## **LEGAL PRINCIPLES**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The movant—that is, the party seeking summary judgment—has the initial burden of showing that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). If the nonmovant fails to carry this burden, the court may grant summary judgment. *See Celotex*, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

Fein Such says that it is entitled to summary judgment because the FDCPA does not cover communications with a creditor's attorney. Docket Item 69-35 at 6-12. It also argues that the plaintiffs have not alleged the necessary elements of a GBL § 349 claim. *Id*. at 21-25. And it argues that further discovery under Rule 56(d) is unnecessary to assess the plaintiffs' claims. Docket Item 88 at 2. The Court addresses each of these issues in turn.

### I. FDCPA Claims

Fein Such argues that the plaintiffs have failed to establish their FDCPA claims because they have not alleged any direct communications between Fein Such and themselves, instead basing their claims on communications between the attorneys. Docket Item 69-35 at 6.

Judge Curtin addressed this issue when he denied Fein Such's motion to dismiss. Docket Item 12 at 5-11. In that decision, Judge Curtin acknowledged that the Second Circuit had stated, in dicta, that "alleged misrepresentations to attorneys for putative debtors cannot constitute violations of the FDCPA." *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).[3] He also recognized that a district court in this Circuit had adopted *Kropelnicki's* dicta under circumstances very similar to those in this case. *See Rojas v. Forster & Garbus LLP*, No. 13–CV–02825 (DLI)(RER), 2014 WL 3810124 (E.D.N.Y. July 31, 2014). But Judge Curtin nevertheless rejected *Kropelnicki's* dicta,

[3] *Kropelnicki* was decided based on the *Rooker-Feldman* doctrine, not on the issue of whether attorney communications can constitute a violation of the FDCPA. *See id.* at 129. Therefore, this statement is dicta and not controlling precedent.

reasoning that the Second Circuit had more recently addressed communicating with an attorney as a factor to be considered in evaluating whether communications are covered by the FDCPA, not a bright-line rule automatically barring attorney communications from the statute's coverage. Docket Item 12 at 9 (citing *Gabriele v. Am. Home Mortg. Servicing*, 503 F. App'x 89, 95 (2d Cir. 2012) (holding that the communications at issue were not covered by the FDCPA because they were merely "technical falsehoods" that were not misleading to the least sophisticated customer, "*particularly [when] represented by counsel*") (emphasis added)).

This Court respectfully disagrees with Judge Curtin[4] and does not read *Gabriele* to say that communicating exclusively with an attorney is merely a factor in determining whether communications are covered by the FDCPA. In assessing whether certain communications violated the FDCPA, the court in *Gabriele* found that the communications at issue "would not mislead the least sophisticated consumer, particularly [a consumer] represented by counsel." *Gabriele*, 503 F. App'x at 95. The court reasoned that "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Id*. (citing *Kropelnicki*, 290 F.3d at 127). Indeed, the court noted that "the protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers.'" *Id*. at 96 n.1 (quoting *Simmons v. Roundup*

[4] Judge Curtin's prior analysis of this issue is not binding on this Court. *See Novick v. AXA Network, LLC*, 714 F. App'x 22, 25 (2d Cir. 2017) (The law of the case doctrine "is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.").

*Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010)). And the court concluded that "[w]ithin the context of an adversary proceeding in state court *between two represented parties*," the allegations at issue "simply do not state plausible claims under the FDCPA." *Id*. at 95-96 (emphasis added). So the Second Circuit did not employ—or even suggest—a factor test.

Since *Gabriele*, the Second Circuit has affirmed that it "[has] not ruled on whether an FDCPA claim may be brought for misrepresentations made to third parties." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 95 n.6 (2d Cir. 2015) (citing *Kropelnicki*). Nevertheless, at best for the plaintiffs here, it is unclear how the Second Circuit factored communications with attorneys into the equation in *Gabriele*. At worst, *Gabriele* endorses the *Kropelnicki* dicta, *Gabriele*, 503 F. App'x at 95-96, (Communications "[w]ithin the context of an adversary proceeding . . . between two represented parties . . . do not state plausible claims under the FDCPA."), albeit without expressly adopting it as a rule, *see Sykes*, 780 F.3d at 95 n.6.

The district courts in this Circuit that have addressed this issue have almost unanimously either interpreted *Gabriele* as adopting *Kropelnicki's* dicta or directly followed *Kropelnicki's* dicta themselves. *See Bonner v. The Bank of New York Mellon*, No. CV 15-3280 (SJF)(GRB), 2016 WL 1426515, at *5 (E.D.N.Y. Feb. 22, 2016) (citing *Gabriele* as adopting *Kropelnicki's* dicta), *report and recommendation adopted sub nom. Bonner v. Bank of New York Mellon*, No. 15-CV-3280 (SJF) (GRB), 2016 WL 1238234 (E.D.N.Y. Mar. 28, 2016); *Torres v. Nationstar Mortg. LLC*, No. CV 15-7015 (LDW) (ARL), 2016 WL 6581868, at *2 (E.D.N.Y. Nov. 2, 2016) (relying on *Kropelnicki's* dicta); *Izmirligil v. Bank of New York Mellon*, No. CV 11–5591(LDW)(AKT), 2013 WL 1345370,

at *5 (E.D.N.Y. Apr. 2, 2013) (relying on *Kropelnicki* and finding that "as a mortgagor represented by counsel, plaintiff had adequate protection from BNYM's conduct in commencing and prosecuting the [f]oreclosure [a]ction"); *Chowdhury v. Velocity Invs., LLC*, No. 13-CV-02330 (ERK) (MDG), 2014 WL 12539348, at *2 (E.D.N.Y. Apr. 15, 2014) ("[T]he Second Circuit has recognized that the protective purposes of the FDCPA typically are not implicated when a debtor is instead protected by the court system and its officers.") (quotations omitted); *Walsh v. L. Offs. of Howard Lee Schiff, P.C.*, No. 3:11-cv-1111 SRU, 2012 WL 4372251, at *6 (D. Conn. Sept. 24, 2012) (relying on *Kropelnicki* dicta and noting that "multiple district courts within this circuit have held that communications directed at a debtor's attorney, rather than the debtor herself, are excluded from the purview of the FDCPA."); *Tromba v. M.R.S. Assocs., Inc.*, 323 F. Supp. 2d 424, 428 (E.D.N.Y. 2004) ("[I]n reliance upon *Kropelnicki*, the Court concludes that, under the circumstances alleged in this case, [p]laintiff has no cause of action under the FDCPA where a communication was solely directed to her attorney."); *Rojas*, 2014 WL 3810124, at *5 ("To the extent [p]laintiff alleges [d]efendant made the purported misrepresentations to [p]laintiff's counsel in support of her 1692d claim, any such claim also must be rejected."); *Song v. Tromberg, Morris & Poulin, PLLC*, No. 21-CV-3171 (ARR) (ARL), 2021 WL 3931353, at *2 (E.D.N.Y. Sept. 2, 2021) ("Considering this consensus of persuasive authority, I conclude that the FDCPA's bar on false, misleading, or unconscionable debt collection practices does not apply to communications directed solely to attorneys, rather than the alleged debtors they represent."); *Vernot v. Pinnacle Credit Servs., L.L.C.*, No. 16-CV-3163 (JFB) (SIL), 2017 WL 384327, at *5 (E.D.N.Y. Jan. 26, 2017) ("In light of the Second Circuit's 'grave

reservations,' the Court concludes the protections of the FDCPA do not apply to communications made by debt collectors to attorneys rather than consumers."); *Campbell v. FCI Lender Serv., Inc.*, No. 19-CV-2368 (MKB), 2020 WL 13547914, at *6 (E.D.N.Y. Aug. 7, 2020) ("[T]he FDCPA does not apply to communications between a debt collector and a debtor's attorney.").[5]

Given *Gabriele,* the *Kropelnicki* dicta, and other district courts' analyses of the issue, the weight of the authority in this Circuit suggests that communications with attorneys are not covered by the FDCPA. The FDCPA claims here are based exclusively on communications with attorneys, *see* Docket Item 83 ¶¶ 36, 100, 136, and the defendants are entitled to summary judgment for that reason alone.

But even if this Court were to apply Judge Curtin's reading of *Gabriele*, it still would grant summary judgment to the defendant. Judge Curtin declined to dismiss the plaintiffs' claims based on their allegations that the loan modification terms were essentially non-negotiable, that the settlement conferences were overseen by law clerks with no authority to challenge Fein Such's fees, and that Fein Such refused to provide *quantum meruit* proof of their attorneys' fees when asked. Docket Item 12 at 9. Judge Curtin found that those allegations—accepted as true on a motion to dismiss—

[5] This Court has found a single district court decision in the Second Circuit breaking from the *Kropelnicki* dicta. *See Villalba v. Houslanger & Assocs., PLLC*, No. 19-CV-4270 (PKC) (RLM), 2022 WL 900538, at *9 (E.D.N.Y. Mar. 28, 2022) ("In any event, the Court concludes that the FDCPA applies to communications directed to consumers' attorneys."). *Villalba* cites no in-circuit authority for its ruling, but it does refer to several circuit court decisions finding that attorney communications may be covered by the FDCPA. *Id*. (citing *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 233 (4th Cir. 2007); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011); *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1272 (11th Cir. 2016)).

outweighed the fact that the plaintiffs were represented by, and the communications were made to, counsel. *Id*. ("Under *Gabriele*, *supra*, the fact that the plaintiffs have legal representation is just one factor in this court's consideration of whether the defendant's communications were false and misleading . . . . Plaintiffs allege that the defendant presents homeowners . . . with loan modification terms that are essentially non-negotiable . . . . The fact that the plaintiffs are represented by counsel does not excuse the debt collector from the consequences of conveying inaccurate and unlawful information.").

Discovery has now been completed, however, and the plaintiffs have admitted several key facts undermining the allegations on which Judge Curtin relied. As to plaintiff White, for example, the plaintiffs admit that loan modification terms were offered after negotiations began with White's attorney, Docket 83 ¶¶ 33, 49; that the attorney's fees and costs were challenged several times by his attorney—including by motion in Erie County Court, *id*. ¶¶ 48, 52-54, 58, 59; and that Fein Such gave White an explanation of the fees and costs, *id*. ¶ 42. As to plaintiff Suitor, the plaintiffs likewise admit that the settlement conference included negotiations with Suitor's attorney, *id*. ¶¶ 87, 88, 92; that the attorney's fees and costs were challenged several times by Suitor's attorney, *id*. ¶¶ 99, 100, 102, 103, 105; and that Fein Such provided Suitor with a breakdown of the challenged fees, *id*. ¶ 103.[6] And as to plaintiff Schmidt, the plaintiffs likewise admit negotiations with Schmidt's attorney, *id*. ¶ 132; challenges by Schmidt's

---

[6] The plaintiffs deny that they were given "a *detailed* breakdown of the challenged fees." *Id*. (emphasis added). But the exhibit on which the plaintiffs' allegations are based indicates that Suitor's attorney indeed was given a summary of what services and fees comprised the attorney's fee and cost total. *See* Docket Item 45-5.

attorney to the attorney's fees and costs, *id*. ¶¶ 153, 164; and discussions between Schmidt's attorney and Fein Such about the breakdown of the attorney's fees and costs, *id*. ¶ 169.

So the allegations on which Judge Curtin relied in denying Fein Such's motion to dismiss are no longer in dispute. Therefore, even Judge Curtin's interpretation of *Gabriele* would result in summary judgment for the defendant, and this Court grants summary judgment for that reason as well.

For all those reasons, this Court grants summary judgment for Fein Such on all FDCPA claims.

## II. State Law Claims

To state a claim under GBL § 349, a plaintiff must establish "(1) that the defendant's conduct is consumer-oriented; (2) that the defendant is engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (internal quotations omitted). "The third requirement . . . demands actual injury, though not necessarily pecuniary harm." *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017). The deceptive act itself cannot, alone, constitute actual injury. *Amalfitano v. NBTY, Inc.*, 128 A.D.3d 743, 746 (2nd Dep't 2015) ("The plaintiff may not 'set[] forth deception as both act and injury.' Here, the record showed as a matter of law that the plaintiff suffered no actual injury, apart from the alleged deceptive act itself.") (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999)).

The plaintiffs have failed to establish any actual injury here; indeed, in several of their responses to the defendant's statement of material facts, they admit that they do not claim any actual damages. *See* Docket Item 83 ¶¶ 74, 121, 179.

In their memorandum of law, the plaintiffs assert—without citing any facts in the record—that they have suffered emotional distress and were injured by entering modification agreements that included the allegedly improper fees and costs. Docket Item 79 at 24. But this Court can find nothing in the record even suggesting that any plaintiff suffered emotional distress. On the contrary, the plaintiffs were asked several times to define their damages, and each time they reaffirmed that they had suffered none. *See* Docket Item 69-4 7, 11 (White interrogatory response stating that he suffered no "actual damages"); 69-5 at 24, 25, 35-40 (White deposition expressing confusion over claims but omitting any mention of emotional distress damages); 69-7 ¶¶ 7, 11 (Suitor interrogatory response affirming no actual damages); 69-8 at 56, 60, 61 (Suitor deposition stating same); 69-10 ¶¶ 7, 11 (Schmidt interrogatory response affirming no actual damages); 69-11 at 44, 46 (Schmidt deposition stating same).[7]

Nor does the record include any evidence that the plaintiffs suffered actual injury from entering into the negotiated modification agreements that included the attorney's fees and costs. In fact, the plaintiffs admit that they challenged the fees and costs as part of their negotiations and eventual agreement to voluntarily settle the foreclosure proceedings against them. *See* Docket Item 83 ¶¶ 61, 115, 171. Accordingly, the plaintiffs were not injured by paying improper fees and costs as part of their negotiated,

[7] In his deposition, Schmidt asked whether "[p]ain and suffering" damages were covered by interrogatories seven and eleven before affirming that he had not suffered any damages. Docket Item 69-11 at 46:4-9.

voluntary settlements with Fein Such—or if they were, it was the result of their attorneys' inadequate negotiations.[8]

In sum, the plaintiffs do not claim actual damages, nor have they offered evidence of any. For that reason, the defendant is entitled to summary judgment on the plaintiffs' GBL § 349 claims.

## III. Additional Discovery

A party seeking additional discovery under Rule 56(d) must demonstrate "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989).

The plaintiffs have not shown how additional discovery might create a genuine issue of material fact, and it is difficult to imagine how it could. The plaintiffs' FDCPA claims are based entirely on communications with attorneys and are deficient for that reason alone. And even if that were not true, the plaintiffs have admitted key facts undermining those claims. *See supra* at 10-12. Moreover, the plaintiffs admit that they do not seek actual damages, and their GBL § 349 claims therefore are not viable.

[8] Moreover, the plaintiffs do not cite any evidence indicating that the settlement fees and costs were in fact improper. *See* Docket Item 79 at 24. And the absence of such evidence alone is sufficient to satisfy Fein Such's burden on summary judgment as to the GBL claims. *Goenaga*, 51 F.3d at 18 ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

Therefore, because further discovery would have no effect on the plaintiffs' ability to state claims under the FDCPA or the GBL, their motion for additional discovery under Rule 56(d) is denied.[9]

## **CONCLUSION**

For the reasons stated above, the defendant's motion for summary judgment, Docket Item 69, is GRANTED, and the plaintiffs' request for further discovery under Rule 56(d) is DENIED. The Clerk of the Court shall enter judgment for the defendant and close this case.

SO ORDERED.

Dated: February 3, 2023
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

[9] What is more, the plaintiffs have had more than six years to complete discovery, which was not stayed during the pendency of the summary judgment motion. *See* Docket Item 15 (first discovery plan submitted January 26, 2016); 71 (staying discovery deadline during pendency of discovery motions). In fact, both sides engaged in extensive discovery. *See generally* Docket Item 65 (describing extensive discovery exchanges). And the deadline to complete discovery has long passed. Docket Item 63-1 ¶ 7 (deadline to complete discovery was May 31, 2017); 76 (Judge Schroeder refusing to extend deadline for discovery without a proper showing under Rule 56(d)). The plaintiffs' motion for Rule 56(d) discovery is denied for that reason as well. *See* *Moccia v. Saul*, 820 F. App'x 69, 70 (2d Cir. 2020) ("It is well established that 'the trial court may properly deny further discovery' under Rule 56(d) 'if the nonmoving party has had a fully adequate opportunity for discovery.'") (quoting *Trebor Sportswear Co. v. Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989)).